**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| RITLABS, S.R.L., | |
| Plaintiff, | |
| v. | Case No.:  1:12CV215 AJT/IDD |
| RITLABS, INC., and SERGHEI DEMCENKO, | Hon. Anthony J. Trenga |
| Defendants. | |

## <u>DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF SRL'S MOTION FOR PRELIMINARY INJUNCTION</u>

Defendants Ritlabs, Inc. and Serghei Demcenko hereby oppose Plaintiff Ritlabs, S.R.L.'s Motion for Preliminary Injunction ("Motion").  Plaintiff has failed to meet its substantial burden required for injunctive relief.  Plaintiff is not likely to succeed on the merits at trial, is not likely to be irreparably harmed absent preliminary relief, the balance of equities does not tip in the Plaintiff's favor, and the public consequences in employing the extraordinary remedy of injunction do not favor granting preliminary injunctive relief.  Plaintiff's Motion is merely a continuation of its improper attempt to wrest control of Plaintiff from Defendant Demcenko.  Plaintiff SRL's goal is to appropriate Defendant Demcenko's rightful domain names and trademarks, contrary to law and equity, and to use this Court to legitimize its blatant breach of its contractual relationship with Defendant Ritlabs, Inc.  Accordingly, this Court should deny Plaintiff's preliminary injunction motion.

## FACTUAL BACKGROUND

Defendant Ritlabs, Inc. ("INC") is a corporation organized under the laws of the Commonwealth of Virginia on July 14, 2008 with its principal place of business in Alexandria, Virginia. *See* Exhibit A to Declaration of Kevin Garden (hereinafter "Garden Decl."). Defendant Serghei Demcenko, a citizen of the Republic of Moldova currently residing in Centreville, Virginia, is the majority owner of Defendant INC. Declaration of Serghei Demcenko (hereinafter "Demcenko Decl.") ¶ 2-3. Defendant Demcenko is also the 100% owner[1] of Plaintiff Ritlabs, S.R.L. ("SRL"). *Id*. at ¶ 4. Upon information and belief, Plaintiff SRL is a limited liability company organized under the laws of the Republic of Moldova with its principal place of business in Chisinau, Moldova.

In 1993, a limited liability company called RIT ("RIT") (not a party to this suit) was formed in the Republic of Moldova, with its primary mission entailing research and development in the area of computers, computer hardware, and software. *Id*. at ¶ 5; see Exhibit A to Plaintiff SRL's Complaint (hereinafter "Complaint"). Defendant Demcenko was employed as General Director of RIT. Demcenko Decl. ¶ 5. RIT was thus named because of Defendant Demcenko's involvement in the company: 'Rit' was Defendant Demcenko's nickname in high school and college. *Id*. at ¶ 6. Between 1993 and 1995, or approximately therein, Maxim Masiutin and Stefan Tanurkov were hired by RIT. *Id*. at ¶ 7. At that time, RIT employed approximately ten people, including Defendant Demcenko, Mr. Masiutin, and Mr. Tanurkov. *Id*. at ¶ 8.

---

[1] Although Plaintiff SRL contends that Mr. Masiutin and Mr. Tanurkov each own 30% of Plaintiff SRL respectively, as will be shown at trial Mr. Masiutin and Mr. Tanurkov did not contribute their initial share capital for Plaintiff SRL within the required time period under Moldovan law, and, therefore, are not legitimate members/shareholders of Plaintiff SRL.

In 1996, while employed by RIT and prior to the founding of Plaintiff SRL, Defendant Demcenko caused the <ritlabs.com> domain to be registered in his name. *Id.* at ¶ 10. Defendant Demcenko caused the <ritlabs.com> domain to be registered in his capacity as an individual and not as on behalf of RIT. *Id.* Defendant Demcenko permitted RIT to use his <ritlabs.com> domain to conduct its business. *Id.* at ¶ 11. During the entire time that RIT used the <ritlabs.com> domain, the domain belonged to Defendant Demcenko in his individual capacity. *Id.*

In December 1997, Defendant Demcenko voluntarily resigned from his position with RIT. *Id.* at ¶ 12. Upon information and belief, Mr. Masiutin and Mr. Tanurkov did the same prior to Defendant Demcenko leaving RIT. After Defendant Demcenko, Mr. Masiutin, and Mr. Tanurkov ended their employment relationships with RIT, the company continued to exist as a separate, independent company. *Id.* at ¶ 13; *see* Exhibit A to Complaint (showing that, as of January 5, 2012, RIT was registered with the Moldovan State Registration Chamber).

In February 1998, Defendant Demcenko, Mr. Masiutin, and Mr. Tanurkov decided to found Plaintiff SRL, with the principal activities of such to develop and sell software products. Demcenko Decl. ¶ 14. Plaintiff SRL was founded as (and upon information and belief remains today) an independent limited liability company. *Id.* It is not now, and was never, associated with, affiliated with, or a successor in interest to RIT (which continued to operate independently subsequent to the founding of Plaintiff SRL). *Id.*; *see* Exhibit A to Complaint. No property, including software, trademark, or copyrights, were transferred from RIT to Plaintiff SRL. Demcenko Decl. ¶ 16; *see* Exhibit A to Demcenko Decl., Law No. 38-XVI on Protection of Trademarks, Article 3 (trademark rights are acquired and protected in Moldova by means of (1) registration of mark, (2) international registration under Madrid Protocol, or

3

(3) recognition of a famous mark); *id.* at Article 25 & 26 (rights in trademarks may be transferred by assignment).   Upon information and belief, RIT never assigned its rights, title, or interest in and to its trademarks and software to Plaintiff SRL.

As reflected in the organizational documents of Plaintiff SRL, ownership of Plaintiff SRL was to be distributed among the three founders as follows:  Defendant Demcenko was to have 40% ownership stake in Plaintiff SRL, Mr. Masiutin was to have a 30% ownership stake, and Mr. Tanurkov was to have a 30% stake.  *See* Exhibit B to Plaintiff SRL's Motion, Articles of Association of Ritlabs, SRL, Article 3.2; *see also* Exhibit E to Demcenko Decl., Articles of Incorporation of Plaintiff SRL.   Under Moldovan law, each founder's ownership stake in Plaintiff SRL was contingent on such founder contributing at least 40% of his initial share capital prior to the registration of the company.  *See* Exhibit A to Plaintiff's Motion, Law No. 135 on Limited Liability Companies, Article 22(2).  Furthermore, each founder was required to provide his full initial share capital within one year[2] of the company's registration.  *Id.* at Article 22(3).   Although Defendant Demcenko contributed his entire share capital (in the amount of 2,600 Modovan leu) prior to registration of Plaintiff SRL, upon information and belief neither Mr. Masiutin nor Mr. Tanurkov contributed their share capital portions prior to registration of Plaintiff SRL nor within a year of the company's registration as required by Moldovan law at the time. Demcenko Decl. ¶ 17-18; Exhibit C to Demcenko Decl. (Bank Note).  Defendant Demcenko was appointed as Plaintiff SRL's General Director immediately after Plaintiff SRL's founding.   Demcenko Decl. ¶ 19.

---

[2] Although the time period for contribution of entire share capital written as "within 6 months," Moldovan law in effect when Plaintiff SRL was founded required such contribution within one year.

4

After Plaintiff SRL was formed, Defendant Demcenko permitted Plaintiff SRL to use the <ritlabs.com> domain name. *Id*. at ¶ 20. However, Defendant Demcenko at no point transferred ownership of the <ritlabs.com> domain name to Plaintiff SRL. *Id.* At all times the <ritlabs.com> domain name was property of Defendant Demcenko, who permitted Plaintiff SRL to use said domain name. *Id.*

On July 14, 2008, Defendant INC was incorporated under the laws of the Commonwealth of Virginia, with Defendant Demcenko as the sole shareholder. Exhibit A to Garden Decl. Defendant INC is not, and has never been, a branch or representative office of Plaintiff SRL. Demcenko Decl. ¶ 23. Rather, Defendant INC is an independent software company which (1) has a license to distribute Plaintiff SRL's products and (2) develops its own software, such as the MailVoyager mobile email client. Id. at ¶ 21-22.

Defendant INC plays an integral role in Plaintiff SRL's business model, underscored by the Distribution and License Agreement ("License Agreement") by and between Plaintiff SRL and Defendant INC dated as of December 1, 2009. *Id*. at ¶ 24; Exhibit AA to Complaint (License Agreement). Pursuant to the License Agreement, Defendant INC is granted an exclusive license to market, distribute, and sublicense Plaintiff SRL's products in the U.S. and a non-exclusive license to market, distribute, and sublicense Plaintiff SRL's products anywhere else in the world. Demcenko Decl. ¶ 24; see Exhibit AA to Complaint (License Agreement). Based on the License Agreement, and through significant investment of funds and management resources, Defendant INC entered into numerous sublicensing, resale, and distribution agreements with numerous counterparties throughout the world to distribute Plaintiff SRL's products. Demcenko Decl. ¶ 26. Prior to Plaintiff SRL's breach of the License Agreement,

Defendant INC had been properly making payments to Plaintiff SRL due under the License Agreement.  *Id*. at ¶ 27.

On December 12, 2011, upon information and belief Mr. Masiutin and Mr. Tanurkov purported to conduct a general meeting of the members of Plaintiff SRL whereby Mr. Masiutin and Mr. Tanurkov, without any explanation or reason, allegedly resolved to terminate Defendant Demcenko as General Director of Plaintiff SRL.  Despite not receiving formal notification of his removal as General Director, on December 14, 2011 Defendant Demcenko discovered through his own investigation that he had been removed as General Director of Plaintiff SRL.  *Id.* at ¶ 31.  After Mr. Masiutin was purportedly appointed as General Director of Plaintiff SRL, Plaintiff SRL refused to perform its obligations under the License Agreement.  *Id*. at ¶ 32.  Plaintiff SRL sent several letters to Defendant INC's rightful partners claiming that Plaintiff SRL did not recognize the validity of the License Agreement and demanding that these partners cease doing business with Defendant INC.  *Id*. at ¶ 23; *see, e.g.*, Exhibit C to Demcenko Decl.

On December 20, 2011, Defendant INC, through its counsel, sent a letter to Plaintiff SRL, notifying Plaintiff SRL that it was in breach of the Licensing Agreement and requesting that Plaintiff SRL reestablish compliance with the License Agreement.  Demcenko Decl. ¶ 34; *see* Exhibit Z to Complaint.  In that letter, Defendant INC also informed Plaintiff SRL that, in light of its breach of the License Agreement, Defendant INC would cease payments to Plaintiff SRL under the License Agreement in lieu of holding such payments due to Plaintiff SRL. Demcenko Decl. ¶ 35; *see* Exhibit Z to Complaint.  As of the date of this Opposition, Plaintiff SRL continues to be in breach of the Licensing Agreement.  *Id.* at ¶ 40.

6

Soon after purportedly firing Defendant Demcenko from Plaintiff SRL, Mr. Masiutin and Mr. Tanurkov, upon information and belief, restricted Defendant Demcenko's access to his personal <ritlabs.com> email account and the personal <ritlabs.com> email accounts of Defendant Demcenko's family. Demcenko Decl. ¶ 36.   Defendant Demcenko had used his <ritlabs.com> email account for personal use since 1996, years prior to the existence of Plaintiff SRL.  *Id*. at ¶ 37.   Upon discovering that his access to his personal account and the access of his family to their respective accounts had been restricted, Defendant Demcenko accessed the MX records of the restricted email accounts and changed the settings to allow himself and his family access to their email account only.  *Id*. at ¶ 38.   Defendant Demcenko did not monitor or interfere with any other information associated with the <ritlabs.com> MX record.  *Id.* at ¶ 39.

## ARGUMENT

### I.   Standard of Review for Preliminary Injunctive Relief

The granting of a preliminary injunction is an "extraordinary remedy . . . which is to be applied 'only in [the] limited circumstances' which clearly demand it."  *Allegra Network LLC v. Reeder*, CIV. A. 1:09-CV-912, 2009 WL 3734288 (E.D. Va. 2009) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)).   In its Motion, Plaintiff SRL incorrectly states that "[a] motion for preliminary injunction requires the court to balance 'the four factors established in *Blackwelder Furniture Co. v. Selilg Manufacturing Co.*" Plaintiff's Motion at 10.  However, *Blackwelder* has been overturned.  In *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, the Fourth Circuit, applying *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S.Ct. 365 (2008), overturned the *Blackwelder* sliding scale approach, requiring instead a plaintiff seeking injunctive relief to meet each of the four preliminary

7

injunction requirements separately.  575 F.3d 342, 347 (4th Cir. 2009) *vacated on other grounds by*, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010).  These four requirements are: "(i) a clear showing that [the plaintiff] will likely succeed on the merits at trial; (ii) a clear showing that [the plaintiff] is likely to be irreparably harmed absent preliminary relief; (iii) that the balance of equities tips in [the plaintiff] favor; and (iv) the public consequences in employing the extraordinary remedy of injunction favors granting preliminary injunctive relief" *Real Truth About Obama, Inc.*, 575 F.3d at 346-47 (quotation marks and citations to *Winter* omitted) .  Plaintiff SRL has utterly failed to meet these requirements and, accordingly, this Court should deny its Motion.

As will be shown at trial, at its core, this is a dispute over control of Plaintiff SRL.  Mr. Masuitin and Mr. Tanurkov, through improper means, have attempted to usurp control of Plaintiff SRL for themselves, and to disregard Plaintiff SRL's contractual obligations to Defendant INC in the process.  Given the weakness of Plaintiff SRL's case, it would be entirely inappropriate for this Court to grant Plaintiff SRL's preliminary injunction motion.

A.    **Plaintiff SRL Fails to Make a Clear Showing that it will Succeed on the Merits at Trial**

    i.    **Plaintiff SRL cannot show that Defendant INC was established illegitimately and that the License Agreement was executed improperly**

Plaintiff SRL cannot show that it is likely to succeed on the merits at trial.  Plaintiff SRL incorrectly alleges that Defendant INC (1) was illegitimately established, (2) was not authorized to enter into the License Agreement with Defendant INC, and (3) that Defendant INC is not authorized to conduct business with customers on Plaintiff SRL's behalf.  In light of this, Plaintiff clearly fails to meet its burden required for preliminary injunctive relief.

8

Article 58(2)(e) of the Law on Limited Liability Companies of Moldova requires ¾ vote of the members of limited liability company in order to create a branch or representation office of the company.  *See* Exhibit A to Plaintiff SRL's Motion, Law No. 135 on Limited Liability Companies, Article 58(2)(e).  However, Defendant INC does not now, and has never previously, held itself out as Plaintiff SRL's branch or representation office.  Demcenko Decl. ¶ 23.  Defendant INC is an independent corporation, and, pursuant to the License Agreement, akin to a vendor with exclusive and non-exclusive rights to market, distribute, and sublicense Plaintiff SRL's products.  *Id*. at ¶ 20-26.  In fact, Mr. Masiutin himself has admitted as much. See Exhibit C to Demcenko Decl. ("I would like to bring your attention to the fact that Ritlabs Inc and Ritlabs SRL are two distinct and separate companies.")  Defendant INC's authorization to market, distribute, and sublicense Plaintiff SRL's products stems from the duly authorized and executed License Agreement.  *See* Exhibit AA to Complaint (License Agreement). Contrary to Plaintiff SRL's misrepresentations, such authorization does not stem from Defendant INC's inherent role as Plaintiff SRL's branch or representative. Indeed, under Moldovan law Defendant INC cannot be regarded as Plaintiff SRL's branch or representative because a company's branch or representative office may not a distinct legal entity (such as a corporation).  *See* Exhibit A to Plaintiff SRL's Motion, Law No. 135 on Limited Liability Companies, Article 7(5) ("The branch and representation office are not legal persons . . ."), Article 7(2)-(3) ("A branch is a separate subdivision of the company. . . A representation office is a separate subdivision of the company").  Accordingly, because Defendant INC is a separate legal entity and not a subdivision of Plaintiff SRL and because Defendant INC does not hold itself out as a branch or representative office of Plaintiff SRL, the establishment of Defendant

INC did not require authorization under ¾ of the members of Plaintiff SRL.  As indicated above, Plaintiff SRL has failed to show that Defendant INC was illegitimately established.

Furthermore, and contrary to Plaintiff SRL's allegations, Defendant INC has been, and remains now, authorized to distribute Plaintiff SRL's products pursuant to the License Agreement.  The License Agreement was entered into between Plaintiff SRL and Defendant INC on December 1, 2009, with Defendant Demcenko executing the License Agreement in his role as General Director on behalf of Plaintiff SRL and Yuri Bakay executing on behalf of Defendant INC as Defendant INC's Vice President.  Demcenko Decl. at ¶ 24-25; *see* Exhibit AA to Complaint (License Agreement); *see also* Exhibit B to Plaintiff SRL's Motion, Articles of Association of Ritlabs, SRL, Section 7.2 ("The director . . . concludes transactions in the name of the Company"); Exhibit A to Plaintiff SRL's Motion, Law No. 135 on Limited Liability Companies, Article 74(1) ("The company shall be involved in the relations with the third parties through actions realized by the administrator even if these actions exceed the subject of the activity of the company, except for the case when the company proves that the third parties knew about this exceeding.").  Plaintiff SRL contends that the License Agreement was improperly executed because, under the Plaintiff SRL's Articles of Association (hereinafter, the "Articles"), the License Agreement should have been approved by the members by reason that (1) the Articles prohibit adoption of contracts signed for amounts greater than 162,000 Moldovan leu without approval of the General Assembly of Members and (2) the Articles prohibit a member from entering into a contract with the Company without the General Assembly's approval.  Plaintiff's Motion at 10-11.  Plaintiff SRL's arguments are unavailing; in his capacity as General Director of Plaintiff SRL, Defendant Demcenko was not

required to seek approval of the members to enter into the License Agreement on behalf of Plaintiff SRL.

First, the License Agreement does not fall under the category of contracts which, pursuant to the Articles, must be adopted by the members.  Although the Articles require that contracts signed for amounts greater than 162,000 Moldovan leu be adopted by the General Assembly, the License Agreement is not such a contract because it does not contemplate a transaction worth any specific amount of money.  Instead, the License Agreement merely grants Defendant INC an exclusive and non-exclusive license to market, distribute, and sublicense Plaintiff SRL's products in consideration for licensee fees paid to Plaintiff SRL by Defendant INC based directly on amount of sales.  *See* Exhibit AA to Complaint (License Agreement).  Because the amount of license fees paid to Plaintiff SRL are entirely predicated on the extent of sales of Plaintiff SRL's products by Defendant INC under the License Agreement, and there is no minimum sales requirement, the License Agreement is not a type of contract governed by the Articles so as to require member approval, *i.e.* it is a not a contract signed for greater than 162,000 Moldovan leu.  *Id*.  It should also be noted that, on this point, Plaintiff SRL's Articles are in conflict with Moldovan law, which, *espressio unis*, does not provide a limited liability company's General Assembly competence to  approve such contracts.  *See* Exhibit A to Plaintiff SRL's Motion, Law No. 135 on Limited Liability Companies, Article 49(1)-(2).

Second, although the members of Plaintiff SRL must adopt a contract signed between the company and its members, the License Agreement is between Plaintiff SRL and Defendant INC, not Plaintiff SRL and Defendant Demcenko.  Demecenko Decl. ¶ 25; *see* Exhibit AA to Complaint (License Agreement).  Clearly, there is vital distinction between a natural person

and a corporation, even when the natural person is the sole shareholder of such corporation. See *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 111 F. Supp. 2d 734, 740 (E.D. Va. 2000) ("While Virginia law permits actions to disregard this separate legal existence, settled precedent cautions courts that piercing of the corporate veil should be permitted 'only when necessary to promote justice' and only under exceptional circumstances.").  Even if Plaintiff had raised an allegation of alter-ego (which Plaintiff SRL does not allege), Defendant INC and Defendant Demcenko cannot be considered to be the same entity.  Accordingly, while the Articles may prohibit Plaintiff SRL and Defendant Demcenko from executing a contract without approval of Plaintiff SRL's members, it does not place such prohibition on execution of a contract between Plaintiff SRL and Defendant INC.   Thus, Plaintiff SRL has failed to show that Plaintiff SRL and Defendant INC were not authorized to enter into the License Agreement.

Defendant INC has at no point asserted a right to represent or deal on behalf of Plaintiff SRL other than in connection with the License Agreement.  *See* Demcenko Decl. ¶ 23. Furthermore, Defendant INC has neither improperly "diverted Plaintiff SRL's customers," nor misappropriated money from Plaintiff SRL.  *Id.* at ¶ 29.  As stated above, the License Agreement provides Defendant INC a right, as Plaintiff SRL's exclusive and non-exclusive licensee, to market, distribute, and sublicense Plaintiff SRL's products.  *Id*. at ¶ 24; *see* Exhibit AA to Complaint (License Agreement).  Defendant INC has at no point attempted to confuse its customers regarding its position as Plaintiff SRL's authorized licensee.  It has always represented itself to its customers as a licensee of Plaintiff SRL, authorized to per the License Agreement to market, distribute, and sublicense Plaintiff SRL's products.  *See* Demcenko Decl. ¶ 23.

Furthermore, prior to Plaintiff SRL's breach of the License Agreement, Defendant INC paid to Plaintiff SRL fees required under the License Agreement. *Id*. at ¶ 27.  Instead, it is Plaintiff SRL who, without warning, breached the License Agreement by refusing to deliver its products to Defendant INC's customers. *Id*. at ¶ 32-33; *see* Exhibit C to Demcenko Decl.  In short, Defendant has at all times conducted itself in accordance with its rights and obligations under the License Agreement, while Plaintiff SRL has disregarded its responsibilities under that same agreement.

Additionally, Plaintiff SRL has failed to show any impropriety on Defendant Demcenko's part in transferring to the domain names <ritlabs.com>, <ritlabs.net>, and <batpost.com>, and <thebat.net> to Defendant INC.  First, Plaintiff SRL never had any ownership interest these domains, as they were all owned by Defendant Demcenko. Demcenko Decl. ¶ 41.  For instance, <ritlabs.com> was registered by Defendant Demcenko prior to the formation of Plaintiff SRL.  *Id*. at ¶ 10.  Defendant Demcenko has, at all times, owned and controlled these domains.  *Id*. at. ¶ 10, 13, 20, 41.  Plaintiff SRL was only using these domain names per Defendant Demcenko's permission.  *Id*. at ¶ 13.

Plaintiff SRL also alleges that Defendant Demcenko has changed the MX records associated with the <ritlabs.com> domain name and, thereby, has damaged Plaintiff SRL and, further, has "the ability to monitor and intercept all emails sent to email addresses at <ritlabs.com>, such as email addressed owned by Mr. Masiutin and Mr. Tanurkov."  Plaintiff's Motion at 16.  Defendant Demcenko only changed the MX records of <ritlabs.com> to regain access to his personal email account (as well the personal accounts of his family members) and in response to the improper actions of Mr. Masiutin and Mr. Tanurkov.  Demcenko Decl. ¶ 36-39.  Defendant Demcenko has had a personal <ritlabs.com> email account since 1996, years

prior to the formation of Plaintiff SRL. *Id.* at ¶ 37. Upon purportedly removing Defendant

Demcenko from his position as General Director of Plaintiff SRL, upon information and belief,

Mr. Masiutin and Mr. Tanurkov also blocked Defendant Demcenko's access to his personal

<ritlabs.com> email account and the accounts of Defendant Demcenko's family. *See id.* at ¶

36. Defendant Demcenko changed the MX record only to allow himself and his family

accesses their personal email account. *Id.* at ¶ 38. At no point did Defendant Demcenko

monitor, reroute, or interfere with any other <ritlabs.com> email account. *Id.* at ¶ 39.

Accordingly Defendant Demcenko has exhibited no inclination to interfere with Mr.

Masiutin's or Mr. Tanurkov's access to their respective email accounts.

Furthermore, Plaintiff SRL's allegation that Defendant misappropriated revenue

associated with all sales of Plaintiff SRL's products to US residents since 2005 is baseless.[3]

Plaintiff's Motion at 15. On March 7, 2012, CIFNET, Inc., the operator of <ritlabs.com>

hosting account, sent Mr. Masiutin notification that "CIFNet performed all required transfers

of funds . . . to SRL." Exhibit D to Demcenko Decl. (hereinafter "CIFNET Letter").

Furthermore, the CIFNET letter indicates, apart from the usual payments made to Plaintiff

SRL and Defendant INC, CIFNet, Inc. made 38 transfers in the amount of approximately

$46,300.00 to the personal account of Mr. Masiutin in accordance with Mr. Masiutin's request.

*Id.* These payments were counted against payments made by CIFNet Inc., to Plaintiff SRL

from 2007 to 2009 and to Defendant INC from 2010 to 2011. *Id.* Accordingly, not only did

CIFNet, Inc. make appropriate payments to Plaintiff SRL on Defendant INC's behalf, upon

---

[3] Although the Motion states "Upon information and belief, Defendant's control over the
<ritlabs.com> domain name and its hosting account, which is operated by CIFNET, Inc., has
allowed Defendant to receive all of the revenue associated with all sales of **Defendant's** products
to US residents since 2005." (emphasis added). We assume that the Motion was meant to refer
to Plaintiff's products, not Defendant's products, and proceed based on this assumption.

information and belief, Mr. Masuitin misappropriated approximately $46,300.00 from Plaintiff SRL and Defendant INC.  In light of the foregoing, it is beyond the pale for Plaintiff SRL to accuse Defendant INC of impropriety when Plaintiff SRL's supposed General Director has been involved in misappropriating funds from Plaintiff SRL and Defendant INC for over four years.

It should also be noted that Plaintiff SRL has no property interest in the RITLABS, MAILVOYAGER, and THE BAT! trademarks.  Defendant INC properly filed to register the RITLABS, MAILVOYAGER, and THE BAT! trademarks with the USPTO.  *See* Exhibit B to Garden Decl.  Upon information and belief, Plaintiff SRL has not registered these trademarks in either Moldova or the United States.  Indeed, Plaintiff SRL could not have registered there marks because it does not have a property interest in said marks:  the RITLABS and THE BAT! trademarks were used by both RIT and Defendant Demcenko prior to the formation Plaintiff SRL.  Demcenko Decl. ¶ 9, 30.  Furthermore, upon information and belief, Plaintiff SRL has never sold any products under the MAILVOYAGER trademark.  Accordingly, Plaintiff SRL has no property interest in these trademarks.

In accordance with the above, Plaintiff SRL has abjectly failed to show that it is likely to succeed on merits of its case at trial.

### ii.     Mr. Masuitin and Mr. Tanurkov are not legitimate shareholders of Plaintiff SRL, and, therefore, this suit is improperly brought by Plaintiff SRL

Plaintiff SRL cannot succeed on the merits of this case because neither Mr. Masiutin nor Mr. Tanurkov are legitimate shareholders of Plaintiff SRL   Accordingly, Plaintiff SRL was not authorized to bring this suit in the first place.

Under Moldovan law, each founder of a company must contribute at least 40% of their required share capital prior to the company's registration with Moldovan State Authorities.

*See* Exhibit A to Plaintiff SRL's Motion, Law No. 135 on Limited Liability Companies, Article 22(2).  Each founder must then contribute any remaining share capital within one year of the company's registration.  *Id.* at 22(3).  As founders of Plaintiff SRL, Defendant Demcenko, Mr. Masiutin, and Mr. Tanurkov were each required make share capital contributions.  Defendant Demcenko contributed his entire share capital of 2,160 Moldovan leu on February 5, 1998.  See Exhibit B to Demcenko Decl. (Bank Note).  Upon information and belief, neither Mr. Masiutin nor Mr. Tanurkov contributed at least 40% of their share capital (each owed total share capital of 1,620 Moldovan leu) prior to the registration of Plaintiff SRL.  *See* Exhibit B to Plaintiff's Motion, Articles; Exhibit E to Demcenko Decl., Articles of Incorporation for Plaintiff SRL, Section 5-6.  Furthermore, upon information and belief, neither Mr. Masiutin nor Mr. Tanurkov contributed their entire share capital amount within the first year of Plaintiff SRL's registration as required by Moldovan law. *See* Demcenko Decl. ¶ 18; Exhibit A to Plaintiff SRL's Motion, Law No. 135 on Limited Liability Companies, Article 22(3).  Accordingly, neither Mr. Masiutin nor Mr. Tanurkov are legitimate shareholders of Plaintiff SRL and, therefore, could neither have removed Defendant Demcenko as General Director of Plaintiff SRL nor directed Plaintiff SRL to sue the Defendants.[4]

**B.**      **Plaintiff SRL Will Not Be Irreparably Harmed Absent Preliminary Injunction Relief**

Plaintiff SRL has failed to make a clear showing that it will be irreparably harmed absent preliminary injunctive relief.  "[I]rreparable harm consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits."

---

[4] It should also be noted that Defendant Demcenko has recently instituted a lawsuit against Mr. Masiutin and Mr. Tanurkov in Moldovan court for improper removal of Defendant Demcenko from his position as General Director of Plaintiff SRL.

16

*MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 634 (W.D. Va. 2010) (quoting *Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008)).

Plaintiff SRL argues that if preliminary injunction is not granted, it will "suffer irreparable harm to its reputation, client base, and revenue streams" because Defendant INC will "disrupt the ability of Plaintiff SRL to sell its software goods and services, will solicit Plaintiff SRL's customers for its own financial benefit, and will tarnish the goodwill that Plaintiff SRL has established in its trademarks through the sale of its software around the world for over fifteen years." Plaintiff's Motion at 15. However, "[n]either the 'difficulty of calculating losses in market share, nor speculation that such losses might occur,' without more, warrants a finding of irreparable harm and the issuance of a preliminary injunction. *MicroAire Surgical Instruments, LLC*, 726 F. Supp. 2d at 635 (W.D. Va. 2010) (quoting *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991)). Furthermore, Plaintiff SRL has failed to show that, absent preliminary injunction, Defendant INC is likely to damage Plaintiff SRL's reputation among its customer base. In selling Plaintiff SRL's products, Defendant INC is merely honoring the Licensing Agreement properly entered into between Plaintiff SRL and Defendant INC.

Plaintiff SRL is not suffering and will not suffer harm because, as noted above, the License Agreement was duly executed and is properly enforceable against Plaintiff SRL. If anything, Plaintiff SRL is profiting from the Defendant INC's marketing, sale, and distribution of Plaintiff SRL's products and services because Defendant INC is expending its own resources to increase the market share of Plaintiff SRL's products and increase Plaintiff SRL's customer base and reputation (as well as providing Plaintiff SRL license fees under the License Agreement). *See* Demcenko Decl. ¶ 26-28.

Furthermore, there is no basis for Plaintiff SRL's conclusion that Defendant Demcenko's alleged "continued ability to control the MX records associated with <ritlabs.com> domain name will irreparably harm Plaintiff SRL."  Plaintiff's Motion at 16. Defendant Demcenko only accessed the MX records of the <ritlabs.com> domain to undo Mr. Masiutin's and Mr. Tanukov's illegitimate actions to prevent Defendant Demcenko and his family from accessing their personal <ritlabs.com> email accounts.  Demcenko Decl. ¶ 36-39. Defendant Demcenko has no intention, and has exhibited no intention, to access the MX records of <ritlabs.com> domain for a nefarious purpose.  *Id*. at ¶ 39.

On the other hand, Defendant INC would be significantly harmed if this Court were to grant Plaintiff SRL's preliminary injunction motion.  Defendant INC has expanded significant time, energy, and resources to establish goodwill among its customers as an authorized licensee of Plaintiff SRL.  *See* Demcenko Decl. ¶ 26.  Were it to be enjoined, Defendant INC's reputation would suffer permanent and substantial harm in eyes its partners and associates. Defendant INC would be erroneously regarded as misrepresenting its role in its business transactions as Plaintiff SRL authorized licensee.  Such harm to Defendant INC's reputation would be impossible to render whole through mere monetary compensation.

**C.**      **Plaintiff SRL Has Failed to Show That The Balance of Equities Tips in the Plaintiff SRL's Favor**

In addition, the balance of equities in this case does not tip in the Plaintiff SRL's favor. At the outset it is important to note that Plaintiff SRL has completely failed to brief this factor in its Motion.  In *Real Truth.*, the Fourth Circuit required any plaintiff seeking injunctive relief meet <u>each</u> of the four preliminary injunction requirements separately, including " . . . (iii) that the balance of equities tips in [the plaintiff's] favor.  575 F.3d at 347.  In its Motion, nowhere

does Plaintiff SRL describe how the balance of equities in this matter tips in Plaintiff SRL's favor.

Even had Plaintiff SRL not omitted discussion of this critical factor, the balance of equities is clearly in favor the Defendants in this matter.  Contrary to Plaintiff SRL's assertions, Defendant INC was legitimately established and has been duly performing in its rights and obligations under the License Agreement since in 2009.  Plaintiff SRL's efforts to cast the License Agreement as illegitimate are merely part Mr. Masiutin's and Mr. Tanurkov's thinly-veiled efforts to wrest control of Plaintiff SRL from Defendant Demcenko. Furthermore, it is Plaintiff SRL, not Defendant INC, who has breached the License Agreement. Additionally, Defendant INC has at no point misappropriated money rightfully belonging to Plaintiff SRL.  Instead, it was Mr. Masiutin who, upon information and belief, misappropriated approximately $46,300.00 over more than four years from both Plaintiff SRL and Defendant INC.  *See* Exhibit D to Demcenko Decl. (CIFNET Letter).  Plaintiff SRL's efforts in this matter are transparent, contrived, and far from equitable.  Accordingly, Plaintiff SRL has failed to make a clear showing that the balance of equities in this case tips in the Plaintiff SRL's favor.

**D.**     **Plaintiff SRL Failed to Show That The Public Interest Favors Granting Preliminary Injunctive Relief**

Plaintiff SRL has also failed to make a clear showing that the public interest favors granting the preliminary injunction motion.  This case—and, by extension, this Motion—is simply a  part of Mr. Masiutin's and Mr. Tanurkov's continuing effort  to oust Defendant Demcenko from Plaintiff SRL and delegitimize Defendant INC.

"The public interest is . . .  served by ensuring that legitimate contracts are enforced." *Asheboro Paper & Packaging, Inc. v. Dickinson,* 599 F. Supp. 2d 664, 678 (M.D.N.C. 2009).

19

Here, the Licensing Agreement is certainly such a legitimate contract.  Just because Plaintiff

SRL has purportedly changed General Directors does not invalidate a legitimate contract

executed by Plaintiff SRL under its 'previous' General Director.  To grant this preliminary

injunction could serve to erode public certainty in contractual obligations. As Defendant INC

is conducting business under a valid License Agreement, there can be no public confusion as to

the source of Defendant INC's authority to sell Plaintiff SRL's products.  Accordingly, a

showing that the public interest favors granting preliminary injunctive relief cannot be made.

<u>**CONCLUSION**</u>

As described in the foregoing, Plaintiff SRL has failed to make a clear showing that it

will likely succeed on the merits at trial, that it is likely to be irreparably harmed absent

preliminary relief, that the balance of equities tips in its favor, and that the public

consequences in employing the extraordinary remedy of injunction favors granting preliminary

injunctive relief.  Accordingly, the Court should deny Plaintiff SRL's motion for preliminary

injunction.

|  |  |
|---|---|
| | By:              /s/ |
| Dated: March 19, 2012 | _____ |
| | Kevin R. Garden |
| | Virginia Bar No. 30244 |
| | Attorney for Defendants |
| | Ritlabs, Inc. and Serghei Demcenko |
| | International Legal Counsels, PC |
| | 901 N. Pitt St., Suite 325 |
| | Alexandria, VA 22314 |
| | Telephone: (703) 535-5565 |
| | Fax: (202) 318-0723 |
| | kg@legal-counsels.com |

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

J. Andrew Baxter
Virginia Bar No. 78275
Counsel for Plaintiff (Local)
I.S. Law Firm, PLLC
1199 N. Fairfax St., Suite 702
Alexandria, VA 22314
jbaxter@islawfirm.com


                                        _____/s/_____
                                        Kevin R. Garden
                                        Virginia Bar No. 30244
                                        Attorney for Defendants
                                        Ritlabs, Inc. and Serghei Demcenko
                                        International Legal Counsels, PC
                                        901 N. Pitt St., Suite 325
                                        Alexandria, VA 22314
                                        Telephone: (703) 535-5565
                                        Fax: (202) 318-0723
                                        kg@legal-counsels.com