# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| RITLABS, S.R.L., | Case No.:  1:12CV215 |
| Plaintiff/Counter-Defendant, | |
| v. | Hon. Anthony J. Trenga |
| RITLABS, INC., and SERGHEI DEMCENKO, | |
| Defendants/Counter-Claimants. | |

## <u>FIRST AMENDED ANSWER AND COUNTERCLAIMS</u>

Defendants Ritlabs, Inc., a Virginia corporation, and Serghei Demcenko, an individual, through their undersigned counsel, respond to plaintiff's complaint in this case as follows:

1.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 1 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

2.      Admit.

3.      Admit.

4.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 4 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

5.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 5 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

6.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 6 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

7.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 7 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

8.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 8 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

9.      Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 9 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

10.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 10 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

11.     Defendants admit allegation in Paragraph 11 that The Bat! is an electronic mail software client that allows users to work with an unlimited number of electronic mailboxes and offers additional highly useful features, such as powerful sorting filters, customizable message templates, and others.  Defendants deny all remaining allegations in Paragraph 11.

12.     Defendants admit allegation in Paragraph 12 that BatPost! is electronic mail server software that provides its users with an unlimited number of domains and users, as well as other features not found in standard electronic mail servers.  Defendants deny all remaining allegations in Paragraph 12.

13.     Defendants admit allegation in Paragraph 13 that MailVoyager is a secure email client for Microsoft Windows that is stored on a removable USB thumb drive.  Defendants deny all remaining allegations in Paragraph 13.

14.     Deny.

15.     Defendants admit allegation in Paragraph 15 that R.I.T., S.R.L. was incorporated on February 9, 1993 in Republic of Moldova.  Defendants deny all remaining allegations in Paragraph 15.

16.     Admit.

17.     Deny.

18.     Defendants admit allegation in Paragraph 18 that in late 1996, RIT was selling electronic mail software products.  Defendants deny all remaining allegations in Paragraph 18.

19.     Deny.

20.     Deny.

21.     Deny.

22.     Defendants admit allegation in Paragraph 22 that Defendant Demcenko contributed 2160 Moldovan leu in capital.  Defendants deny all remaining allegations in Paragraph 22.

23.    Deny.

24.    Deny.

25.    Defendants admit allegation in Paragraph 25 that Defendant Demcenko was appointed Director of Plaintiff SRL.  Defendants deny all remaining allegations in Paragraph 25.

26.    Deny.

27.    Deny.

28.    Deny.

29.    Deny.

30.    Deny.

31.    Deny.

32.    Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 32 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

33.    Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 33 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

34.    Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 34 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

35.    Deny.

36.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 36 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

37.     Deny.

38.     Deny.

39.     Defendants deny the allegation in Paragraph 39 that Defendant Ritlabs, Inc. was incorporated under the laws of the *State* of Virginia.  However, Defendants admit that Defendant Ritlabs, Inc. was incorporated by Defendant Demcenko under the laws of the *Commonwealth* of Virginia on July 14, 2008.  Defendants deny all remaining allegations in Paragraph 39.

40.     Deny.

41.     Deny.

42.     Deny.

43.     Deny.

44.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 44 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

45.     Defendants admit allegation in Paragraph 45 that on or about September 27, 2011, Defendant Demcenko sent an email to Mr. Tanurcov and Mr. Masiutin.  The email constitutes the best evidence of its content and speaks for itself.  Defendants deny all remaining allegations in Paragraph 45.

46.     Defendants admit allegation in Paragraph 46 that on or about September 27, 2011, Defendant Demcenko sent an email to Mr. Igor Talmatski. The email constitutes the best evidence of its content and speaks for itself.  Defendants deny all remaining allegations in Paragraph 46.

47.     Defendants admit allegation in Paragraph 47 that on or about September 27, 2011, Mr. Masiutin sent an email to Mr. Demcenko. The email constitutes the best evidence of its content and speaks for itself.  Defendants deny all remaining allegations in Paragraph 47.

48.     Defendants admit allegation in Paragraph 48 that on or about September 27, 2011, Defendant Demcenko sent an email to Mr. Masiutin. The email constitutes the best evidence of its content and speaks for itself.  Defendants deny all remaining allegations in Paragraph 48.

49.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 49 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

50.     Deny.

51.     Deny.

52.     Deny.

53.     Deny.

54.     Deny.

55.     Deny.

56.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 56 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

57.     Deny.

58.     Deny.

59.     Defendants admit allegation in Paragraph 59 that on December 20, 2011, Defendants' counsel sent Plaintiff SRL a letter.  The email constitutes the best evidence of its content and speaks for itself.  Defendants deny all remaining allegations in Paragraph 59.

60.     Admit allegation in Paragraph 60 that a license agreement was executed by Defendant Demcenko on behalf of Plaintiff SRL in December 2009.  Deny all remaining allegations in Paragraph 60.

61.     Deny.

62.     Deny.

63.     Admit.

64.     Admit.

65.     Admit.

66.     Defendants are without sufficient information or knowledge to form a belief as to what Plaintiff's "further investigation uncovered."  Notwithstanding the foregoing, Defendants admit allegation in Paragraph 66 that Defendant Ritlabs, Inc. filed for trademark registration of MAILVOYAGER mark with the USPTO in International Class 009. Defendants deny all remaining allegations in Paragraph 66.

67.     Defendants are without sufficient information or knowledge to form a belief as to what Plaintiff's "further investigation found."  Notwithstanding the foregoing, Defendants admit allegation in Paragraph 67 that Defendant Ritlabs, Inc. filed for trademark registration of THE BAR! mark with the USPTO in International Class 009.  Defendants deny all remaining allegations in Paragraph 67.

68.     Defendants are without sufficient information or knowledge to form a belief as to what Plaintiff's "discovered."  Notwithstanding the foregoing, Defendants admit allegation in Paragraph 68 that Defendant Demcenko used domain names besides <ritlabs.com>.  Defendants deny all remaining allegations in Paragraph 68.

69.     Defendants admit allegation in Paragraph 69 that Defendant Demcenko registered the ritlabs.us domain name on March 8, 2010.  Defendants deny all remaining allegations in Paragraph 69.

70.     Deny.

71.     Deny.

72.     Deny.

73.     Defendants are without sufficient information or knowledge to form a belief as to what Plaintiff's "discovered."  Notwithstanding the foregoing, Defendants admit allegation in Paragraph 73 that Defendant Ritlabs, Inc. issued thirty-nine shares of Defendant Ritlabs, Inc. to Plaintiff SRL.  Defendants deny all remaining allegations in Paragraph 73.

74.     Defendants admits allegation in Paragraph 74 that Defendant Demcenko modified the MX record of the <ritlabs.com> domain name.  Defendants deny all remaining allegations in Paragraph 74.

75.     All prior Answers are incorporated by reference.

76.     Deny.

77.     Defendants admit allegation in Paragraph 77 that Defendant Demcenko registered and used the <ritlabs.us> domain name.  Defendants deny all remaining allegations in Paragraph 77.

78.     Defendants admit allegation in Paragraph 78 that Defendant Demcenko registered the <ritlabs.net> domain name.  Defendants deny all remaining allegations in Paragraph 78.

79.     Defendants admit allegation in Paragraph 79 that Defendant Demcenko registered the <thebat.net> domain name.  Defendants deny all remaining allegations in Paragraph 79.

80.     Defendants admit allegation in Paragraph 80 that Defendant Demcenko registered the <batpost.com> domain name.  Defendants deny all remaining allegations in Paragraph 80.

81.     Deny.

82.     Deny.

83.     Deny.

84.     Deny.

85.     Deny.

86.     Deny.

87.     Deny.

88.     Deny.

89.     Deny.

90.     Deny.

91.     Deny.

92.     All prior Answers are incorporated by reference.

93.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 93 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

94.     Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 94 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

95.     Deny.

96.     Defendants admit allegation in Paragraph 96 that Defendant Demcenko entered into a license agreement between Plaintiff SRL and Defendant Ritlabs, Inc.  Defendants deny all remaining allegations in Paragraph 96.

97.     Deny.

98.     Deny.

99.     Deny.

100.    Deny.

101.    Deny.

102.    All prior Answers are incorporated by reference.

103.    Deny.

104.    Deny.

105.    Deny.

106.    Deny.

107.    Deny.

108.    Deny.

109.    Deny.

110.    Deny.

111.    Deny.

112.    Deny.

113.    All prior Answers are incorporated by reference.

114.    Deny.

115.    Deny.

116.    Deny.

117.    Deny.

118.    Deny.

119.    Deny.

120.    All prior Answers are incorporated by reference.

121.    Deny.

122.    Deny.

123.    Deny.

124.    Deny.

125.    Deny.

126.    All prior Answers are incorporated by reference.

127.    Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 127 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

128.    Deny.

129.    Deny.

130.    Deny.

131.    Deny.

132.    Deny.

133.    All prior Answers are incorporated by reference.

134.    Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 134 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

135.   Defendants are without sufficient information or knowledge to form a belief as to the truth of Paragraph 135 and therefore Defendants can neither admit nor deny the paragraph. To the extent any answer is required, Defendants deny the allegations.

136.   Deny.

137.   Deny.

138.   Deny.

139.   Deny.

140.   All prior Answers are incorporated by reference.

141.   Deny.

142.   Deny.

143.   Deny.

144.   Deny.

145.   Deny.

146.   Deny.

147.   Deny.

148.   Deny.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Justification / Privilege / Excuse)

Plaintiff is barred from any recovery on their Complaint against Defendants because Defendants' actions were privileged, justified, and/or excused by Plaintiff's breach of the License Agreement as set forth below in Paragraphs 149 through 165.

## THIRD AFFIRMATIVE DEFENSE
### (Laches)

Complaint is barred in whole or in part by the doctrine of laches, in that the Plaintiff has unreasonably delayed asserting its claims, and such delay has caused prejudice to Defendants.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

As a result of its own acts and/or omissions as set forth in Paragraph 149 through 165, Plaintiff has waived any right to recover under each and every cause of action purportedly alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE
### (Estoppel)

As a result of its own acts and/or omissions as set forth in Paragraph 149 through 165, Plaintiff is estopped, in whole or in part, from obtaining relief sought in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

The Complaint is barred, in whole or in part, by the doctrine of unclean hands based upon Plaintiff's own acts and/or omissions as set forth below in Paragraphs 149 through 165.

## SEVENTH AFFIRMATIVE DEFENSE
### (Right to Set-Off)

Any award in favor of Plaintiff must be reduced in an amount equal to the amount of damages caused to Defendants' by Plaintiff's breach of the License Agreement.

**RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

Defendants have not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely on other applicable defenses as may become available or apparent during discovery in this matter. Defendants reserve the right to amend or seek to amend its answer and/or affirmative defenses.

**COUNTERCLAIMS**

149.   Defendant and Counterclaimant Ritlabs, Inc. ("INC") is a corporation organized under the laws of the Commonwealth of Virginia on July 14, 2008 with its principal place of business in Alexandria, Virginia.

150.   Defendant and Counterclaimant Serghei Demcenko ("Demcenko"), a citizen of the Republic of Moldova currently residing in Centreville, Virginia, is the majority owner of INC.

151.   In February 1998, Demcenko, Maxim Masiutin, and Stefan Tanurkov decided to found Plaintiff and Counter-respondent Ritlabs, S.R.L. ("SRL"), an independent limited liability company with the principal activities of such to develop and sell software products.

152.   On July 14, 2008, INC was incorporated under the laws of the Commonwealth of Virginia, with Demcenko as the sole shareholder.

153.   In December, 2009, INC entered into a Distribution and License Agreement ("License Agreement") with SRL. Pursuant to the License Agreement, SRL granted INC an exclusive license to exhibit, reproduce, bundle, market, distribute and license certain SRL products (the "Products") in the United States and a non-exclusive license to exhibit, reproduce, bundle, market, distribute and license the Products anywhere else in the world.

15

154.     Under the License Agreement, SRL has an obligation to provide valid license keys to end users who purchase the Products from either INC or INC's authorized partners and distributors (the "Partners").  These license keys enable end users to use the Products after the Products are purchased from either INC or INC's Partners.

155.     Pursuant to Section 2.1(d) of the License Agreement, SRL is obligated to use its reasonable efforts to support INC's sales and marketing of the products contemplated under the License Agreement.

156.     Pursuant to Section 8.3 of the License Agreement, the prevailing party in any legal action brought by one a party to the License Agreement against another party and arising out of the License Agreement shall be entitled to reimbursement for its expenses, including court costs and reasonable attorney's fees.

157.     Based on the License Agreement, and through significant investment of funds and management resources, INC entered into several sublicensing, resale, and distribution agreements (the "Distribution Agreement") with its Partners in the United States and throughout the world to market, distribute and license the Products.

158.     On December 12, 2011, upon information and belief Mr. Masiutin and Mr. Tanurkov purported to conduct a general meeting of the members of SRL whereby Mr. Masiutin and Mr. Tanurkov, without any explanation or reason, allegedly resolved to terminate Demcenko as General Director of Plaintiff SRL and appoint Mr. Masiutin as General Director of SRL, in violation of Moldovan law.

159.     After Mr. Masiutin was purportedly appointed as General Director, without notice or explanation SRL refused to perform its obligations under the License Agreement.

160.    After Mr. Masiutin was purportedly appointed as General Director of SRL, SRL sent letters to INC's Partners claiming that SRL does not recognize the validity of the License Agreement and demanding that the Partners cease doing business with INC and instead direct all such business to SRL.

161.    Furthermore, SRL refuses to provide license keys to end users who purchased the Products from either INC or INC's Partners.

162.    Additionally, upon information and belief, SRL entered into license and distribution agreements whereby SRL granted certain companies the exclusive right to distribute Products in, among other countries, the Russian Federation and Kazakhstan.

163.    On December 20, 2011, INC, through its counsel, sent a letter to SRL, notifying SRL that it was in breach of the Licensing Agreement and demanding that SRL reestablish compliance with the License Agreement.

164.    In that letter, INC also informed SRL that, in light of its breach of the License Agreement, INC would cease payments to SRL under the License Agreement in lieu of holding on to such payments due to SRL until SRL resumed compliance with the License Agreement.

165.    Prior to SRL's refusal to comply with its obligations under the License Agreement, INC had been properly making payments to SRL as due under the License Agreement.

166.    As of the date of this Answer and Counterclaims, SRL continues to refuse to comply with the terms of the License Agreement.

167.    During the period between 2007 and 2011 and without the knowledge of INC or Demcenko, Mr. Masiutin requested that CIFNet transfer monies that were owed to SRL or to

INC to Mr. Masiutin.  In all, CIFNet made 38 transfers totaling $46,300.00 to Mr. Masiutin at his request.

168.    Upon information and belief, Mr. Masiutin knew that these payments were deducted by CIFNet from amounts otherwise owed by CIFNet to SRL during the period from 2007 to 2009 and were also deducted by CIFNet from amounts otherwise owed to INC during the period 2010 to 2011.

169.    Mr. Masiutin deliberately kept his actions secret and hidden from INC and Demcenko, which did not discover these covert actions until 2012.

## FIRST COUNTERCLAIM
### (Breach of Contract)

170.    INC incorporates by reference, as though fully set forth herein, Paragraphs 1 through 169 of this Answer and Counterclaims.

171.    SRL breached the License Agreement by failing to provide INC with an exclusive license to exhibit, reproduce, bundle, market, distribute and license the Products in the United States and a non-exclusive license to exhibit, reproduce, bundle, market, distribute and license the Products anywhere else in the world.

172.    SRL further breached the License Agreement by failing to use its reasonable efforts to support INC's sales and marketing of the products contemplated under the License Agreement.

173.    SRL further breached the License Agreement by entering into license and distribution contracts whereby SRL granted certain companies the exclusive right to distribute Products in, among other countries, the Russian Federation and Kazakhstan, thereby violating

INC's non-exclusive license to exhibit, reproduce, bundle, market, distribute and license the Products anywhere else in the world.

174.   INC has at all times performed under the terms of the License Agreement in the manner specified by the License Agreement, unless performance was excused.

175.   SRL failed and refused to perform as required under the License Agreement. This includes that SRL breached the License Agreement beginning in December of 2011 by refusing to provide license keys to end users who purchased the Products from either INC or INC's Partners and by demanding that INC's the Partners cease doing business with INC and instead direct all such business to SRL, in clear violation of the License Agreement.

176.   SRL's failure to perform under the License Agreement is unjustified and unexcused.

177.   SRL's failure and refusal to perform their obligations under the License Agreement have directly damaged counterclaimant INC through the loss of profits that INC would have realized from orders had the parties proceeded under the License Agreement.

178.   INC, therefore, has suffered damages as a direct and foreseeable result of Plaintiff's breach of the License Agreement, in an amount to be determined at trial.

179.   Under the License Agreement, INC is entitled to reimbursement for its expenses, including court costs and reasonable attorney's fees.

## SECOND COUNTERCLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)

180.   INC incorporates by reference, as though fully set forth herein, Paragraphs 1 through 179 of this Answer and Counterclaims.

181.    Implicit in the License Agreement between SRL and INC was a duty of good faith and fair dealing owed by SRL to INC.  SRL thereby covenanted that it would not do anything to frustrate the right of INC to receive benefits it has been promised under the License Agreement, including the benefit of being designated the sole, exclusive distributor and licensor of the Products in the United States as well as a non-exclusive distributor and licensor of the Products anywhere else in the world.

182.    By willfully failing to perform under the License Agreement, SRL breached the implied covenant of good faith and fair dealing.  As a result of SRL's breach, INC has been wrongfully denied the benefits of the License Agreement and has sustained damages in an amount to be determined at trial.

183.    Under the License Agreement, INC is entitled to reimbursement for its expenses, including court costs and reasonable attorney's fees.

## THIRD COUNTERCLAIM
### (Tortious Interference with Contract)

184.    INC incorporates by reference, as though fully set forth herein, Paragraphs 1 through 183 of this Answer and Counterclaims.

185.    SRL knew of INC's existing contractual and business relationships with its Partners.  SRL knew that INC had entered into valid Distribution Agreements with its Partners, pursuant to which INC's Partners were to distribute the Products in the United States and elsewhere from INC, who has an exclusive right to distribute and license the Products in the United States and a non-exclusive right to distribute and license the Products anywhere else in the world pursuant to the License Agreement.

186.     Despite knowledge of the Distribution Agreements, SRL contacted INC's Partners, misrepresented that INC was not an authorized distributor and licensors of SRL, and directed INC's Partner to conduct their business with SRL directly or SRL's other licensee and distributors instead of INC.

187.     SRL also refuses to provide license keys to end users who purchased the Products from either INC or INC's Partners, thereby knowingly causing INC to breach its Distribution Agreements with its Partners.

188.     In this way, SRL intentionally interfered with INC's contractual and business relationship with its Partners.

189.     INC, therefore, suffered damages as a direct and foreseeable result of SRL actions, in an amount to be determined at trial.

190.     As a direct result of SRL's actions and omissions, INC was damaged in an amount to be determined at trial.

191.     SRL's actions were undertaken with fraud, malic or oppression, or with conscious disregard of the rights of INC, and, therefore, INC is entitled to an award of exemplary and punitive damages against SRL in an amount according to proof at trial.

192.     Under the License Agreement, INC is entitled to reimbursement for its expenses, including court costs and reasonable attorney's fees.

## FOURTH COUNTERCLAIM
### (Intentional Interference with Prospective Economic Advantage)

193.     INC incorporates by reference, as though fully set forth herein, Paragraphs 1 through 192 of this Answer and Counterclaims.

194.    INC has been doing business with its Partners since the company's founding in
2008 and had existing and prospective business relationships with its Partners when it entered
into the License Agreement and the Distribution Agreements.  INC therefore had a prospective
economic advantage, or probability of future economic benefit, based on the likelihood that
INC's Partners would continue to perform under the Distribution Agreements, that INC would
be able to enter into new Distribution Agreements, and that INC would continue to distribute
and license the Products under the License Agreement.

195.    SRL knew of INC's relationship with INC's Partners.

196.    Despite SRL's express contractual commitment to grant INC the exclusive right
to distribute and license the Products in the United States and the non-exclusive right to
distribute and license the Products anywhere else in world, SRL ignored its promise to INC by
inducing INC's Partners to stop doing business with INC, attempting to usurp the distribution
of the Products in the United States for itself, by granting certain companies the exclusive right
to distribute Products in, among other countries, the Russian Federation and Kazakhstan,
thereby violating INC's non-exclusive license to exhibit, reproduce, bundle, market, distribute
and license the Products anywhere else in the world, and  by refusing to provide license keys to
end users who purchased the Products from either INC or INC's Partners, thereby knowingly
causing INC to breach its Distribution Agreements with its Partners.  SRL thus intentionally
engaged in wrongful conduct that falls outside the boundaries of fair competition, and which
was designed to interfere with or disrupt INC's business relationship with its Partners.

197.    Through SRL's intentional failure and refusal to abide by its contractual
commitment to ensure that INC's United States rights under the License Agreement remained
exclusive and that INC had non-exclusive rights under the License Agreement, SRL actually

and intentionally interfered with INC's prospective economic advantage.  This interference

caused injury to INC, by causing it to lose the profit it otherwise would have made on

distribution the Products to and through its Partners and through itself, by causing it to lose the

benefit of its investment in the marketing, advertising, and promotion of the Product, and by

causing it to lose the benefit of the resources invested in the infrastructure developed to

distribute and license the Products.

198.    As a direct result of SRL's actions and omissions, INC has been damaged in an

amount according to proof at trial.

199.    SRL's actions were undertaken with fraud, malic or oppression, or with

conscious disregard of the rights of INC, and, therefore, INC is entitled to an award of

exemplary and punitive damages against SRL in an amount according to proof at trial.

200.    Under the License Agreement, INC is entitled to reimbursement for its

expenses, including court costs and reasonable attorney's fees.

## FIFTH COUNTERCLAIM
### (Negligent Interference with Prospective Economic Advantage)

201.    INC incorporates by reference, as though fully set forth herein, Paragraphs 1

through 200 of this Answer and Counterclaims.

202.    SRL owed a duty of care to INC based on the parties' special relationship.

203.    By refusing to perform under the License Agreement to protect the exclusivity

and non-exclusivity of INC's rights to market, distribute, and sublicense the Products, SRL

acted unreasonable and wrongfully, and negligently interfered with INC's prospective business

relationship with its Partners and any other entities involved in order implicating INC's

exclusive and non-exclusive rights to market, distribute, and sublicense the Products.  It was reasonably foreseeable that SRL's interference would disrupt INC's economic relationship with its Partners and other entities involved in orders implicating INC's exclusive and non-exclusive rights to market, distribute, and sublicense the Products.

204.    SRL's negligent interference caused injury to INC by causing INC to lose the profit that it otherwise would have made on the distribution and licensing of the Products to, through, and by its Partners, by causing it to lose the benefit of its investment in the marketing, advertising, and promotion of the Products, and by causing it to lose the benefit of the resources invested in the infrastructure developed to distribute and license the Products.

205.    As a direct result of SRL's actions and omissions, INC has been damaged in an amount to be determined at trial.

206.    Under the License Agreement, INC is entitled to reimbursement for its expenses, including court costs and reasonable attorney's fees.

## SIXTH COUNTERCLAIM
### (Commercial Disparagement)

207.    INC incorporates by reference, as though fully set forth herein, Paragraphs 1 through 206 of this Answer and Counterclaims.

208.    SRL sent letters to INC's Partners claiming that SRL does not recognize the validity of the License Agreement and demanding that the Partners cease doing business with INC and instead direct all such business to SRL.

209.    In doing so, SRL knowingly and malicious disparaged INC's services to its

Partners, in effect accusing INC of providing illegitimate and unlicensed services to its

Partners and end users.

210.    As a direct result of SRL's actions and omissions, INC was damaged in an

amount to be determined at trial.

211.    SRL's actions were undertaken with fraud, malic or oppression, or with

conscious disregard of the rights of INC, and, therefore, INC is entitled to an award of

exemplary and punitive damages against SRL in an amount according to proof at trial.

212.    Under the License Agreement, INC is entitled to reimbursement for its

expenses, including court costs and reasonable attorney's fees.

## SEVENTH COUNTERCLAIM
## (CONVERSION)

213.    INC incorporates by reference, as though fully set forth herein, Paragraphs 1

through 212 of this Answer and Counterclaims.

214.    Upon information and belief, Mr. Masiutin, acting on behalf of SRL, improperly

and secretly directed CIFNet to transfer payments which CIFNet was supposed to make to INC

to Mr. Masiutin.

215.    In doing so, SRL knowingly deprived INC of payments by CIFNet which INC,

under the License Agreement and its distribution agreement with CIFNet, had a right to

receive.

216.    As a direct result of SRL's actions and omissions, INC was damaged in an

amount to be determined at trial.

217.    SRL's actions were undertaken with fraud, malice and oppression, or with conscious disregard of the rights of INC and Demcenko, and, therefore, INC and Demcenko are entitled to an award of exemplary and punitive damages against SRL in an amount according to proof at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Defendant/Counter-claimant Ritlabs, Inc. respectfully requests that this Court grant relief against Plaintiff and Counter-respondent Ritlabs, S.R.L. by issuing an order which:

a.    Requires Ritlabs, S.R.L. to post prejudgment security;

b.    Denies the injunctive relief request by Ritlabs, S.R.L.;

c.    Awards Ritlabs, Inc. compensatory and punitive damages based on Ritlabs, S.R.L.'s breachful and illegal conduct as set forth above;

d.    Directs Ritlabs, S.R.L. to immediately transfer the registration of <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> domain names to Sergei Demchenko, provide Mr. Demchenko with the username(s) and password(s) needed to access and obtain possession and control over the registrant account associated with the domain names and undertake any and all actions necessary to transfer those domain names into the possession of Mr. Demchenko;

e.    Authorizes Ritlabs, Inc. to resume their applications for registration of the following marks: RITLABS (USPTO Serial No. 85508804).

RITLABS (USPTO Serial No. 85503367), THE BAT! (USPTO Serial No. 85496559), and MAILVOYAGEUR (USPTO Serial No. 84550930);

f.      Finds that Ritlabs, S.R.L.'s allegation of ownership of the MAILVOYAGEUR mark was frivolous and intended solely to interfere with Ritlabs, Inc.'s ongoing operations;

g.      Awards Ritlabs, Inc. their attorneys' fees related to its defense and counterclaims in this matter, and such further relief as may be appropriate; and

h.      Provides any additional relief that this Court determines to be appropriate in this matter.

Dated: April 10, 2012                           By:   __/s/_____

                                                      Kevin R. Garden
                                                      Virginia Bar No. 30244
                                                      Attorney for Defendants
                                                      Ritlabs, Inc. and Serghei Demcenko
                                                      International Legal Counsels, PC
                                                      901 N. Pitt St., Suite 325
                                                      Alexandria, VA 22314
                                                      Telephone: (703) 535-5565
                                                      Fax: (202) 318-0723
                                                      kg@legal-counsels.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> **Mark G. Clark**
> **Counsel for Ritlabs, S.R.L.**
> **Traverse Legal, PLC**
> **810 Cottageview Drive, Unit G-20**
> **Traverse City, MI  49684**

_____/s/_____
Kevin R. Garden
Virginia Bar No. 30244
Attorney for Defendants
Ritlabs, Inc. and Serghei Demcenko
International Legal Counsels, PC
901 N. Pitt St., Suite 325
Alexandria, VA 22314
Telephone: (703) 535-5565
Fax: (202) 318-0723
kg@legal-counsels.com
