# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| RITLABS, S.R.L., | Case No.:  1:12CV215 AJT/IDD |
| Plaintiff/Counter-Defendant, | |
| v. | Hon. Anthony J. Trenga |
| RITLABS, INC., and SERGHEI DEMCENKO, | |
| Defendants/Counter-Claimants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

Dated: June 28, 2012

By: ___/s/_____
     Kevin R. Garden
     Virginia Bar No. 30244
     Attorney for Defendants
     Ritlabs, Inc. and Serghei Demcenko
     International Legal Counsels, PC
     901 N. Pitt St., Suite 325
     Alexandria, VA 22314
     Telephone: (703) 535-5565
     Fax: (202) 318-0723
     kg@legal-counsels.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iv-vii

STATUTES AND REGULATIONS ...........................................................................................v

    I. INTRODUCTION ...........................................................................................................1

    II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ........................................2

    III. ARGUMENT ................................................................................................................5

        A.  Summary Judgment Standard ...........................................................................5

        B.  Because SRL Cannot Prove Any Likelihood of Confusion in
             Connection With    INC's Use of SRL's marks, SRL's Lanham Act
             and Unfair Competition Claims  must be denied as a matter of law ................7

        C.  Even if SRL could show a likelihood of confusion, because there is no
             material dispute of fact that SRL was not damaged by INC's use of the
             marks, SRL's Counts III and VIII should be dismissed as a matter of
             law ...................................................................................................................11

        D.  The Court Must Dismiss SRL's Lanham Act and Unfair Competition
             Claims in connection with the MAILVOYAGER mark as a matter of
             law because SRL never used the MAILVOYAGER mark in commerce ........12

        E.  Because Plaintiff cannot show that Defendants "registered, trafficked
             in, or used"  the <ritlabs.com>, <ritlabs.net>, <batpost.com>, or
             <thebat.net> domain names, Count I must be dismissed as a matter of
             law ...................................................................................................................15

             1.  Plaintiff cannot show that Defendants "registered" the
                    <ritlabs.com>, <ritlabs.net>, <batpost.com>, and
                    <thebat.net> domain names under the ACPA ...........................16

             2.  Plaintiff cannot show the Defendants "trafficked in" the
                    <ritlabs.com>, <ritlabs.net>, <batpost.com>, and
                    <thebat.net> domain names for purposes of the ACPA .............18

             3.  Plaintiff cannot show that Defendants "used" the
                    <ritlabs.com>, <ritlabs.net>, <batpost.com>, and
                  <thebat.net> domain names under the ACPA ...........................19

         F.  Because Plaintiff cannot show that Defendants had "bad faith intent to
             profit" from use of the <ritlabs.com>, <ritlabs.net>, <batpost.com>, or
             <thebat.net> domain names, Count I must be dismissed as a matter of
             law ...................................................................................................................20

G.   Because Plaintiff cannot meet the jurisdictional $5,000 loss
     requirement of the Computer Fraud and Abuse Act, Count IV must be
     dismissed as a matter of law ..........................................................................22

H.   The undisputed facts demonstrate that SRL cannot recover damages
     under its Lanham Act and Unfair Competition claims because of
     Plaintiff's unreasonable delay in bringing this action which unduly
     prejudiced Defendants .................................................................................24

IV. CONCLUSION ........................................................................................................29

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                          **PAGE(S)**

*Alitalia-Linee Aeree Italiane S.p.A. v. casinoalitalia.com,*
        128 F. Supp. 2d 340 (E.D. Va. 2001) ............................................................16

*Anderson v. Liberty Lobby, Inc.,*
        477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ....................................6

*Anheuser-Busch, Inc. v. L & L Wings, Inc.,* 962 F.2d 316 (4th Cir. 1992) ....................8

*A.V. ex rel. Vanderhye v. iParadigms, LLC,*
        562 F.3d 630 (4th Cir. 2009) ..................................................................22, 23

*BM v. Chesterfield County Sch. Dist.,*
        2010 WL 1445661 (E.D. Va. 2010) .................................................................6

*Bea v. Home Box Office,*
        1998 WL 574167 (E.D. Va. 1998) ...................................................................6

*Beale v. Hardy,*
        769 F.2d 213 (4th Cir. 1985) ......................................................................... 6

*Causey v. Balog,*
        162 F.3d 795 (4th Cir. 1998) ........................................................................ 7

*Celotex Corp. v. Catrett,*
        477 U.S. 317 (U.S. 1986) ...............................................................................6

*Century 21 Real Estate Corp. v. Lendingtree, Inc.,*
        425 F.3d 211 (3d Cir. 2005) .......................................................................8, 9

*Costar Realty Info., Inc. v. Field,*
        737 F. Supp. 2d 496 (D. Md. 2010) ...............................................................22

*Cox v. Stanton,*
        529 F.2d 47 (4th Cir. 1975) ..........................................................................27

*Cray Communications, Inc. v. Novatel Comp. Sys., Inc.,*
        33 F.3d 390 (4th Cir. 1994) ............................................................................6

*Evans v. Techs. Applications & Serv. Co.,*
        80 F.3d 954 (4th Cir. 1996) ............................................................................7

*Fashions, Inc. v. Craftex, Inc.,*
    816 F.2d 145 (4th Cir. 1987) ........................................................................8

*Fischer v. Viacom Intern., Inc.,*
    115 F. Supp. 2d 535 (D. Md. 2000) ............................................................27

*Food Fair Stores, Inc. v. Lakeland Grocery Corp.,*
    301 F.2d 156 (4th Cir. 1962), *cert. denied,* 371 U.S. 817, 83 S. Ct. 31, 9 L. Ed. 2d 58
    (1962) ..........................................................................................................11

*Ford Motor Co., Inc. v. GreatDomains,*
    177 F. Supp. 2d 635 (E.D. Mich. 2001) .....................................................18

*George & Co., LLC v. Imagination Entm't Ltd.,*
    575 F.3d 383 (4th Cir. 2009) ......................................................................10

*Global Policy Ptnrs, LLC v. Yessin,*
    686 F. Supp. 2d 642 (E.D. Va. 2010) ............................................22, 23, 24

*Gopets Ltd v. Hise, et al.,*
    657 F.3d 1024 (9th Cir. 2011) ...............................................................17, 18

*Ground Zero Museum Workshop v. Wilson,*
    813 F. Supp. 2d 678 (D. Md. 2011) 22

*Int'l Bancorp, LLC v. Societe Des Bains,*
    329 F.3d 359 (4th Cir. 2004) .................................................................13, 14

*Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc.,*
    56 F. App'x 147 (4th Cir. 2003) ....................................................................7

*Lone Star Steakhouse & Saloon v. Alpha of Virginia,*
    43 F.3d 922 (4th Cir. 1995) .............................................................11, 12, 14

*Lucas Nursery & Landscaping, Inc. v. Grosse,*
    359 F.3d 806 (6th Cir. 2004) ......................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) .................................6

*Reno Air Racing Ass'n v. McCord,*
    452 F.3d 1126 (9th Cir. 2006) .....................................................................26

*McLean v. Fleming,* 96 U.S. 245 (1878) .................................................................25

*Pizzeria Uno Corp. v. Temple,*
    747 F.2d 1522 (4th Cir. 1984) ......................................................................8

*Playboy Enters., Inc. v. Welles,*
  279 F.3d 796 (9th Cir. 2002) ..........................................................................9

*Rosetta Stone Ltd. v. Google Inc.,*
  676 F.3d 144 (4th Cir. 2012) ................................................................8, 9, 10

*Resorts of Pinehurst v. Pinehurst Nat'l Corp.,*
  148 F.3d 417 (4th Cir. 1998) ........................................................................ 8

*Sara Lee Corp.* v. *Kayser-Roth Corp.,*
  81 F.3d 455 (4th Cir. 1996) ..........................................................................13

*Skippy, Inc. v. CPC Int'l, Inc.,*
  674 F.2d 209 (4th Cir.), *cert. denied*, 459 U.S. 969, 74 L. Ed. 2d 280, 103 S.
  Ct. 298 (1982) ..............................................................................................25

*Solid Host, NL v. Namecheap, Inc.,*
  652 F. Supp. 2d 1092 (C.D. Cal. 2009) 16, 18, 21

*Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*
  202 F.3d 489 (2d Cir. 2000) ..........................................................................20

*Stronach v. Virginia State University,*
  631 F. Supp. 2d 743 (E.D. Va. 2008) ............................................................6

*Synergistic Int'l, LLC v. Korman,*
  2007 U.S. Dist. LEXIS 9752 (E.D. Va. 2007) .......................................26, 27

*Tiffany (NJ) Inc. v. eBay Inc.,*
  600 F.3d 93 (2d Cir. 2010) ............................................................................8

*Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.,*
  448 F.2d 949 (4th Cir. 1971) ........................................................................25

*United Drug Co. v. Theodore Rectanus, Co.,*
  248 U.S. 90, 63 L. Ed. 141, 39 S. Ct. 48, 1918 Dec. Comm'r Pat. 369 (1918) ...............14

*Vulcan Golf, LLC v. Google, Inc.,*
  726 F. Supp. 2d 911 (N.D. Ill. 2010) .......................................................16, 20

*White v. Federal Deposit Ins. Corp.,*
  122 F.2d 770 (4th Cir. 1941) ........................................................................28

*Yellowbrix, Inc. v. Yellowbrick Sol., Inc.*
  181 F. Supp. 2d 575 (E.D.N.C. 2001) ..........................................................11

## STATUTES AND REGULATIONS

18 U.S.C. § 1030.................................................................................................17, 21

15 U.S.C. § 1125............................................................... 7,12,15,17,18,19,20

15 U.S.C. § 1051.....................................................................................................13

15 U.S.C. § 1127.....................................................................................................13

15 U.S.C. § 1117.....................................................................................................27

Va. Code § 8.01-249(1) ....................................................................................26, 27

Va. Code § 59.1-196, *et seq.* ...............................................................................26

Va. Code § 59.1-204 ..........................................................................................26

Virginia Code § 8.01-230 .................................................................................26

Virginia Code § 8.01-249 .................................................................................26

## **MISCELLANEOUS**

10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720
    (2d ed. Supp. 1994) ...................................................................................6

## I.      Introduction

At its heart, this case is a dispute over who controls Plaintiff Ritlabs, SRL ("SRL"), a Moldovan company.  Under Moldovan law, Defendant Serghei Demcenko is in fact the only voting shareholder in SRL and its current Director.  In order to increase SRL's ability to sell products in the United States marketplace and to augment SRL's overall revenues, Demcenko came to the United States to establish Ritlabs, Inc. ("INC") in 2008.  However, while Demcenko was in the United States, a coup was orchestrated in Moldova in 2011 by two disgruntled software programmers at SRL who allege to be minority shareholders in SRL (Messrs. Maxim Masiutin and Stefan Tanurkov).  These two shareholders illegally terminated Demcenko from his Director position at SRL and seized control of SRL.  (The validity of this takeover is currently being challenged by Demcenko in the Moldovan courts.)

The software programmers then lodged this lawsuit in the United States on behalf of SRL challenging Demcenko's previous actions in setting up INC as a United States company.  All of those challenges are based on Demcenko's alleged failure to comply with various formalities set out in SRL's bylaws even though those formalities were never adhered to by the alleged shareholders prior to when the dispute arose, and thus cannot be invoked at his stage.  Because Demcenko was and continues to be the Director and sole legal shareholder of SRL under Moldovan law, all of his actions were authorized and none of Plaintiff's allegations have merit.

While several of the issues in this case involve genuine disputes of material facts which require a trial, Defendants Demcenko and INC hereby seek summary judgment as a matter of law regarding the following issues as to which there is no genuine dispute of material facts: (1) SRL's Lanham Act and Unfair Competition claims must be denied as a matter of law because there was no likelihood of confusion in connection with INC's use

of SRL's marks nor was SRL damaged by INC's use of the marks; (2) SRL's Lanham Act and Unfair Competition Claims have no validity with respect to the MAILVOYAGER mark because SRL never used the MAILVOYAGER mark in commerce; (3) in addition, SRL cannot recover damages under its Lanham Act and Unfair Competition claims because SRL knew of INC's existence all along and the unreasonable delay in bringing this action unduly prejudiced Defendants; (4) SRL's anticybersquatting claim must be denied because SRL cannot show that Defendants "registered, trafficked in, or used" the <ritlabs.com>, <ritlabs.net>, <batpost.com>, or <thebat.net> domain names or that Defendants had "bad faith intent to profit" from use of those domain names; and (5) SRL's Computer Fraud and Abuse Act claim must be denied because SRL cannot meet the jurisdictional $5,000 loss requirement of that Act.

## II.     Statement of Material Facts Not In Dispute

1.      Serghei Demcenko was the General Director of  Ritlabs, S.R.L. (SRL) from its inception until at least December 12, 2011.  Demcenko Decl. ¶ 2.

2.      The domain name <ritlabs.com> was registered as of December 13, 1996.  *Id.* at ¶ 5.

3.      When a potential customer types in the domain name <ritlabs.com>, the user is directed to SRL's website.  *Id*. at ¶ 18.

4.      The <ritlabs.net> domain name was initially registered as of November 1, 2001. *Id.* at ¶ 7.

5.      The <ritlabs.net> domain name has never been associated with a website or any content.  *Id.* at ¶ 13.

6.      The <batpost.com> domain name was initially registered as of April 20, 2001.  *Id.* at ¶ 8.

7.      The <batpost.com> domain name has never been associated with a website or any content.  *Id.* at ¶ 15.

8.      The <thebat.net> domain name was initially registered as of January 09, 1998.  *Id.* at ¶ 9.

9.      Demcenko registered the domain name <ritlabs.us> on March 8, 2010.  *Id.* at ¶ 10.

10.      When a potential customer types in the domain name <ritlabs.us>, the potential customer is directed to the INC website.  *Id.* at ¶ 16.

11.      INC's website advertises SRL's products.  *Id.* at ¶ 19.

12.      If the potential customer desires to purchase an SRL product, the potential customer would click on a box on the INC website which would then take the user to SRL's website.  *Id.* at ¶ 20.

13.      If the potential customer decided to purchase the SRL product, the customer would then purchase that product directly from SRL.  *Id.* at ¶ 21.

14.      During this transaction, SRL is at all times identified as the owner of SRL's products.  *Id.*

15.      SRL receives all monies from such transactions that originate through advertising on INC's website and pays no commission or other value to INC for such transactions.  *Id.* at ¶ 22.

16.     INC does not directly sell SRL's products through its website.  *Id.* at ¶ 23.

17.     On December 13, 2012, Demcenko changed information regarding the identity of registrants in the database associated with the <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> domain names.  *Id.* at ¶ 44.

18.     This change in the registration data for the domain names did not change the website to which any users were directed when they visited those domain names.  *Id.* at ¶ 47.

19.     Demcenko also changed the MX record of the <ritlabs.com> domain name so as to regain access to emails sent to his personal @ritlabs.com email account and the email accounts of his family members.  *Id.* at ¶ 46.

20.     In doing so, Demcenko did not alter in any way the ability of any employees or members of Plaintiff to receive email through email addresses associated with the domain names. *Id.* ¶¶ 48-49.

21.     In 2011, Demcenko created the MAILVOYAGER mark.  *Id.* at ¶ 25.

22.     In 2011, Demcenko created the idea for the product sold under the MAILVOYAGER mark.  *Id.* at ¶ 26.

23.     Demcenko requested Maxim Masiutin to develop the software code to be used for the MAILVOYAGER product.  *Id.* at ¶ 28.

24.     Mr. Masiutin developed the initial software code for the MAILVOYAGER product, and that code has not been revised or upgraded.  *Id.* at ¶¶ 29-30.

25.     The MAILVOYAGER product, which consists of software code loaded onto a flashdrive, is built by INC in Alexandria, Virginia.   *Id.* at ¶ 32.

4

26.     The quality of the MAILVOYAGER product is controlled entirely by INC.  *Id.* at ¶ 33.

27.     The MAILVOYAGER product was, until recently, sold by INC through Amazon.com.  *Id.* at ¶ 34.

28.     When a purchaser of the MAILVOYAGER product has a question or issue regarding the product, they are directed to contact INC.  *Id.* at ¶ 35.

29.     The MAILVOYAGER product was previously advertised on SRL's website through a window that stated "Buy on Amazon."  *Id.* at ¶ 37.

30.     When a potential customer clicked on that window, the potential customer was directed to Amazon.com which identified the MAILVOYAGER product as being sold by INC. *Id.* at ¶ 38.

31.     Currently, the MAILVOYAGER product is not sold through SRL's website.  *Id.* at ¶ 42.

32.     MAILVOYAGER is not a registered trademark.  *Id*. at ¶ 43.

33.     INC was listed on Amazon.com as the only distributor of the MAILVOYAGER product.  *Id*. at ¶ 40.

III.    **Argument**

A.      **Summary Judgment Standard**

As this Court held in *BM v. Chesterfield County Sch. Dist*., 2010 WL 1445661 (E.D. Va. 2010):

> Summary judgment is appropriate where there is no genuine issue as to any material fact in the case. *See* Fed.R.Civ.P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *See id.*

As this Court also held in *Bea v. Home Box Office*, 1998 WL 574167 (E.D. Va. July 31, 1998):

> In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In so doing, the court must view the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Furthermore, "a party cannot 'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Chesterfield County Sch. Dist.*, 2010 WL 1445661 (E.D. Va. Apr. 9, 2010), *quoting Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985); *see Stronach v. Virginia State University*, 631 F. Supp. 2d 743, 754 (E.D. Va. 2008). Finally:

> Although the moving party must provide more than a conclusory statement that there are no genuine issues of material fact to support a motion for summary judgment, it "'need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.'" *Cray Communications, Inc. v. Novatel Comp. Sys., Inc.,* 33 F.3d 390, 393-94 (4th Cir.1994) (*quoting* 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2720 at 10 (2d ed. Supp. 1994)); *see also Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 587 (*quoting* Fed.R.Civ.P. 56(e)). The nonmoving party's evidence must be probative, not merely colorable, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), cannot be "conclusory statements ... without specific evidentiary support," *Causey v. Balog,* 162 F.3d 795, 801-02 (4th Cir.1998), cannot be hearsay, *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.1996), and must "contain admissible evidence and be based on personal knowledge." *Id.*

*Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc.*, 56 F. App'x 147, 148 (4th Cir. 2003).

> **B.    Because Plaintiff SRL Cannot Prove Any Likelihood of Confusion in Connection With INC's Use of SRL's alleged marks, SRL's Lanham Act and Unfair Competition Claims must be denied as a matter of law.[1]**

SRL's Lanham Act and unfair competition claims in connection with INC's use of the RITLABS, MAILVOYAGER and THE BAT! marks should be denied as a matter of law because SRL cannot satisfy the likelihood of confusion test required to succeed on those claims. In Counts III and VIII of its Complaint, SRL erroneously alleges that INC's use of the RITLABS, MAILVOYAGER and THE BAT! marks constitutes false designation of origin or common law unfair competition.  As shown below, each of these claims requires proof that the use of SRL's marks was likely to confuse consumers.  However, INC used SRL's marks solely to identify SRL's own products.  In other words, INC's use of the marks was nominative in nature.  As a result, INC's actions cannot possibly be viewed as creating any confusion as to the designation or origin of the products at issue because INC always represented that the products at issue were SRL's products.  Therefore, SRL has not and cannot present evidence that the public was likely confused by INC's actions.

For SRL to succeed on its claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), SRL must establish that there is a likelihood of consumer confusion as to the source, origin, or sponsorship of the products or services involved.  *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Courts generally consider seven factors to determine the likelihood of confusion, including:

---

[1] SRL has alleged that it owns the marks at issue.  Solely for purposes of this summary judgment, INC is assuming that SRL owns those marks.  INC reserves the right to challenge SRL's ownership of the marks in opposition to any dispositive motion filed by SRL and at trial.

(1) the distinctiveness of the senior mark;

(2) the similarity of the marks;

(3) the similarity of the goods or services that the marks identify;

(4) the similarity of the facilities employed by the parties to transact their business;

(5) the similarity of the advertising used by the parties;

(6) the defendant's intent in adopting the same or similar mark; and

(7) evidence of actual confusion.

*Resorts of Pinehurst v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422-23 (4th Cir. 1998).

However, this judicially created list of factors is not intended to be mandatory. *See Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984). Rather, the "factors are only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion." *Rosetta Stone Ltd. v. Google Inc*., 676 F.3d 144 (4th Cir. 2012) (*quoting Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992).  The use of these factors as merely a guide is especially important when the use of the plaintiff's trademark, as in the present case, is solely referential or nominative in nature.  *See Rosetta Stone Ltd.*, 676 F.3d at 154; *Century 21 Real Estate Corp. v. Lendingtree, Inc*., 425 F.3d 211, 217 (3d Cir. 2005). Unlike the typical infringement fact-pattern wherein the defendant "passe[s] off another's mark as its own" and "confus[es] the public as to precisely whose goods are being sold," *id*., a nominative use is one in which the defendant uses the plaintiff's trademark to identify the plaintiff's own goods (*see Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 102 (2d Cir. 2010))  and "makes it clear to consumers that the plaintiff, not the defendant, is the source of the trade-marked product or service."  *Century 21*, 425 F.3d at 220; *see Rosetta Stone Ltd.*, 676 F.3d 144 at 154; *see also Tiffany*, 600 F.3d at 102 (explaining that a "nominative fair use" does not

create "confusion about the source of [the] defendant's product" (internal quotation marks omitted)).

This situation is exactly the case here. INC used SRL's marks to identify <u>SRL's own products</u>. *See* Defendants' Statement of Material Facts Not In Dispute (hereinafter "INC's Facts") at ¶¶ 10-16. Moreover, INC's nominative non-infringing use of SRL's marks is underscored by the fact that a consumer, when attempting to purchase SRL's product through INC's website, is taken directly to SRL's website where he/she then makes the purchase, even if the consumer initially found the product through INC's website. *Id.* at ¶ 12.

In the context of a referential or nominative type of use, the application of the traditional multi-factor test is difficult because often many of the factors "are either unworkable or not suited or helpful as indicators of confusion in this context." *Rosetta Stone Ltd.*, 676 F.3d 144 at 154 (*quoting Century 21,* 425 F.3d at 224; *see Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002)). For example, the first two factors (the similarity of the marks and the strength of the plaintiff's mark) are of limited value for assessing the kind of use at issue. Consideration of the similarity of the marks will *always* suggest the presence of consumer confusion--the mark used will always be *identical* "because, by definition, nominative use involves the use of *another's* trademark in order to describe the trade-mark owner's *own* product." *Century 21, 425 F.3d at 224*. The similarity factor does not account for context and "lead[s] to the incorrect conclusion that virtually all nominative uses are confusing." *Rosetta Stone Ltd.*, 676 F.3d 144 at 155 (*quoting Playboy Enters.,* 279 F.3d at 801).

The strength of a plaintiff's mark has also limited probative value as to the confusion created by a nominative use. *Id.* The final two factors, the similarity of facilities and the similarity of advertising, are likewise of no relevance here. *Id.* For example, the court in *Rosetta*

*Stone Ltd.* concluded that the similarity of the parties' goods and services and the quality of the defendant's goods were irrelevant in the context of nominative use. *Id.*

Hence, the "disputed" remaining factors are (a) intent, (b) sophistication of consumers and (c) actual confusion.  As to intent, INC clearly did not intend to create consumer confusion when it used SRL's marks to identify *SRL's own products*. When a consumer who came to INC's website wished to purchaser SRL's products, he/she was taken directly to SRL's website where the purchase was made. *See* INC's Facts ¶ 12.  Payment by any such consumer likewise was made through SRL.  *Id*. at ¶ 15.  At all times during the purchase transaction, SRL was identified as the owner of the marks and of SRL's products.  *See Id*. at ¶ 15.

The consumer sophistication also favors a finding that INC's use of SRL's mark to identify SRL's products is not likely to create confusion. The price of SRL's products as well as the amount of time it takes to familiarize oneself with the type of products offered by SRL attracts potential purchasers that are well educated consumers.  *See* Demcenko Decl. ¶¶ 4-5. These types of consumers will spend time and effort learning about the products they are purchasing and the company behind such products.

Indeed, SRL has not presented a shred of evidence that any consumer was actually confused in connection with INC's use of SRL's trademarks. *See George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 398 (4th Cir. 2009)* ("Actual confusion can be demonstrated by both anecdotal and survey evidence."). Plaintiff and Defendant's websites have been functioning and co-existing since April 2010 and yet Plaintiff has provided no evidence of a single instance of confusion on the part of its consumers. *See* Demcenko Decl. ¶ 18.  While a lack of such evidence, taken alone, does not require a finding of unlikelihood of confusion, the fact that consumers have, thus far, avoided confusion over supports a finding that they are

10

unlikely to become confused in the future.  *See Yellowbrix, Inc. v. Yellowbrick Sol., Inc.,* 181 F. Supp. 2d 575 (E.D.N.C. 2001).

In Count VIII, SRL asserts a claim of unfair competition against INC under Virginia common law.  The Fourth Circuit has held that "[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved."  *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) (*citing Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 160 (4th Cir. 1962), *cert. denied,* 371 U.S. 817, 83 S. Ct. 31, 9 L. Ed. 2d 58 (1962)). Hence, the likelihood of confusion analysis set forth above also applies to SRL's unfair completion claim as well.

In sum, SRL cannot succeed in proving any likelihood of confusion.  The undisputed facts in this case clearly show (even when viewed in a light most favorable to SRL) that INC never intended to create any confusion nor did its actions create even a likelihood of confusion . Hence, the Court should dismiss SRL's claims under the Lanham Act (Count III) and unfair competition claim (Count VIII) in connection with INC's use of RITLABS, MAILVOYAGER or THE BAT! marks.

    **C.**    **Even if SRL could show a likelihood of confusion, because there is no material dispute of fact that SRL was not damaged by INC's use of the marks, SRL's Counts III and VIII should be dismissed as a matter of law.**

Even if INC's use of SRL's marks resulted in a likelihood of confusion, SRL has failed to produce any evidence that it was harmed in any way by INC's use of SRL's marks.  Any consumer who clicked on SRL's products bearing SRL's mark while visiting INC's website was taken directly to SRL's website where the consumer made the purchase *directly* through SRL.

*See* INC's Facts ¶¶ 10-16.   Therefore, it is impossible to view such a transaction benefiting anyone other than SRL.   SRL received all monies from such transaction, and paid no commission or other value to INC.  *Id.* at ¶ 15.

SRL in fact profited from INC's use of SRL's trademarks in connection with SRL's products.  *See Id.* at ¶¶ 10-16.[2]  Further, SRL produced absolutely no evidence showing actual confusion in connection with INC's use of SRL's marks, nor any harm to its business.   Hence, because there is no genuine dispute as to these material facts, the Court should rule that SRL cannot recover actual damages on its trademark related claims (Counts III and VIII).

> **D.    The Court Must Dismiss SRL's Lanham Act and Unfair Competition Claims in connection with the MAILVOYAGER mark as a matter of law because SRL never used the MAILVOYAGER mark in commerce.**

SRL's Counts III and VIII are based in part on the allegation that INC violated SRL's rights in the MAILVOYAGER mark.  However, SRL does not have a protectable interest in the MAILVOYAGER mark because it never used that mark in commerce.  *See Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 930 (proving trademark infringement under 15 U.S.C. § 1125(a) requires a plaintiff to prove it has a protectable mark).  Therefore, SRL's Counts III and VIII must be dismissed with prejudice with respect to the MAILVOYAGER mark.

MAILVOYAGER is not a registered trademark.  INC's Facts ¶ 32.  In order for an owner to have a protectable interest in an unregistered trademark, it must satisfy two requirements: (1)

---

[2] SRL asserts that INC did not provide SRL with enough of INC's revenues from INC's role as a distributor of SRL's products.  However, this particular claim does not prove damages to the marks arising from any alleged trademark infringement but instead pertains to potential relief resulting from any such infringement (*i.e.*, a return of profits received).  Thus, SRL's claim for this money is not an allegation that SRL was damaged by INC's actual use of the marks.  This claim for a return of revenues received by INC and Demcenko is also incorporated in SRL's claim for breach of fiduciary duty and tortious interference.

the mark must be used in commerce, *see* 15 U.S.C. § 1051, and (2) the mark must be distinctive. *See Sara Lee Corp.* v. *Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).  With respect to the use of a mark in commerce, in *Int'l Bancorp, LLC v. Societe Des Bains*, 329 F.3d 359, 363 (4th Cir. 2004), the court addressed the scope of the term "commerce" within the Lanham Act.  The court held that "commerce" under  the Lanham Act "is coterminous with that commerce that Congress may regulate under the Commerce Clause of the United States Constitution." *Int'l Bancorp, LLC*, 329 F.3d at 364. The court then went on to determine that "*use in commerce*" under the Lanham Act means the *bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark*. *Id.*  The Act itself states:

> For purposes of this chapter, a mark shall be deemed to be used in commerce [] when—
>
>  (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
>  (B) the goods are sold or transported in commerce…

15 U.S.C. § 1127.   Consistent with this definition of the statutory "use in commerce" requirement, the Supreme Court has said that "there is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . . The right to a particular mark grows out of its use, not its mere adoption;" *United Drug Co. v. Theodore Rectanus, Co*., 248 U.S. 90, 97, 63 L. Ed. 141, 39 S. Ct. 48, 1918 Dec. Comm'r Pat. 369 (1918); *see Int'l Bancorp, LLC*, 329 F.3d at 365.  Mere advertising of that mark does not establish its protectability.  *See Int'l Bancorp, LLC*, 329 F.3d at 365.

In the present case, the distinctiveness requirement does not need to be addressed because SRL cannot meet the first prong of this test set forth above.   SRL never used the

MAILVOYAGER mark in commerce and therefore does not have a protectable interest in the mark.  The MAILVOYAGER product is sold exclusively by INC through Amazon.com and other distributors.   *See* Demcenko Decl. ¶ 34.   The product distributed under the MAILVOYAGER mark consists of software code loaded onto a flashdrive.  INC's Facts ¶ 25.  The MAILVOYAGER product is assembled by INC (not SRL) in Alexandria, Virginia. *Id.*  The quality of the MAILVOYAGER product is solely controlled entirely by INC.  *Id.* at ¶ 26.  When a purchaser of the MAILVOYAGER product has a question, they are directed to contact INC.  *Id.* at ¶ 28.

SRL never sold the MAILVOYAGER product, but *merely advertised* the MAILVOYAGER product on its website.  *See Id.* at ¶¶ 29-31.  When a consumer clicked on the MAILVOYAGER product link found on SRL websites, the consumer was directed to Amazon.com where he/she could purchase the MAILVOYAGER product *from INC*.  *Id.*   INC was listed on Amazon.com as the only distributor of the MAILVOYAGER product under MAILVOYAGER mark.  *Id.* at ¶ 33.  In fact, as of the date of this motion, the MAILVOYAGER product is not even available through SRL's website.  *Id*. at ¶ 31.

The elements required to show a trademark violation and unfair competition under the Lanham Act are identical to elements need to show unfair competition under Virginia law. *See Lone Star Steakhouse & Saloon v. Alpha of Virginia*, 43 F.3d 922, 930 n. 10 (4th Cir. 1995).  Accordingly, the discussion set forth above applies equally to SRL's Count VIII regarding common law unfair completion.

Based on these undisputed facts, SRL does not use the MAILVOYAGER mark in commerce as required under the Lanham Act and therefore has no protectable interest in the MAILVOYAGER mark.  Hence, the Court should dismiss all SRL's claims under Lanham Act

14

and its unfair competition claim in connection with INC's use of the MAILVOYAGER mark as set out in Counts III and VIII.

     **E.**     **Because Plaintiff SRL cannot show that Defendants "registered, trafficked in, or used" the <ritlabs.com>, <ritlabs.net>, <batpost.com>, or <thebat.net> domain names, Count I must be dismissed as a matter of law with respect to these domains.**

In Count I, Plaintiff claims that Defendants Demcenko and Ritlabs, Inc. violated the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), because they "registered, trafficked in, and/or used" the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names with a bad faith intent to profit from the use of Plaintiff's trademarks.  Compl ¶¶ 77-88.  Plaintiff's argument must be denied as a matter of law because Defendants did not "register, traffic in, or use" any of these domain names as required in order to impose liability under the ACPA.[3]

The ACPA was enacted in an effort to curb cybersquatting, a practice of registering "well-known brand names as Internet domain names" so as to force trademark owners "to pay for the right to engage in electronic commerce under their own brand name."  S. Rep. No. 106-140, at 5 (1999).  Under the ACPA, trademark owners have redress against "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Id.* at 4.  In relevant part, the ACPA states that "[a] person shall be liable in a civil action by the owner of a mark . . . if . . . that person . . . registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark."  15 U.S.C. §  1125(d).  Importantly, in order to be liable under the ACPA, the alleged cybersquatter must have "register[ed], traffic[ked] in, or use[d]" the

_____

[3]While Defendants also did not violate the ACPA with respect to the domain name <ritlabs.us>, there are genuine issues of material fact related to that issue which preclude summary judgment.

domain names at issue.  *See, e.g. Alitalia-Linee Aeree Italiane S.p.A. v. casinoalitalia.com*, 128 F. Supp. 2d 340, 343 (E.D. Va. 2001); *Vulcan Golf, LLC v. Google, Inc.*, 726 F. Supp. 2d 911, 915 (N.D. Ill. 2010) ("The ACPA imposes liability on one who 'registers, traffics in, or uses' the allegedly infringing domain names.").  Because no reasonable trier of fact could find that Defendants Demcenko or Ritlabs, Inc. registered, trafficked in, or used the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names, Count I of Plaintiff's Complaint must be dismissed as to these domain names.

> **1.      SRL cannot show that Defendants "registered" the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names under the ACPA**

"As used in the [ACPA], to 'register' means to register a domain name by submitting an application to a registrar."  *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1104-1105 (C.D. Cal. 2009).  It is undisputed that the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names were each initially registered prior to the events leading to this dispute, namely the formation of INC and the purported firing of Defendant Demcenko by Plaintiff.  *See* INC's Fact. at ¶¶ 2, 4, 6, 8.  Thus, the actual registration of these domain names is not being challenged.  Plaintiff must be contending that, in changing the information in the administrative registration database associated with these domain names from Ritlabs, S.R.L. to Ritlabs, Inc. in late 2011, Demcenko "registered" these domain names for the purpose of the ACPA.  The law does not support any such contention.

For purposes of the ACPA, there is a critical distinction between registering a domain name and changing information associated with the domain.  Logically, Demcenko could not have "registered" the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names when he changed the information in the administrative registration database associated with the domain names in 2011 because the domain names were already registered and had been

for many years.  *See Id.*  Demcenko merely changed the registrant information associated with the domain names.  *Id.* at ¶ 16.  Revising the identity of the registrant for an existing domain name cannot reasonably be viewed as registering the domain name under the ACPA.

Defendants' position is directly supported by a recent Ninth Circuit opinion which examined the meaning of the term "register" as used in the ACPA.  *See Gopets Ltd v. Hise, et al.*, 657 F.3d 1024 (9th Cir. 2011).  In *Gopets Ltd.*, plaintiff alleged that by transferring a previously registered domain name to another entity, defendant "re-registered" the domain name under the ACPA and could be liable thereunder.  *Id.* at 1030.  Essentially, plaintiff argued that by re-registering the domain name, defendant fell under the "register" requirement of the ACPA and could be liable for cybersquatting.  The Ninth Circuit dismissed plaintiff's argument.  *Id.* at 1032.  After analyzing the ACPA and its legislative history, the Court concluded that "Congress meant 'registration' to refer only to the initial registration" of the domain name.  *Id.* at 1031. Therefore, re-registration of the domain name by the defendant "was not a registration within the meaning of § 1125(d)(1)."  *Id.* at 1032.

Demcenko's revisions to information in the registration data field associated with the domain names clearly do not qualify as "registration" under the ACPA.  At the time that Demcenko changed the registrant information associated with the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names, the domain names had already been registered for many years.  *See* INC's Fact. at ¶¶ 2, 4, 6, 8.  Moreover, as shown above, even if Demcenko is viewed as having "re-registered" the domain names, *Gopets Ltd.* demonstrates that a re-registration is not considered "registration" under the ACPA.  Accordingly, Defendants cannot be considered to have "registered" the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names under the ACPA.

17

     **2.**     **SRL cannot show that Defendants "trafficked in" the &lt;ritlabs.com&gt;, &lt;ritlabs.net&gt;, &lt;batpost.com&gt; and &lt;thebat.net&gt; domain names for purposes of the ACPA.**

In addition to registering a domain name, a person may also be liable under the ACPA if he "traffics in" a domain name.  15 U.S.C. § 1125(d)(1)(A)(ii).  As defined in the statute, the term  "traffics in" "refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration."  15 U.S.C. § 1125(d)(1)(E).    For instance, the sale of a domain name would meet this requirement. *See, e.g. Solid Host, NL*, 652 F. Supp. 2d at 1104 (C.D. Cal. 2009) ("[As used in the ACPA] '[t]rafficking' refers to selling and licensing domain names and similar activity."); *Ford Motor Co., Inc. v. GreatDomains*, 177 F. Supp. 2d 635, 644-45 (E.D. Mich. 2001) (concluding that the term "traffics in" involves transfer or receipt of ownership interest in a domain name).

Plaintiff SRL neither alleges nor presents any evidence to show that Defendants INC or Demcenko have sold, purchased, loaned, pledged, licensed or conducted any similar transactions with regards to the &lt;ritlabs.com&gt;, &lt;ritlabs.net&gt;, &lt;batpost.com&gt; and &lt;thebat.net&gt; domain names. Indeed, Plaintiff cannot make this showing because there Defendants have not done so and have no intention to do so. *See* Demcenko Decl. at ¶¶ 50-51.  Accordingly, Defendants cannot be considered to have "trafficked in" the &lt;ritlabs.com&gt;, &lt;ritlabs.net&gt;, &lt;batpost.com&gt; and &lt;thebat.net&gt; domain names.

     **3.**     **SRL cannot show that Defendants "used" the &lt;ritlabs.com&gt;, &lt;ritlabs.net&gt;, &lt;batpost.com&gt; and &lt;thebat.net&gt; domain names under the ACPA**

Although the ACPA does not explicitly define what the term "use" of a domain entails, Defendants cannot be considered to have "used" the &lt;ritlabs.com&gt;, &lt;ritlabs.net&gt;, &lt;batpost.com&gt;

and <thebat.net> domain names under the ACPA pursuant to any reasonable interpretation of that term.  SRL has not alleged that Defendants have actually done anything with or to the domain names after changing the domains' registration data.  In fact, Defendants did not alter the domains or their content in any way whatsoever.  *See* INC's Fact. at ¶ 17.   Nor did Defendants change the websites to which users would be directed if they typed in the domain names.  *Id.* After Demcenko changed the information related to the registrants associated with the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domains, the domains operated in the exact same manner as they had prior to Demcenko's actions.  *See Id.*  Moreover, there is no evidence that <ritlabs.net> and <batpost.com> are, and or have ever been associated with functional websites.  *See* Exh. A, B to Demcenko Decl; INC Facts ¶¶ 5, 7.  Therefore, Plaintiff cannot allege that Defendants "used" such domain names when in fact they have never been used.  Accordingly, Defendants cannot be considered to have "used" the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names.

However, even if this Court determines that Defendants "used" the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names, Demcenko cannot be held personally liable for any ACPA remedies resulting from such use.  The ACPA clearly states that "[a] person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee."  15 U.S.C. § 1125(d)(1)(D). Demcenko is neither the registrant for the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domains nor the authorized licensee of such registrant.  Demcenko Decl. ¶¶ 11-12. For instance, while it is Defendants position that Demcenko cause the <ritlabs.com> domain to be registered in his name, he did not identify himself as the registrant.  This is consistent with Defendants' position that the registrant of a domain name is not necessarily the *per se* owner of a

domain name.  Accordingly, any liability stemming from the use of the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names must be limited to INC as the purported registrant of these domains.  *See Vulcan Golf, LLC.*, 726 F. Supp. 2d at 918 ("The court, however, need not delve into the legislative history of the ACPA, because the statutory language is clear: A person may only be held liable for 'using' a domain name if that person is a registrant or a registrant's authorized licensee.").

> **F.**     **Because SRL cannot show that Defendants had "bad faith intent to profit" from use of the <ritlabs.us>, <ritlabs.com>, <ritlabs.net>, <batpost.com>,  or <thebat.net> domain names, Count I must be dismissed as a matter of law.**

As previously described, to state a claim for violation of the ACPA, SRL must plead, *inter alia*, that Defendants "ha[d] a bad faith intent to profit from [Plaintiff's] mark."  *See* 15 U.S.C. § 1125(d)(1)(A)(i).

> The bad faith required to support a cybersquatting claim is not general bad faith, but "a bad faith intent to profit from the mark," 15 U.S.C. § 1125(d)(1)(A)(I) (emphasis added). Thus, the defendant must intend to profit specifically from the goodwill associated with another's trademark. *See Lucas Nursery*, 359 F.3d at 810 ("In its report on the ACPA, the Senate Judiciary Committee distilled the crucial elements of bad faith to mean an 'intent to trade on the goodwill of another's mark,'" quoting S. Rep. No. 106-140, at 9); *Sporty's Farm*, 202 F.3d at 495 (Congress enacted the ACPA "'to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks,'" quoting S. Rep. No. 106-140, at 4 (emphasis added).

*Solid Host, NL,* 652 F. Supp. 2d at 1109 (C.D. Cal. 2009).  SRL cannot succeed in its ACPA claim because it cannot show that Defendants had an intent to profit from the alleged use of SRL's marks.

With regard to the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain names, SRL cannot show that Defendants intended to profit from use of SRL's marks.

Defendants have in no way made use of these domains.  Moreover, Defendants have not altered

the domains or their content in any way whatsoever.  INC's Fact ¶ 17.  For instance, even after

Defendant Demcenko changed the registrant entry for <ritlabs.com>, the revenue from each

purchase made on <ritlabs.com> still went directly to SRL.  *Id.* ¶¶ 12-14.  Moreover,

<ritlabs.net> and <batpost.com> are not, and have not been, associated with functional websites.

*Id.* ¶ 5, 7.  Accordingly, SRL has utterly failed to show that Defendants have exhibited any intent

to profit from use of the <ritlabs.com>, <ritlabs.net>, <batpost.com> and <thebat.net> domain

names.

Furthermore, SRL has failed to show that Defendants intended to profit from the

<ritlabs.us> domain.  As described in Section B, Defendants used the website associated with the

<ritlabs.us> domain to advertise SRL's own products.  When a consumer who came to INC's

website by using the <ritlabs.us> domain then wished to purchaser SRL's products, he/she was

taken directly to SRL's website where the purchase was made. *Id.* ¶¶ 12-13.  Any payment for

these products was made directly to SRL.  *Id.* ¶ 14.  Accordingly, it is unclear how SRL

supposes that Defendants intended to profit from use of <ritlabs.us>.

Consequently, because SRL has not and cannot show that Defendants intended to profit

from the <ritlabs.us>, <ritlabs.com>, <ritlabs.net>, <batpost.com>, or <thebat.net> domain

names, SRL's Count I must be dismissed.

### G. Because Plaintiff SRL cannot meet the jurisdictional $5,000 loss requirement of the Computer Fraud and Abuse Act, Count IV must be dismissed as a matter of law.

SRL's claim in Count IV must be dismissed as a matter of law because SRL cannot meet

the jurisdictional $5,000 loss requirement of the Computer Fraud and Abuse Act, 18 U.S.C. §

1030.  SRL alleges that, after purportedly being fired by SRL and without authorization to do so,

Demcenko changed information on the registrant fields for the <ritlabs.com>, <ritlabs.net>,

<batpost.com>, and <thebat.net> domain names.  Compl. ¶¶ 58, 70-72.  SRL further alleges that

Demcenko modified the MX record of the <ritlabs.com> domain name, thereby allowing

Demcenko to potentially (but not actually) redirect electronic mail sent to others' individual

email addresses containing the @ritlabs.com suffix.  Compl. ¶ 74, 117.  SRL alleges that, by

engaging in this conduct, Demcenko violated the Computer Fraud and Abuse Act.  However,

even if these allegations were true, based on the evidence in the record, SRL has failed to show

that Demcenko's alleged violation caused loss aggregating at least $5,000 in value.  Accordingly,

Demcenko is entitled to summary judgment as to Count IV of SRL's Complaint because SRL

has not adduced evidence from which a reasonable jury could conclude that SRL has suffered

losses of $5,000 or more. *See Global Policy Ptnrs, LLC v. Yessin*, 686 F. Supp. 2d 642, 646

(E.D. Va. 2010) (summary judgment granted where plaintiff failed to produce evidence showing

that plaintiff suffered losses of $5,000 or greater); *Ground Zero Museum Workshop v. Wilson*,

813 F. Supp. 2d 678, 693 (D. Md. 2011) (same); *Costar Realty Info., Inc. v. Field*, 737 F. Supp.

2d 496, 515 (D. Md. 2010) (same).

      The Computer Fraud and Abuse Act ("CFAA"), although primarily a criminal statute,

permits private parties to bring civil causes of action.  *A.V. v. iParadigms, LLC*, 562 F.3d 630,

645 (4th Cir. 2009).

> To maintain a civil action under the CFAA, plaintiffs must show that the alleged
> violation "caused . . . loss . . . aggregating at least $ 5,000 in value." 18 U.S.C. §
> 1030(c)(4)(A)(i). On summary judgment, a CFAA plaintiff must therefore show
> that there are triable issues as to (i) whether a CFAA-qualifying "loss"
> aggregating at least $ 5,000 occurred, and (ii) whether this loss was "caused" by a
> CFAA violation.

*Global Policy Ptnrs, LLC*, 686 F. Supp. 2d at 646.

> "Loss" qualifying under the CFAA means

> any reasonable cost to any victim, including [i] the cost of responding to an
> offense, [ii] conducting a damage assessment, and [iii] restoring the data,
> program, system, or information to its condition prior to the offense, and [iv]

> any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service[.]

18 U.S.C. § 1030(e)(11).  "Plaintiff['s] alleged damages must fall within this definition in order to qualify as a 'loss' under the CFAA and therefore satisfy the $ 5,000 jurisdictional minimum." *Global Policy Ptnrs, LLC*, 686 F. Supp. 2d at 647.  In addition to showing that qualifying costs were incurred, SRL must also show that the costs are reasonable and that they were caused by the CFAA violation.  *Id.*; *see A.V. ex rel. Vanderhye*, 562 F.3d at 646.  "Accordingly, on summary judgment, plaintiff[] here must show there is a triable issue of fact as to whether  (i) alleged losses were reasonably foreseeable at the time of the alleged CFAA violations, and (ii) alleged losses resulting from measures undertaken in response to the alleged violations were reasonably necessary at the time."  *Global Policy Ptnrs, LLC*, 686 F. Supp. 2d at 648.

There is no evidence that SRL has suffered ***any*** loss as a result of Demcenko's alleged violation of the CFAA.  As to the loss suffered by SRL as a result of Demcenko's action, SRL merely vaguely states that "[b]y means of Defendant's conduct, Defendant caused loss aggregating at least $5,000 in value."  Complaint ¶ 118.  SRL fails to specify precisely how and in what manner SRL has incurred such cost.  In order for Count IV to survive this summary judgment motion, SRL must present evidence showing with particularity that SRL incurred costs of at least $5,000 and that such costs were reasonably foreseeable at the time of the alleged CFAA violations and that the alleged losses undertaken in response to the alleged violations were reasonably necessary at the time.  *See Global Policy Ptnrs, LLC*, 686 F. Supp. 2d at 648.  SRL has not done so, nor can it.

In changing the data in the registrant database associated with the <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> domain names, Demcenko in no way interfered with the operation of these websites.  INC Facts ¶ 16-17.   After these administrative changes

were made, the domains and associated websites continued to operate in precisely the same manner as they had prior to Demcenko making such changes. *See Id.* Similarly, in changing the MX record of the <ritlabs.com> domain name, Demcenko only redirected email addressed to him and his family members. *See Id.* at ¶ 18-19. None of the emails addressed to any other @ritlabs.com email address were redirected. *Id.* at ¶ 19. SRL has failed to present any evidence to show that by redirecting email intended for Demcenko's personal @ritlabs.com email account and those of his family, SRL suffered a loss of at least $5,000 as required to state a claim under the CFAA.

It is clear that no reasonable trier of fact could find that SRL has met the CFAA's $5,000 jurisdictional loss threshold. Accordingly, Count IV of SRL's complaint must be denied as a matter of law.

> **H.     The undisputed facts demonstrate that Plaintiff SRL cannot recover damages under its Lanham Act and Unfair Competition claims because of SRL's unreasonable delay in bringing this action which unduly prejudiced Defendants.**

This lawsuit was brought by SRL as a corporate entity. Even if the Court determines that INC and Demcenko violated SRL's trademark rights, SRL is barred from receiving a monetary award for this violation because SRL, as a corporate entity, was aware all along of Defendants' use of those marks and did nothing until 2012. In addition, even if SRL claims that the actions of its Director, Demcenko, in setting up INC in 2008 were outside the scope of his duties and therefore should not be imputed to SRL, it is undisputed that SRL's current alleged Director (Mr. Masiutin) actually knew of INC's existence no later than April 2010, and the other alleged shareholder (Mr. Tanurkov) admittedly had no interest whatsoever in SRL's business operations. In addition, prior to April 2010, these alleged shareholders had failed to exercise due diligence

into the actual activities of SRL.[4]   Thus, it would be patently unfair to allow SRL itself to

belatedly pursue allegations of trademark violation and unfair competition based on Defendants'

use of SRL's marks when SRL and all of its shareholders either previously knew of that use (or

did not care) and never objected in a timely manner.

In trademark cases, as in other disputes, unreasonable delay in bringing a suit is always a

serious impediment to relief being granted. *McLean v. Fleming*, 96 U.S. 245, 251, 24 L. Ed. 828

(1878).  Thus, the Fourth Circuit has recognized that laches may be invoked as a defense against

claims for damages in trademark infringement actions. *See Skippy, Inc. v. CPC Int'l, Inc.*, 674

F.2d 209, 212 (4th Cir.), *cert. denied*, 459 U.S. 969, 74 L. Ed. 2d 280, 103 S. Ct. 298 (1982).

While the applicability of laches depends upon the particular facts and circumstances of each

case, the following factors ordinarily should be considered: (1) whether the owner of the mark

knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the

mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly

prejudiced by the owner's delay.  *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*,

448 F.2d 949, 958 (4th Cir. 1971).   If these factors are satisfied, laches normally will bar a

trademark owner's claim for damages against an infringer.  *Skippy*, 674 F.2d at 212.

The Fourth Circuit also commented that "[a] substantial delay between the

commencement of infringement activities and the plaintiff seeking judicial relief should weigh

against an award of damages."  *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir.

2006).   While consideration of element (2) above would be circular in assessing the

reasonableness of any delay in this matter, the owner's knowledge of infringement and any

---

[4] While these other alleged shareholders may have a shareholder's action against
Demcenko, they have not asserted any such claims.  Plaintiff's lawsuit was brought on behalf of
SRL itself.  SRL has asserted various actions against Demcenko for alleged violation of his
fiduciary duty and tortious interference with its contracts and prospective economic advantage.

25

prejudice to the infringing party may inform the reasonableness of when Plaintiff filed its Complaint. *Synergistic Int'l, LLC*, 2007 U.S. Dist. LEXIS 9752 (E.D. Va. 2007)**;** *see also Reno Air Racing Ass'n., Inc. v. McCord,* 452 F.3d 1126, 1138-38 (9th Cir. 2006) (holding that the defense of laches will bar a trademark infringement claim "only where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time").

In *Synergistic Int'l*, 2007 U.S. Dist. LEXIS 9752, which involved the applicability of a laches defense in a trademark infringement action, this Court referred to the two-year statute of limitation period under the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196, *et seq.,* as a general guideline for determining the reasonableness of when a plaintiff files its complaint. The Court stated that, although laches is a distinct defense from a statute of limitations defense, "[i]f the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Id.; see also McCord,* 452 F.3d at 1138-39. However, "courts have often presumed that laches is applicable" outside the statute of limitations period. *McCord,* 452 F.3d at 1139.

The VCPA provides for a private right of action (Va. Code § 59.1-204) and requires that "[a]ny individual action pursuant to § 59.1-204 for which the right to bring such action first accrues on or after July 1, 1995, shall be commenced within two years after such accrual. The cause of action shall accrue as provided in § 8.01-230." Va. Code § 59.1-204.1. Virginia Code § 8.01-230 sets forth a general rule that a cause of action accrues when the injury occurs, regardless of when it was discovered, except as otherwise provided in Virginia Code § 8.01-249. Section 8.01-249 expressly excludes the VCPA from this general rule and states that VCPA actions accrue "when such fraud, mistake, misrepresentation, deception, or undue influence is

discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249(1); see *also Synergistic Int'l*, 2007 U.S. Dist. LEXIS 9752 at 24.

Even if VCPA actions accrued at the time of infringement, without reference to plaintiff's knowledge thereof, the accrual of a federal action, even one that borrows a state statute of limitations period, is a question of federal law. *Id.; see Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975) (accrual of federal civil rights action is a question of federal law); *Fischer v. Viacom Intern., Inc.,* 115 F. Supp. 2d 535, 539 (D. Md. 2000) (applying *Cox* to a Lanham Act claim). "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Cox,* 529 F.2d at 50. Therefore, claims for relief under 15 U.S.C. § 1117(a) accrue when the cause of action is discovered, or reasonably should have been discovered, and are subject to a two-year statute of limitations in Virginia. *Synergistic Int'l*, 2007 U.S. Dist. LEXIS 9752 at 25.

INC was created by SRL's Director in 2008. Demcenko Decl. at ¶¶ 2, 52; *see* Complaint at ¶ 39. INC sent invoices to SRL beginning in 2010 for amounts owed by INC, and INC sent payments to SRL's accountant, Mr. Talmatsky. Demcenko Decl. at ¶ 53. Mr. Masiutin, an alleged shareholder of SRL and the current alleged Director of SRL, claimed that Demcenko hid the existence of INC from him and that he had no knowledge of INC's existence until April 20, 2011. Complaint and Demand for Jury Trial at ¶ 43)("Mr. Masiutin first discovered that Defendant Demcenko had created Defendant INC without corporate authorization on April 20, 2011"); Exh. B attached to Declaration of Kevin R. Garden (p. 7, lines 9-10)(Mr. Masiutin claimed to be the current CEO of SRL). However, as early as April 2010, Demcenko sent emails to Mr. Masiutin, explicitly stating that Demcenko was the Chief Executive Officer of INC and listing the domain <www.ritlabs.us>. *See* Exh. C attached to Demcenko Decl. Obviously, if

27

Demcenko had been trying to hide INC's existence from Mr. Masiutin, Demcenko would not

have explicitly identified INC or his role as INC's CEO in his email to Mr. Masiutin.  When

presented in his deposition with these emails which indisputably contradicted his allegations and

which demonstrated that he had been informed of INC's existence well before April 20, 2011,

Mr. Masiutin did the proverbial tap-dance and asserted that:

> I receive lots of E-mails and I have a habit to- to skip all the signatures.  I never
> read them, and probably didn't notice the signature [which identified INC and
> Demcenko being CEO of INC] because they are redundant and our E-mail client,
> TheBat!, it highlights it in a different color, a shade of gray, and it's very hard to
> read it and I don't know- I probably didn't notice this at all.

Exh. B attached to Declaration of Kevin R. Garden (p. 108, lines 2-10).

After receiving these emails in 2010 which indisputably demonstrated that INC existed

and was using the RITLABS mark, Mr. Masiutin made absolutely no inquiries into the existence

of INC or its use of SRL's marks and made no inquiries of Demcenko as to the origin, legitimacy

or activities of INC.  Exh. B attached to Declaration of Kevin Garden (p. 112, line 9- p. 113, line

2); Demcenko Dec. at ¶¶ 54-55.  Mr. Masiutin simply sat on his hands.

Mr. Tanurkov, the other alleged shareholder of SRL, stated that, even though he acted as

SRL's Director at times, he was not concerned with the business operations of SRL and instead

preferred to write software code.  Exh. A attached to Declaration of Kevin Garden (p. 22, line

14-p. 23, line 8)(Mr. Tanurkov did not like to get involved in SRL's administrative matters and

preferred to write software code); *id*. at p. 122, line 9-19)(Mr. Tanurkov did not make any efforts

to protect SRL's marks because he was a software programmer); *id*. at p. 124, line 1-p. 125, line

15 (Mr. Tanurkov acted as Director when Demcenko was gone).  In fact, Mr. Tanurkov became

aware in 2001 that SRL had entered into a License Agreement with INC, but even then he did

not bother to inquire into the matter.  Exh. B attached to Declaration of Kevin Garden (p. 127, line 13-page 128, line 19).

SRL's lawsuit alleging that INC was violating SRL's trademarks was not filed until February 28, 2012.  Thus, the Complaint was filed four years after INC was created, and nearly two years after SRL's current alleged Director, Mr. Masiutin, had explicit knowledge of INC's existence.  Where all shareholders of a corporation have (or should have) knowledge of a fact, the corporation is deemed to have knowledge of the fact.  *See White v. Federal Deposit Ins. Corp.*, 122 F.2d 770, 775 (4th Cir. 1941)("Notice to all the stockholders of a matter so intimately affecting their rights must be deemed notice to the corporation")(citations omitted).  Therefore, SRL clearly had notice of INC's existence, and should have made any inquiries if it had any concerns about that existence, no later than April 2010- yet it did nothing until February 2012.

In addition, INC suffered prejudice due to the lapse of time between when SRL knew or should have known of the alleged infringing activities and the filing of this action.  During this period, INC invested substantial resources in developing its website, products and building up a network of suppliers and distributors.  *See* Demcenko Decl. ¶ 56.

Thus, because there is no genuine dispute to these material facts as to SRL's inexcusable delay in filing this action and undue prejudice suffered by INC as a result of INC's delay, the Court should rule as a matter of fairness that SRL cannot recover damages on its trademark related claims.


IV.     **Conclusion**

For the reasons set forth above, Defendants Ritlabs, Inc. and Serghei Demcenko respectfully request that the Court dismiss Plaintiff's Counts I, III, IV and VIII in their entirety,

29

and/or, in alternative, dismiss all claims against Defendants based on the MAILVOYAGER

mark.

Dated: June 28, 2012                    By:   /s/

> Kevin R. Garden
> Virginia Bar No. 30244
> Attorney for Defendants
> Ritlabs, Inc. and Serghei Demcenko
> International Legal Counsels, PC
> 901 N. Pitt St., Suite 325
> Alexandria, VA 22314
> Telephone: (703) 535-5565
> Fax: (202) 318-0723
> kg@legal-counsels.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2012, I will electronically file the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> **John Andrew Baxter**
> **I.S. Law Firm PLLC**
> **1199 N Fairfax St**
> **Suite 702**
> **Alexandria, VA 22314**

_____/s/_____
Kevin R. Garden
Virginia Bar No. 30244
Attorney for Defendants
Ritlabs, Inc. and Serghei Demcenko
International Legal Counsels, PC
901 N. Pitt St., Suite 325
Alexandria, VA 22314
Telephone: (703) 535-5565
Fax: (202) 318-0723
kg@legal-counsels.com