**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| RITLABS, S.R.L., | Case No.:  1:12CV215 |
| Plaintiff/Counter-Defendant, | |
| v. | Hon. Anthony J. Trenga |
| RITLABS, INC., and SERGHEI DEMCENKO, | |
| Defendants/Counter-Claimants. | |

<u>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO**</u>

<u>**DEFENDANTS' COUNTERCLAIMS**</u>

\*      Exhibit GG to this Brief is hereby filed under seal pursuant to this Court's order of June 22, 2012.

TABLE OF CONTENTS

Table of Contents ................................................................................................... ii

Table of Authorities.............................................................................................. iii

I.      Introduction................................................................................................1

II.     Undisputed Facts........................................................................................1

III.    Standard of Review ....................................................................................6

IV.     Argument ....................................................................................................7

        a.      Introduction ....................................................................................7

        b.      Defendant Demcenko is liable for a breach of his fiduciary duty of loyalty to
                Plaintiff SRL and, therefore, the License Agreement is void and Defendants'
                Counterclaims are unsupported by the facts or law ..............................................7

        c.      Defendants' Counterclaim for conversion is unsupported by the facts and law.22

V.      Conclusion ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991)....................................7

*Cohen v. Mayflower Corp.*, 196 Va. 1153, 1160 (1955)...............................................................8

*H. Jay Spiegel & Associates, P.C. v. Spiegel*, 652 F. Supp. 2d 639, 643
    (E.D. Va. 2009) aff'd 400 F. App'x 757 (4th Cir. 2010) .........................................................7

*Hairston Motor Co. v. Newsome*, 253 Va. 129, 135 (1997).........................................................23

*Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 301-02 (1998)..............................................23, 24

*Pepper v. Litton*, 308 U.S. 295, 311 (1939) ..............................................................................10

*Riffe v. Magushi*, 859 F. Supp. 220, 223-24 (S.D.W. Va. 1994)..................................................8

*Today Homes, Inc. v. Williams*, 272 Va. 462, 471-72 (2006) ....................................................10

**Rules**

Fed. R. Civ. P. 44.1.....................................................................................................................8

Fed. R. Civ. P. 56(c)....................................................................................................................6

Now comes Plaintiff, RitLabs, SRL, by and through its attorneys Traverse Legal, PLC and I.S. Law Firm, P.C., and states the following in support of its Motion for Summary Judgment as To Defendants' Counterclaims.

## I.   INTRODUCTION

Plaintiff submits this Brief in Support of its Motion for Summary Judgment because no genuine issues of material fact remain for trial and, as such, Plaintiff is entitled to summary judgment as a matter of law as to all of the counts listed in Defendants' Counterclaims. Defendant Demcenko, through his proxy Defendant INC, has breached his fiduciary duty to Plaintiff SRL by creating a branch or affiliate office of SRL within the United States without the vote or approval of the General Assembly of SRL. Additionally, Defendant INC has entered into a fallacious and unauthorized license agreement between SRL and INC without the approval of the majority of the disinterested members of SRL to divert the majority of SRL's revenues to his personal bank account and to obtain and extend his L-1A visa within the United States. Accordingly, Defendants' Counterclaims are not supported by the law or the facts and, since no genuine issues of material fact remain for trial, summary judgment is appropriate as a matter of law.

## II.   UNDISPUTED FACTS

Plaintiff RitLabs, SRL ("SRL") is a limited liability company organized under the laws of the Republic of Moldova with its principal place of business in Chisinau, Moldova. Defendant RitLabs, Inc. ("INC") is a corporation organized under the laws of the State of Virginia with its principal place of business in Alexandria, VA. Defendant Serghei Demcenko

1

("Demcenko") is a citizen of the Republic of Moldova who is currently domiciled in Centreville, VA.

SRL is an Internet technology and software provider located in Chisinau, Moldova that currently employs 18 full time employees located in that country. Since early 1998, SRL has developed, sold, and distributed several highly acclaimed software products throughout the world, including the United States. SRL's current software offerings include The Bat!, BatPost, The Bat Voyager, The Bat Professional eith eToken Pro, TinyWeb, Argus, and MailVoyager. Plaintiff's predecessor in interest, RIT, SRL ("RIT"), offered its software goods through its primary website, http://www.ritlabs.com, since as early as December 16, 1996. Since succeeding RIT in 1998, SRL has offered the same software products through http://www.ritlabs.com.

SRL's predecessor in interest, RIT, was incorporated on February 9, 1993 in the Republic of Moldova and was owned by two limited liability companies: IBIS, SRL, which held 50% of RIT's shares, and ALEX, SRL, which held 50% of RIT's shares. See Complaint Exhibit A, SRL Registration History. At the time of RIT's incorporation, Defendant Demcenko was the Director of RIT. See Complaint Exhibit A, SRL Registration History. In late 1996, RIT, which was selling e-mail products, sought to advertise and offer its products over the Internet and purchased the <ritlabs.com> domain name.

In late 1997, ALEX, SRL was unable to renew the registration of its company due to a change in the law related to limited liability companies in Moldova. See **Exhibit A**, Deposition of Demcenko pg. 18; see also **Exhibit B**, Deposition of Tanurcov pgs. 31-32. Consequently, Defendant Demcenko, Mr. Tanurcov, and Mr. Masiutin resigned from RIT and, on February

2

1998, formed SRL as a limited liability company. See Complaint Exhibit C, State Registration of SRL. Prior to the recognition of SRL by Moldova, and on February 3, 1998, Demcenko, Tanurcov, and Masiutin executed the Articles of Association of SRL, which serve as the equivalent of a LLC operating agreement under US law. Under these Articles, Defendant Demcenko received 40% ownership of SRL and Mr. Masiutin and Mr. Tanurcov each received 30% respectively. See Complaint Exhibit D, Articles of SRL. Defendant Demcenko was appointed the Director of SRL, which is the equivalent of a manager under US law.

Once SRL was formed, the property of RIT was transferred to SRL. The WHOIS database entry associated with the <ritlabs.com> domain name was soon after changed to reflect SRL as its owner, and The Bat! and other software products were transferred into the ownership of SRL. See Complaint Exhibit AH, Printout of WHOIS History; see also **Exhibit A,** Deposition of Demcenko pgs. 29-30, 42. SRL continued to operate its business, contract with distributors and sell its software until mid 2008.

On July 14, 2008, Demcenko incorporated INC under the laws of Virginia. See Complaint Exhibit E, Virginia Entity Search. Demcenko incorporated INC without a vote of the General Assembly of SRL or the approval, acquiescence, or prior knowledge of his business partners and, in doing so, used the "RitLabs" name. Mr. Masiutin first discovered that Demcenko had diverted one of SRL's distributors, STech Data, to INC. See Complaint Exhibit G, Printout of April 20, 2011 fax. Mr. Masiutin continued to collect evidence of Demcenko's diversion of corporate assets, opportunities, and information for his own personal gain for several months before approaching Mr. Taurcov, his partner, with information regarding such diversion.

3

On September 27, 2011, Defendant Demcenko sent an email to Mr. Tanurcov and Mr. Masiutin requesting that they backdate a corporate resolution stating that Mr. Demcenko was authorized to represent SRL "abroad, organize branches, and control the search and attraction of finance. See Complaint Exhibit N, Printout of Sept. 27, 2011 email. Also on Sept. 27, Demcenko sent an email to Tigor Talmatski, SRL's accountant, instructing him to prepare a resolution of the General Assembly, dated Jan. 2001, stating that Mr. Demcenko was authorized to create branches, create affiliated companies, and search for investments abroad. See Complaint Exhibit J, Printout of Second Sept. 27, 2011 Email. This email requested that Talmatski provide this resolution to Tanurcov and Masiutin for signing. Mr. Masiutin objected to the backdated resolution, which Demcenko characterized as necessary "to prove my activity in the company" to U.S. Citizenship and Immigration Services. See Complaint Exhibit Q, Printout of Sept. 27, 2011 return email from Demcenko.

Tanurcov and Masiutin quickly became suspicious of Demcenko's motives and came to believe that Demcenko had created INC without authorization of the General Assembly or SRL's members to extend his visa in the United States. Tanurcov and Masiutin soon discovered that Demcenko had been diverting payments from SRL to INC without the authorization of the General Assembly or SRL's members. See Complaint Exhibit R, Printout of invoices.

In response, Tanurcov and Masiutin held a meeting of the General Assembly on December 12, 2011 and voted to remove Defendant Demcenko from his position as Director of Plaintiff SRL. See Complaint Exhibit U, Printout of vote of members. Additionally, Tanurcov and Masiutin voted to elect Mr. Masiutin as the Director of SRL. See Complaint Exhibit V,

Election of Masiutin. Defendant Demcenko did not attend, though notice was provided to his last known address in Moldova. See **Exhibit C**, Moldova State Authority recognition. On Dec. 13, 2011, the Moldova State Authority recognized Mr. Masiutin as the elected director of SRL. See Complainant Exhibit W, State authority recognition.

A day later, Demcenko, without authorization, accessed the domain registrant account associated with several of SRL's domain names, took control of those domain names, and changed the WHOIS entry associated with the domain name registrant from SRL to INC. See Complaint Exhibit Y, Dec. 14, 2011 WHOIS entry. On Dec. 20, 2011, SRL received a demand letter from Defendants' attorneys stating that SRL was in violation of a previously unknown license agreement between SRL and INC ("License Agreement"). See Complaint Exhibit Z, Printout of Dec. 20, 2011 letter to SRL. This License Agreement was executed by Demcenko as Director of SRL and by Yuri Bakay, purported to be the vice president of INC. See Complaint Exhibit AA, License Agreement. The License Agreement purports to provide INC with an exclusive license to sell and distribute SRL's software to end users throughout the United States, as well as a non-exclusive license to sell SRL's software throughout the world. Further, this License Agreement provides INC with 60% of gross revenue from the sale of SRL's software. Thus, not only does Demcenko receive 40% of sales by virtue of his status as a member in SRL, but he also receives 60% of the sales price on the front end by virtue of his status as the owner of INC.

On Dec. 23, 2011, INC, without authorization, filed for registration of the RITLABS mark with the USPTO (IC 009). See Complaint Exhibit AB, USPTO entry for RITLABS (009). In response, SRL sent a demand letter to Defendants on Jan. 3, 2012. See Complaint

5

Exhibit AC, Jan. 3, 2012 letter. The next day, on Jan. 4, 2012, INC filed for trademark

registration of RITLABS with the USPTO in International Class 042. See Complaint Exhibit

Y. SRL's further investigation found that INC had also filed for registration of

MAILVOYAGER (IC 009) and THE BAT! (IC 009). See Complaint Exhibit AD, USPTO

entry for RITLABS (IC 042); see also Complaint Exhibit AF.

SRL also soon discovered that Defendants had registered the <ritlabs.us> domain name

on March 8, 2010, see Complaint Exhibit AG, and had issued, without authorization of the

General Assembly, thirty-nine shares to SRL, the share certificate having been executed by

Demcenko on behalf of INC both as CEO and Secretary of INC. See Complaint Exhibit AK.

Then, on Jan. 21, 2012, Demcenko modified the MX records associated with the <ritlabs.com>

domain name, which controls the direction of electronic mail sent to any address containing the

@ritlabs.com suffix. As a result, Demcenko took control of the email accounts of SRL,

including the accounts associated with its 18 employees. See Complaint Exhibit AG.

Subsequently, Plaintiff filed this lawsuit on February 28, 2012 and this Court granted a

preliminary injunction in favor of Plaintiff on April 5, 2012, which required Defendants to

return the <ritlabs.com>, <ritlabs.net>, <thebat.net>, and <batpost.com> domain names to SRL

and to suspend Defendant's trademark registrations.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."

See Fed. R. Civ. P. 56(c). "Once a motion for summary judgment is properly made and

supported, the opposing party has the burden of showing that a genuine dispute exists." *H. Jay*

*Spiegel & Associates, P.C. v. Spiegel*, 652 F. Supp. 2d 639, 643 (E.D. Va. 2009) aff'd 400 F.

App'x 757 (4th Cir. 2010). An opposing party cannot simply rely upon allegations or denials,

but it must "set forth specific facts showing that there is a genuine issue for trial." Anderson at

248. A "mere scintilla" of evidence is not enough to overcome a properly supported motion. *Id.*

at 248-52. In reviewing a motion for summary judgment, the Court must "draw any inferences

in the light most favorable to the non-movant" and "determine whether the record taken as a

whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre*

*Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

## IV. ARGUMENT

### a. Introduction

All but one of Defendants' Counterclaims against Plaintiff SRL concern the

overarching question of whether the License Agreement between SRL and INC is valid and

authorized. Since Defendant Demcenko breached his fiduciary duty of loyalty in violation of

the Articles of Association of SRL, the License Agreement between Defendant INC and

Plaintiff SRL is invalid, and, therefore, Defendant's counterclaims must fail as a matter of law.

Furthermore, Defendants' final claim for conversion is unsupported by the law and the factual

evidence within the record. In light of these deficiencies, no genuine issues of material fact

remain for trial and summary judgment is proper as a matter of law.

### b. Defendant Demcenko is liable for a breach of his fiduciary duty of loyalty to Plaintiff SRL and, therefore, the License Agreement is void and Defendants' Counterclaims are unsupported by the facts or law.

7

Defendants' Counterclaims I-VI are contingent upon whether the License Agreement between SRL and INC is valid. Since Defendant Demcenko breached his fiduciary duty by unilaterally creating INC without the authorization or knowledge of his business partners, and because Defendant Demcenko executed the License Agreement in a self-interested transaction with a company in which he owned 100% of the shares, Defendant breached his fiduciary duty in executing the License Agreement and the License Agreement is void. *See Cohen v. Mayflower Corp.*, 196 Va. 1153, 1160 (1955) (holding that "[a]n agreement may be void and of no legal effect because public policy forbids that a contract be entered into with respect to the subject matter" and "an agreement may be void and of no legal effect because the statute forbids an agreement with respect to the subject matter with which the parties are undertaking to contract.").

In determining whether Defendant Demcenko has breached his fiduciary duty of loyalty to Plaintiff SRL, this Court should apply the Republic of Moldova's Law On Limited Liability Companies, which governs the duties of a Director of a Moldovan limited liability company. "Where foreign law is applicable, the parties have the burden of sufficiently proving foreign law in such a way that the court may apply it to the facts of the case." *Riffe v. Magushi*, 859 F. Supp. 220, 223-24 (S.D.W. Va. 1994). "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.

Plaintiff has provided a translation of the Republic of Moldova's Law On Limited Liability Companies, which came into effect on November 17, 2007. See **Exhibit D**,

Translation of Law On Limited Liability Companies.[1] Article 72(5) of that law states, "When exercising his (her) functions, the administrator shall show diligence and loyalty." See **Exhibit D**, Translation of Law On Limited Liability Companies. Article 73(1) states, "The administrator is responsible before the company for observance of the limits of his (her) powers established by the constitutive act or, if it does not provide otherwise, by the general assembly of associates." Article 73(2) states, "If the administrator violated the restrictions set in [Article 73(1)], the company or any associate may ask for reparation of damages incurred on the company on its behalf."

Where an associate of the company, the equivalent of an LLC member in the United States, has committed fraud or breached his duty of loyalty to the company, he may be removed from the company. Article 47(1) states, "The general assembly of associates, administrator, one or more associates may ask for exclusion of the company of an associate that... acting as a company's administrator, committed frauds to detriment of the company and used company's signature or property in his (her, its) favor or in the favor of the third parties." Where this has occurred, Article 47(2) states, "The associate shall be excluded from the company through a court decision."

Even presuming, *arguendo*, that the Court declines to apply Moldovan law, the Moldovan duty of loyalty corresponds to the common law duty of loyalty found under Virginia law. Under Virginia law, "It is a fundamental principle that a corporate officer or director is under a fiduciary obligation not to divert a corporate business opportunity for personal gain

---

[1]   The Republic of Moldova is a civil law system and the Law On Limited Liability Companies is interpreted and applied on a case by case basis.

because the opportunity is considered the property of the corporation." *Today Homes, Inc. v. Williams*, 272 Va. 462, 471-72 (2006). Virginia law recognizes,

> He who is in such a fiduciary position cannot serve himself first and his cestuis second… He cannot by the intervention of a corporate entity violate the ancient precept against serving two masters… He cannot utilize his inside information and his strategic position for his own preferment. He cannot violate rules of fair play by doing indirectly through the corporation what he would not do directly. He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors… For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandisement, preference, or advantage of the fiduciary to the exclusion or detriment of the cestuis.

*Pepper v. Litton*, 308 U.S. 295, 311 (1939). In usurping the corporate opportunity of SRL, misappropriating and diverting the corporate assets of SRL, and fraudulently diverting the dealers of SRL to INC, Defendant Demcenko has breached his fiduciary duties under both Moldova and Virginia law and, as such, the License Agreement between SRL and INC is void.

Defendant Demcenko's actions constitute a breach of his fiduciary duty of loyalty because he incorporated Defendant INC on July 14, 2008 to fraudulently extend his United States visa and misappropriate the funds and goodwill of Plaintiff SRL and did so without the vote, approval, or acquiescence of his business partners in SRL. Pursuant to Article 58(1)(2)(e) of the Law on Limited Liability Companies of Moldova, the General Assembly of a limited liability company must authorize the creation of branch or affiliate offices through a ¾ vote of

its members. See **Exhibit D**, Translation of Law On Limited Liability Companies. Despite his

current protestations to the contrary, Defendant Demcenko characterized INC as a branch or

representative company in September 2011,[2] and INC has operated as such since its

incorporation. See **Exhibit E**, Sept. 27, 2011 email from Demcenko to Tanurcov. Thus,

Defendant Demcenko admitted, in 2011, that he sought to form a branch or representative

office of SRL in the United States, and he did so without a 3/4 vote of the General Assembly

of SRL. See **Exhibit F**, Def. Demcenko's Response to Pl's First Requests to Admit # 11.

Defendant Demcenko incorporated Defendant INC in July 2008 with funds that he

misappropriated from SRL. Specifically, Defendant Demcenko paid his attorney, Mr.

Dubograev, $8,432.40 from amounts owed to SRL under the terms of its agreement with its

third party payment processor CIFNet. See **Exhibit G**, Sept. 9, 2008 email from Demcenko to

Kruglov; see also **Exhibit H**, Jan. 6, 2009 email from Kruglov to Demcenko; **Exhibit I**,

CIFNet financials re sale of SRL's software; see also **Exhibit J**, Deposition of Yevgeniy

Kruglov Pg. 12, 6-12, Pgs. 15-16. At the time of this payment, Defendant Demcenko made

clear that he wanted "to continue the process of transferring clients to American RitLabs." See

**Exhibit G**, Sept. 9, 2008 email from Demcenko to Kruglov. To effectuate this process,

Defendant Demcenko, as Director of SRL, sent termination letters to SRL's dealers in a

concerted effort to push those dealers into the newly formed INC. See **Exhibit K**, July 15,

2008 termination letter from Demcenko to CIFNet; see also **Exhibit L**, 2005 agreement

---

[2] "In order to extend my visa I need the protocol from the co-founders' meeting (with back date), in which I would be grated the right to represent the company abroad, organized branches, and control the search and attraction of finance."

between SRL and CIFNet. Defendant Demcenko terminated contracts with at least five of Plaintiff's dealers, SoftLogistic, Stech Data, Business IT, NILTA, CIFNet, and Skulski Enterprise and Defendant INC entered into its own agreements with those dealers. See **Exhibit M**, Deposition of Olga Somova pg. 23-24; see also **Exhibit N**, Contracts between SRL and former dealers; **Exhibit O**, Contracts between INC and former SRL dealers. All of this took place without the knowledge or acquiescence of Defendant Demcenko's business partners. See **Exhibit P**, Affidavit of Maxim Masiutin; see also **Exhibit Q**, Affidavit of Stefan Tanurcov.

Defendant Demcenko terminated a contract with one such dealer, CIFNet, as of December 31, 2008. See **Exhibit K**, July 15, 2008 termination letter from Demcenko to CIFNet. When questioned as to whether CIFNet was concerned that its contract with SRL was terminated after a 12 years business relationship, Yevgeniy Kruglov, CEO of CIFNet, testified that he was not concerned because INC was going to take SRL's place.[3] See **Exhibit J**, Deposition of Y. Kruglov pg. 45. Consequently, SRL's dealers were not concerned that their contracts with SRL were being terminated by Defendant Demcenko because they were assured by Defendant Demcenko that a replacement contract, one with INC, would follow shortly.

Instead of informing his business partners of his actions in the United States, Defendant Demcenko instead misappropriated money owed to SRL to obtain a rental house. Specifically, SRL's payment processor, CIFNet, transferred $70,000 to Defendant Demcenko's personal bank account to aid him in obtaining a house. See **Exhibit R**, Nov. 20, 2009 email from

---

[3]"When you received this letter, did it concern you that Ritlabs, S.R.L. Was terminating its contract with you?
A.      Well, if Ritlabs, Inc. was going to take action on selling the software, then – and we will report everything to Ritlabs, Inc., then it was making sense."

Kruglov to Demcenko. This $70,000 was taken from amounts owed to SRL from the sale of

SRL's software by CIFNet and was never returned to either SRL or CIFNet.[4] See **Exhibit J**,

Deposition of Yevgeniy Kruglov pgs. 16-17. Plaintiff SRL has not received a single payment

from CIFNet since 2005, likely because the amounts due to SRL were transferred to Defendant

Demcenko's personal bank account.[5] See **Exhibit P**, Affidavit of Maxim Masiutin.

      Shortly after Defendant's termination of SRL's contract with CIFNet, and after he

misappropriated $70,000 from SRL, Defendant began selling SRL's software through INC

without the approval or acquiescence of his business partners. Despite not being under a

contract with either SRL or INC, CIFNet continued to sell and to collect revenues from the sale

of SRL's software between January 1, 2009 and December 31, 2009. See **Exhibit S**, Deposition

of Basil Kruglov pg. 54; see also **Exhibit J**, Deposition of Yevgeniy Kruglov pg. 26.

Defendant also sold this software through INC in April and June of 2009, prior to the

execution of any purported License Agreement with SRL, which occurred on December 31,

2009. See **Exhibit T**, February 24, 2011 email from Demcenko to Kruglov. Thus, during this

time, Defendant Demcenko, who now contends that the fallacious License Agreement justifies

his actions, was selling SRL's software and channeling that revenue to INC prior to the

existence of the purported License Agreement between SRL and INC. Defendant INC then, on

April 23, 2010, entered into a distribution agreement with CIFNet, which was backdated to

---

[4]      It is worth noting that, in his deposition, Defendant Demcenko unconvincingly stated that
he did not know where the $70,000 came from, and that he knew only that it came from
Yevgeniy Kruglov. See **Exhibit A**, Deposition of Serghei Demcenko pgs. 170-73.
[5]      It is unclear what, exactly, has been transferred to Defendant's bank account, as
Defendant has refused to provide his bank records despite Plaintiff's discovery requests.

January 1, 2010. See **Exhibit U**, Agreement between INC and CIFNet; see also **Exhibit J**, Deposition of Y. Kruglov pgs. 23-24.

Then, on May 3, 2010, Defendant Demcenko, on behalf of SRL, and Yuri Bakay, vice president of Defendant INC, entered into a license agreement between SRL and INC without the knowledge or approval of Maxim Masiutin or Stefan Tanurcov, Defendant Demcenko's business partners in SRL. See **Exhibit V**, License Agreement; see also **Exhibit W**, May 3, 2010 email from Demcenko to Bakay. This License Agreement, which, much like many of the documents provided in support of Defendant Demcenko's claims, was backdated to December 31, 2009, purported to provide INC with an exclusive license to sell SRL's software products in the United States as well as a non-exclusive license to sell SRL's software products across the world. Additionally, not only would Defendant Demcenko receive 60% of gross revenue of the sale of SRL's software as the sole shareholder of INC, but he would also continue to receive 40% by virtue of his position as a shareholder in SRL. See **Exhibit V**, License Agreement. As a result, on the sale of a $50 software product, Defendant Demcenko would receive $38 and his business partners, Maxim Masiutin and Stefan Tanurcov, would receive $6 each respectively.

In entering into this Agreement without the approval or acquiescence of his business partners, Defendant Demcenko violated the Articles of Association of SRL, which states that the General Assembly of the company must approve the "Adoption of contracts... signed between the Company and its members" by a simple majority. See **Exhibit X**, Articles of Association of SRL, § 6.1(7)-6.2. When questioned concerning this issue, Defendant Demcenko testified that he did not believe that there was a conflict of interest in signing this Agreement on behalf of SRL, even though he owned 100% of INC at the time, because he

14

owns 100% of SRL, despite the fact that both Mr. Masiutin and Mr. Tanurcov have been his partners in SRL since its formation in 1998.[6] See **Exhibit A**, Deposition of Demcenko pgs. 79-85. In short, Defendant Demcenko justified this interested transaction by resort to a legal theory created subsequent to the execution of the Agreement, namely, that his business partners, Maxim Masiutin and Stefan Tanurcov, were not actually his business partners.

Defendant Demcenko then used this License Agreement to show a connection between SRL and INC in his L-1A visa application, which is a visa that is available to executives of an international company that have been sent to the United States to create a branch or representative office the company.[7] See **Exhibit Y**, Printout of USCIS website. See **Exhibit A**, Deposition of Serghei Demcenko pgs. 130-31. At the time of the filing of his L-1A visa application, Defendant Demcenko indicated that he owned one hundred percent (100%) of INC. See **Exhibit A**, Deposition of Serghei Demceko pgs. 118-19. After his L-1A visa was granted, Defendant Demcenko transferred 39 shares in INC to SRL to further show a connection between the two companies to the USCIS. See **Exhibit A**, Deposition of Serghei

---

[6] Defendant's contention is that, 14 years ago, Mr. Masiutin and Mr. Tanurcov failed to contribute their statutory capital of 1620 Moldovan leu. At today's exchange rate, this amounts to $131.70. Furthermore, Article 22(2) of the Moldova Law on Limited Liability Companies states, "Time allowed for company's claims to the [statutory capital] contribution against the associate shall make 3 years from state registration of the company." Consequently, Defendant Demcenko lost his right to make such a claim over 11 years ago.

[7]        The USCIS website states, "The L-1A nonimmigrant classification enables a U.S. Employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States. This classification also enables a foreign company which does not yet have an affiliated U.S. Office to send an executive or manager to the United States with the purpose of establishing one." Further, it states, "to qualify, the named employee must: (1) Generally have been working for a qualifying organization abroad for one continuous year within the three years immediately preceding his or her admission to the United States; and (2) Be seeking to enter the United States to render services in an executive or managerial capacity to a branch of the same employer or one of its qualifying organizations."

15

Demceko pg. 119. Defendant Demcenko then deceived his business partner, Stefan Tanurcov, into signing a subscription agreement on behalf of SRL, which was intended to provide SRL with shares in INC in order to help Defendant Demcenko obtain his US visa. See **Exhibit B**, Deposition of Stefan Tanurcov pgs. 128-130.

After the execution of the License Agreement, Defendant Demcenko issued invoices on behalf of Defendant INC and sent them to CIFNet requesting payment for CIFNet's sale of software in 2009, See **Exhibit Z**, April 23, 2010 email from Demcenko to Kruglov. Defendant Demceko issued these invoices to show income within his US bank account so that he could obtain an extension of his L-1A visa. See **Exhibit AA**, April 19, 2011 email from Demcenko to Kruglov. Defendant Demcenko needed to show not only income on his US account, but also that INC had employees, in order to extend his L-1A visa[8], see **Exhibit BB**, Sept. 19, 2011 email from Demcenko to Kruglov), and he further needed to prove the purported relationship between INC and SRL. See **Exhibit A**, Deposition of Serghei Demcenko pg. 130.

To further show a relationship between the two companies, Defendant Demcenko directed Tigor Talmatski, SRL's accountant, to prepare a corporate resolution, back-dated to 2001, which was to provide him with the authority incorporate INC in the United States. See **Exhibit CC**, Sept. 27, 2011 email from Demcenko to Talmatski.[9] This resolution was to say the following:

---

[8] "With visa they sent us for a second round, demanded a bunch of additional paperwork and employees. I can't leave the country for now. My conditional status has been extended but my visa had expired and the new one will be issued no sooner than in two months."

[9]      Tigor Talmatski did not work for SRL on the back-date listed on resolution in question. See **Exhibit DD**, Workbook of Tigor Talmatski.

> Give the right to Serghei Demceko to represent the company abroad with the right to hold negotiation talks for organization of branches, affiliated companies, search for investments, and control upon attraction of finance.

See **Exhibit CC**, Sept. 27, 2011 email from Demcenko to Talmatski. Defendant Demcenko also directed Mr. Talmatski to hand the resolution to Maxim Masiutin and Stefan Taurcov for signing and noted, "I need this not as a director, but as a co-founder of the company RITLABS SRL." See **Exhibit CC**, Sept. 27, 2011 email from Demcenko to Talmatski. When questioned by Maxim Masitiun as to why this resolution needed to be back-dated to 2001, Defendant Demcenko replied that the "Department of Immigration requires a certain story to prove my activity in the company." See **Exhibit EE**, Sept. 27, 2011 email from Demcenko to Demcenko with CC to Talmatski, Tanurcov, and Masiutin; see also **Exhibit FF**, Sept. 27, 2011 email from Masiutin to Demcenko; **Exhibit A**, Deposition of Serghei Demcenko pgs. 96-98. Defendant Demcenko later confirmed that he requested the backdated document so that he could defraud the USCIS into believing that he had been authorized to create INC in 2001. See **Exhibit A**, Deposition of Sergei Demcenko pgs. 132-135.

Since the creation of INC, Defendants Demcenko and INC have misappropriated approximately $371,684.05 in software license royalties rightfully due to SRL. See **Exhibit GG**, Draft profit and loss of INC Jan. 2008-Feb. 2012. It is unclear, however, whether this is the entire extent of Defendants' misappropriation, as Defendants have refused to provide their bank statements in response to Plaintiff's discovery requests in this matter. Regardless of the final tally of Plaintiff's damages, it is clear that Defendant INC's current customers are all former customers of SRL, including SoftLogistic, STech Data, Business IT, NILTA, and

17

Skulski Enterprise, and that they were obtained by terminating preexisting contracts with SRL in favor of new contracts with INC. See **Exhibit M**, Deposition of Olga Somova pgs. 23-24; see also **Exhibit P**, Affidavit of Maxim Masiutin. Of this amount, Plaintiff SRL has received only $63,928.30, which was likely transferred to SRL to show income flow between SRL and INC for the purposes of Defendant Demcenko's L-1A visa. See **Exhibit P**, Affidavit of Maxim Masiutin; see also **Exhibit HH**, Invoices issued from SRL to INC; **Exhibit A**, Deposition of Serghei Demcenko pgs. 150-151. Even presuming, *arguendo*, that the License Agreement between SRL and INC is valid, as Defendants contend, SRL should have received, by Defendants' own calculation, at least $148,673.62, which constitutes 40% of the gross revenue received by Defendant INC. See **Exhibit V**, License Agreement.

Defendant Demcenko undertook these actions without the authorization of his business partners or a vote of the General Assembly of SRL. See **Exhibit A**, Deposition of Demcenko pg. 60-61 ("Before I formed the company RitLabs, I did not seek the word from – from the members of general assembly of RitLabs, SRL because there is no necessity for that."). When asked why he did not seek the approval of his business partners, Mr. Demcenko stated, "Because I was creating RitLabs, Inc. personally as Serghei Demcenko." See **Exhibit A**, Deposition of Demcenko pg. 61, 14-18; see also **Exhibit II**, Def's Resp. to Pl's First Rogs #5. Defendant Demcenko was in a fiduciary position as the Director of SRL at the time of these actions, and, as CEO of INC, he served two masters to the detriment of SRL. He used his power as Director of SRL for his own personal advantage to defraud third party distributors, US government agencies, and his own business partners.

18

On April 20, 2011, Maxim Masiutin discovered the signature page of a contract between Stech Data, a former SRL dealer, and INC lying in the SRL office fax machine. See **Exhibit JJ**, Deposition of Maxim Masiutin pg. 128. This document contained the corporate stamp of Defendant INC and spurred Mr. Masiutin to investigate whether Defendant Demcenko had diverted funds from SRL to INC. See **Exhibit JJ**, Deposition of Maxim Masiutin pg. 128. In August 2011, Mr. Masiutin convinced his business partner, Mr. Tanurcov, to approach the company accountant, Tigor Talmatski, to obtain the accounting records of the company. See **Exhibit JJ**, Deposition of Maxim Masiutin pg.s 129-30. Mr. Taurcov received printouts of the company's financials from Mr. Talmatski, which showed that a large amount of money was missing from the company's coffers. See **Exhibit JJ**, Deposition of Maxim Masiutin pgs. 129-30.

Then, on August 5, 2011, Mr. Masiutin received an email press release from Defendant Demcenko's email address announcing the product MailVoyager, which was a software product based on The Bat! code, and listed Defendant INC as its creator and owner. See **Exhibit KK**, Aug. 6, 2011 email from Masiutin to Demcenko; see also **Exhibit A**, Deposition of Sergei Demcenko pgs. 164-65. In response, Mr. Masiutin sent Defendant Demcenko a lengthy email stating that the partners of SRL had agreed that Defendant Demcenko could open a separate firm in the United States unrelated to SRL and that, in the event Defendant Demcenko wanted to open a related company in the United States, "the American firm should have the same participation shares as RitLabs SRL in order to carry through the money or to use the RitLabs SRL resources...." See **Exhibit KK**, August 6, 2011 email chain. In response, Defendant Demcenko stated, "I suggest not putting all eggs into a basket and not biting the had

19

that feeds you" and later noted that he had not decided whether he would allow Mr. Masiutin to have shares in INC because Mr. Masiutin had not yet provided Defendant Demcenko with "what the new company will obtain personally from you. For instance, guarantees of attraction of investments for the project proposed by you; or, maybe, a patent that will help gain a part of the market." See **Exhibit KK**, August 6, 2011 email chain. Mr. Masiutin responded by chastising Defendant Demcenko's actions, "The decisions you write about were adopted by you with excess of your powers of director, you proceed dishonestly and illegally," and, later, "the work you carry out... is your duty arising from your post and this is not a reason for increasing your piece of cake on the account of reduction of someone other's share." See **Exhibit KK**, August 6, 2011 email chain.

Despite Mr. Masiutin's warnings, Defendant Demcenko continued to sell SRL's software through INC. In response, Mr. Tanurcov and Mr. Masiutin called a meeting of the General Assembly of SRL on December 12, 2011 to remove Mr. Demcenko from his position as Director of SRL. See **Exhibit LL**, Notice of Dec. 12, 2011 meeting. At this meeting, Mr. Tanurcov and Mr. Masiutin, having a combined 60% ownership of Plaintiff SRL, voted to remove Defendant Demcenko and elect Mr. Masiutin as the Director of Plaintiff SRL. See **Exhibit MM**, Election of Masiutin. On December 13, 2011, the Moldova State Authority recognized Mr. Masiutin as the elected director of SRL. See **Exhibit C**, State Authority recognition.

In light of these actions, it is clear that Defendant Demcenko has breached his fiduciary duty to SRL and that the License Agreement purportedly executed between SRL and INC is void. Defendant Demcenko has undertaken a concerted effort to usurp corporate opportunity

by transferring SRL's clients to INC, and he did so with the intent and purpose to (1) obtain

significantly more of the revenue of SRL than he otherwise could with his business partners

and (2) to defraud the USCIS for the purposes of obtaining a L-1A visa. Defendant Demcenko

has committed fraud to the detriment of SRL and has used both his signature and SRL's

property in his favor and in favor of INC by unilaterally executing the License Agreement in

an interested transaction with a company in which he owned 100% of the shares. See **Exhibit**

**D**, Moldova Law of Limited Liability Companies Article 47(1).

     In light of Defendant Demcenko's actions, and because the License Agreement between

SRL and INC is void, no genuine issues of material fact remain for trial with regard to

Defendants' Counterclaims I-VI and summary judgment in favor of Plaintiff is appropriate as a

matter of law. Specifically, Defendants' Breach of Contract Counterclaim relies on the fact that

"SRL breached the License Agreement by… failing to provide INC with an exclusive

license…, failing to use its reasonable efforts to support INC's sales…, and entering into

license and distribution contracts…." See Defendants First Amended Answer and

Counterclaims. Defendants' second Counterclaim, Breach of Covenant of Good Faith and Fair

Dealing, states, "Implicit in the License Agreement… was a duty of good faith and fair

dealing." See Defendants First Amended Answer and Counterclaims. Count III, Tortious

Interference with Contract, states, "SRL knew that INC had entered into valid Distribution

Agreements with its Partners." See Defendants First Amended Answer and Counterclaims.

Count IV states, "Despite SRL's express contractual commitment to grant INC the exclusive

right to distribute and license the Products in the United States…." See Defendants First

Amended Answer and Counterclaims. Defendants' Count V, Negligent Interference with

Prospective Economic Advantage, states, "By refusing to perform under the License Agreement… SRL acted unreasonably and wrongfully." See Defendants First Amended Answer and Counterclaims. And Count VI, Commercial Disparagement, states, "SRL sent letters to INC's Partners claiming that SRL does not recognize the validity of the License Agreement and demanding that the Partners cease doing business with INC and instead direct all such business to SRL." See Defendants First Amended Answer and Counterclaims. Thus, the fact that the License Agreement between SRL and INC is void due to Defendant Demcenko's breach of his fiduciary duty in entering into that agreement does away with the underlying legal basis for Defendants' Counterclaims I-VI and summary judgment is proper as a matter of law.

### c.   Defendants' Counterclaim for conversion is unsupported by the facts and law.

Defendants' Counterclaim for conversion is unsupported by the facts and the law. It is worth noting at the outset that Defendants' Counterclaim VII, Conversion, relies upon the fact that SRL "improperly and secretly directed CIFNet to transfer payments which CIFNet was supposed to make to INC to Mr. Masiutin." As stated above, Defendant Demcenko purposefully and deliberately terminated SRL's prior valid contract with CIFNet without the knowledge of his business partners, allowed CIFNet to continue selling software outside of a distributor agreement, and then, on April 23, 2010, entered into a backdated distributor agreement between CIFNet and INC. See **Exhibit U**, Agreement between INC and CIFNet; see also **Exhibit J**, Deposition of Y. Kruglov pgs. 23-24. Since Defendant Demcenko exceeded his authority as SRL's Director in violation of his fiduciary duties to SRL, and because Defendant

22

Demcenko, in excess of his authority, caused INC to enter into a void License Agreement with SRL and a void distributor agreement with CIFNet, Defendants' claim for conversion must fail because INC was never rightfully entitled to receive payments from CIFNet from the sale of SRL's software.

Secondly, Defendants' claim for conversion must also fail because it mischaracterizes the facts and law. Conversion requires a counter-plaintiff to prove that the counter-defendant "wrongfully exercise[d] or assume[d] authority over another's goods, depriving him of their possession." *Hairston Motor Co. v. Newsome*, 253 Va. 129, 135 (1997). "Conversion includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights." *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 301-02 (1998). Defendants' cannot show, however, that Mr. Masiutin, acting on behalf of SRL, "improperly and secretly directed CIFNet to transfer payments which CIFNet was supposed to make to INC."

In reality, Mr. Masiutin, in his individual capacity, transferred $10,000 to Defendant Demcenko so that Defendant Demcenko would provide that money to Yevgeniy Kurglov, CEO of CIFNet, in his individual capacity, to aid Mr. Masiutin in investing in stock markets located in the United States. See **Exhibit JJ**, Deposition of Maxim Masiutin pgs. 163-168. Mr. Masiutin, who has an avid interest in US stocks, first asked Mr. Basil Kruglov to investigate US-based brokerage houses that would allow foreign nationals to trade in US stocks. See **Exhibit S**, Deposition of B. Kruglov pgs. 31-32. In November 2007, Mr. Masiutin then registered an account with Zecco Trading company, a Glendale, California-based online

23

broker, and requested that Mr. Yevgeniy Kruglov transfer funds to that account. See **Exhibit S**, Deposition of B. Kruglov pgs. 33-35.

Mr. Masiutin then asked Mr. Yevgeiny Kruglov to charge $300 to his credit card "in order to not confuse them with the companies affairs and to withdraw $3,000 more from the card and transfer them to the same place…." See **Exhibit NN**, ICQ log between Kruglov and Masiutin. This same place was Mr. Masiutin's Zecco Trading account, which allowed Mr. Masiutin, a citizen of Moldova, to invest in US stock markets. See **Exhibit J**, Deposition of Y. Kruglov pgs. 37-44. Mr. Masiutin then gave Defendant Demcenko $10,000 to transfer to Mr. Kruglov because Mr. Kruglov was located within the United States and because Mr. Masiutin could not directly send money from Moldova to his US brokerage account at Zecco Trading. See **Exhibit JJ**, Deposition of Masiutin pg. 163. Mr. Masiutin then, from time to time, gave Defendant Demcenko money in various installments to transfer to his brokerage account in the United States through Mr. Kruglov. *Id*.

Then, on March 19, 2008, Mr. Masiutin, in an ICQ chat conversation with Mr. Kruglov, asked Mr. Kruglov to transfer $1,000 monthly to his Zecco Trading account: "Hello. Could you transfer me a thousand monthly on the 21st through 24th day to Zecco?" See **Exhibit NN**, ICQ log between Kruglov and Masiutin. When asked why Mr. Masiutin asked Mr. Kruglov to transfer these amounts, Mr. Kruglov stated, "Mr. Masiutin felt he could have funded the account from Moldova, but he would have to pay international wire fees, possibly some interest, and that was not economically feasible to do that." See **Exhibit J**, Deposition of Y. Kruglov pg. 44. On that same day, Defendant Demcenko sent an email to Mr. Kruglov, which stated, "If there was a possibility to make transfers asked by Max, I have no objections. The

only request is to render a report from your part once a month." See **Exhibit OO**, March 19, 2008 email from Demcenko to Kruglov. Consequently, not only were these transfers transparent, but they were also expressly approved by Defendant Demcenko.

Consequently, Defendants' conversion claim is unsupported by the evidence and the law. Since Defendant Demcenko expressly approved these transfers, Mr. Masiutin cannot have been said to have wrongfully exercised or assumed authority over another's goods depriving him of their possession. Furthermore, even assuming, *arguendo*, that Defendants' claims were true and Mr. Masiutin misappropriated these funds (which the evidence clearly establishes he did not), the appropriate claimant would be SRL, not INC, because these amounts were offset from amounts owed to SRL by CIFNet, not amounts properly owed to INC. Consequently, Defendants' conversion claim must fail as a matter of law because the evidence in the record clearly establishes that Mr. Masiutin, on behalf of SRL, did not wrongfully exercise authority over goods rightfully due to INC.

## V.  Conclusion

In light of the foregoing, no genuine issues of material fact as to Defendants' Counterclaims remain and summary judgment is appropriate as a matter of law. Summary judgment is proper as to Counts I-VI of Defendants' Counterclaims because Defendant Demcenko is liable for a breach of fiduciary duty of loyalty to Plaintiff SRL and, therefore, the License Agreement, which he unilaterally executed in an interested transaction, is void. Additionally, Defendant's Count VII, Conversion, is unsupported by the law and the facts and, therefore, summary judgment in favor of Plaintiff is justified.

Respectfully submitted this 28th day of June, 2012.

25

**RITLABS, S.R.L.**

By:  /s/J. Andrew Baxter
J. Andrew Baxter
Virginia Bar No. 78275
*Counsel for Plaintiff* (Local)
I.S. Law Firm, PLLC
1199 N. Fairfax St., Suite 702
Alexandria, VA  22314
(703) 527-1779 Telephone
(703) 778-0369 Facsimile
jabaxter@islawfirm.com

By:/s/John Di Giacomo
Mark G. Clark
Michigan Bar No. P41652
John Di Giacomo
Michigan Bar No. P73056
*Counsel for Plaintiff* (Foreign)
Traverse Legal, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49684
(231) 932-0411 Telephone
(231) 932-0636 Facsimile
Mark@traverselegal.com
John@traverselegal.com

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June, 2012, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' COUNTERCLAIMS** with the Clerk of the Court using the CM/ECF System on:

Kevin Richard Garden
Filipp Kofman
International Legal Counsels, PC
*Attorney for Defendants*
901 North Pitt Street, Suite 325
Alexandria, VA 22314
Kevin@gardenlawfirm.com

                         **RITLABS, S.R.L.**

                         By:  /s/J Andrew Baxter
                         J. Andrew Baxter
                         Virginia Bar No. 78275
                         *Counsel for Plaintiff* (Local)
                         I.S. Law Firm, PLLC
                         1199 N. Fairfax St., Suite 702
                         Alexandria, VA  22314
                         (703) 527-1779 Telephone
                         (703) 778-0369 Facsimile
                         jabaxter@islawfirm.com