

CERTIFICATE OF ACKNOWLEDGMENT OF
EXECUTION OF AN INSTRUMENT

MOLDOVA                                                   )
MUNICIPALITY OF CHISINAU                                  )    SS:
EMBASSY OF THE UNITED STATES OF AMERICA                   )

I, *Alice Easter*, Vice Consul *of the United States of America at Chisinau, Moldova, duly commissioned and qualified, do hereby certify that on this 29*$^{th}$ *day of June, 2012 before me personally appeared*

*** Maxim Masiutin ***

*known to be the individuals described in, whose name is subscribed to, and who executed the annexed instrument, and being informed by me of the contents of said instrument, he duly acknowledged to me that he executed the same freely and voluntarily for the uses and purposes therein mentioned. In witness whereof I have hereunto set my hand and official seal the day and year last above written.*

Alice Easter
Vice Consul of the United States of America

## Affidavit of Maxim Masiutin

1. I am Maxim Masiutin, Director of Plaintiff RitLabs, S.R.L.

2. I am also a 30% owner of RitLabs, S.R.L.

3. RitLabs, S.R.L. was formed under the laws of the Republic of Moldova on February 16, 1998.

4. Upon formation of RitLabs, S.R.L., the property of R.I.T., S.R.L. was transferred to RitLabs, S.R.L.

5. I first discovered that Defendant Demcenko created Defendant RitLabs, Inc. on or about April 20, 2011, when I discovered that Defendant Demcenko had diverted one of RitLabs, S.R.L.'s distributors to RitLabs, Inc.

6. I continued to collect evidence on Defendant Demcenko's actions before I felt comfortable approaching Mr. Tanurcov, my partner, with allegations of wrongdoing.

7. I soon became more suspicious of Mr. Demcenko's actions, including his actions on September 27, 2011, wherein he requested that both Mr. Tanurcov and myself sign a backdated resolution of RitLabs, S.R.L., and began investigating the corporate records.

8. My investigation discovered that Mr. Demcenko had created RitLabs, Inc., a corporation organized under Virginia law, which was in violation of Moldova law.

9. On December 12, 2011, my partner Mr. Tanurcov and I held a meeting of the General Assembly of RitLabs, S.R.L.

10. We provided notice of this meeting to Mr. Demcenko's last known address in Moldova.

11. At this meeting, Mr. Tanurcov and I voted to remove Defendant Demcenko from his position as Director of Plaintiff S.R.L.

12. At this meeting, Mr. Tanurcov and I voted to elect myself as Director of Plaintiff S.R.L.

13. Consequently, the Moldova State Authority recognized me as the Director of Plaintiff S.R.L. on December 13, 2011.

14. On December 20, 2011, I became aware that Defendant Demcenko had unilaterally executed a License Agreement between Plaintiff S.R.L. and Defendant RitLabs, Inc. without the approval or authorization of the General Assembly of RitLabs, S.R.L.

15. I also soon learned that Defendant had filed for trademark registration of RITLABS, MAILVOYAGER, and THE BAT! with the United States Patent and Trademark Office in December 2011.

16. I also soon learned that Defendant had taken control of the <ritlabs.com> domain name and changed the WHOIS entry associated with the domain name from RitLabs, S.R.L. to RitLabs, Inc. of Virginia.

17. After further investigation, I learned that Defendant had also taken control of the <ritlabs.net>, <batpost.com>, and <thebat.net> domain names and changed the WHOIS entry associated with those domain names from RitLabs, S.R.L. to RitLabs, Inc. of Virginia.

18. Additional investigation uncovered that Defendant Demcenko had issued shares of Defendant RitLabs, Inc. to Plaintiff RitLabs, S.R.L. and had executed this share certificate as the CEO of Defendant RitLabs, Inc. and as the Secretary of RitLabs, Inc.

19. On January 21, 2012, after my attorney had sent a demand letter to Defendant Demcenko to notify him of his infringement, Defendant Demcenko modified the MX record associated with the <ritlabs.com> domain name.

20. Defendant Demcenko modified the MX record associated with the <ritlabs.com> domain name so that he could continue to contact former dealers of Plaintiff S.R.L.

21. Based on my further investigation and the discovery obtained through this lawsuit, it is clear that Plaintiff S.R.L. has not been receiving revenue from the sale of its software products to US purchasers since 2005 because Defendant Demcenko has diverted the revenue associated with those sales to Defendant RitLabs, Inc. and to his personal bank account.

22. Based on information gathered in discovery in this lawsuit, I have discovered that Defendant Demcenko has diverted revenues owed to Plaintiff S.R.L. to his personal bank account.

23. The true extent of Plaintiff S.R.L.'s damages are unknown, as Defendants have declined to provide their bank statements in response to Plaintiff S.R.L.'s discovery requests in this matter.

24. Prior to Defendants' actions, SoftLogistic, STech Data, CIFNet, Business IT, NILTA, and Skulski Enterprise were all distributors of Plaintiff S.R.L.'s software that were known to Defendant Demcenko.

25. Defendant Demcenko, as Director of Plaintiff S.R.L., terminated Plaintiff S.R.L.'s agreements with several of these distributors and entered into new distribution agreements with them through Defendant INC without the knowledge of myself or Mr. Tanurcov.

26. Defendant INC's distributors, SoftLogistic, STech Data, CIFNet, Business IT, NILTA, and Skulski Enterprise were all previously distributors of Plaintiff S.R.L. that were in contractual relationships with Plaintiff S.R.L.

27. Of the approximately $371,684.05 in software license royalties rightfully due to Plaintiff S.R.L., Defendant INC has transferred only $63,928.30 to Plaintiff S.R.L.

28. Based on the evidence that Plaintiff S.R.L. has obtained in discovery, Plaintiff S.R.L. believes that Defendant INC transferred $63,928.30 to Plaintiff S.R.L. in order to show a connection between Defendant INC and Plaintiff S.R.L. for the purposes of Defendant Demcenko's L-1A visa.

29. Exhibit C is a true and accurate copy of Moldova's recognition of the removal of Defendant Sergei Demcenko.

30. Exhibit D is a true and accurate copy of a translation of the Moldovan law regarding limited liability companies.

31. Exhibit L is a true and accurate copy of the contract executed between Plaintiff SRL and CIFNet in 2005.

32. Exhibit N contains true and accurate copies of contracts executed between RitLabs, SRL and its former dealers.

33. Exhibit X is a true and accurate copy of a translation of the Articles of Association of RitLabs, SRL.

34. Exhibit Y is a true and accurate copy of a printout of the USCIS website.

35. Exhibit DD is a true and accurate copy of Tigor Talmatski's workbook.

36. Exhibit EE is a true and accurate copy of an email that I received from Serghei Demcenko on September 27, 2011.

37. Exhibit FF is a true and accurate copy of an email that I sent to Serghei Demcenko on September 27, 2011.

38. Exhibit HH contains true and accurate copies of invoices that RitLabs, SRL found within its corporate records and that were issued to Defendant RitLabs, Inc.

39. Exhibit KK is a true and accurate copy of an email chain between Serghei Demcenko and I on August 6, 2011.

40. Exhibit LL is a true and accurate copy of the notice of the December 12, 2011 meeting of the associates of RitLabs, SRL.

41. Exhibit MM is a true and accurate copy of the report of the meeting of the associates of RitLabs, SRL wherein I was elected as Director of RitLabs, SRL.

42. Exhibit NN is a true and accurate copy of an ICQ chat conversation between me and Basil Kruglov.

Further affiant sayeth not.

*[signature]*

Maxim Masiutin