CERTIFICATE OF ACKNOWLEDGMENT OF
EXECUTION OF AN INSTRUMENT

*MOLDOVA* )
*MUNICIPALITY OF CHISINAU* ) SS:
*EMBASSY OF THE UNITED STATES OF AMERICA* )

I, *Alice Easter*, Vice Consul *of the United States of America at Chisinau, Moldova, duly commissioned and qualified, do hereby certify that on this 29th day of June, 2012 before me personally appeared*

\*\*\* Stefan Tanurcov \*\*\*

*known to be the individuals described in, whose name is subscribed to, and who executed the annexed instrument, and being informed by me of the contents of said instrument, he duly acknowledged to me that he executed the same freely and voluntarily for the uses and purposes therein mentioned. In witness whereof I have hereunto set my hand and official seal the day and year last above written.*

Alice Easter
Vice Consul of the United States of America

## Affidavit of Stefan Tanurcov

1. I am Stefan Tanurcov, a 30% owner of RitLabs, S.R.L.

2. RitLabs, S.R.L. was formed under the laws of the Republic of Moldova on February 16, 1998.

3. Upon formation of RitLabs, S.R.L., the property of R.I.T., S.R.L. was transferred to RitLabs, S.R.L.

4. Mr. Masiutin, my partner, approached me after collecting evidence of Mr. Demcenko's wrongdoing.

5. I soon became more suspicious of Mr. Demcenko's actions, including his actions on September 27, 2011, wherein he requested that both Mr. Masiutin and myself sign a backdated resolution of RitLabs, S.R.L., and began investigating the corporate records.

6. My investigation discovered that Mr. Demcenko had created RitLabs, Inc., a corporation organized under Virginia law, which was in violation of Moldova law.

7. On December 12, 2011, my partner Mr. Masiutin and I held a meeting of the General Assembly of RitLabs, S.R.L.

8. At this meeting, Mr. Masiutin and I voted to remove Defendant Demcenko from his position as Director of Plaintiff S.R.L.

9. At this meeting, Mr. Masiutin and I voted to elect Mr. Masiutin as Director of Plaintiff S.R.L.

10. Consequently, the Moldova State Authority recognized Mr. Masiutin as the Director of Plaintiff S.R.L. on December 13, 2011.

11. On December 20, 2011, I became aware that Defendant Demcenko had unilaterally executed a License Agreement between Plaintiff S.R.L. and Defendant RitLabs, Inc. without the approval or authorization of the General Assembly of RitLabs, S.R.L.

12. I also soon learned that Defendant had filed for trademark registration of RITLABS, MAILVOYAGER, and THE BAT! with the United States Patent and Trademark Office in December 2011.

13. I also soon learned that Defendant had taken control of the <ritlabs.com> domain name and changed the WHOIS entry associated with the domain name from RitLabs, S.R.L. to RitLabs, Inc. of Virginia.

14. After further investigation, I learned that Defendant had also taken control of the <ritlabs.net>, <batpost.com>, and <thebat.net> domain names and changed the WHOIS entry associated with those domain names from RitLabs, S.R.L. to RitLabs, Inc. of Virginia.

15. Shortly after Defendant Demcenko took control over the <ritlabs.com> domain name, I participated in a telephone conversation with Defendant Demcenko wherein he threatened to shut down the <ritlabs.com> website if I did not reinstate him as Director of Plaintiff S.R.L. and accede to his demands.

16. On January 21, 2012, after my attorney had sent a demand letter to Defendant Demcenko to notify him of his infringement, Defendant Demcenko modified the MX record associated with the <ritlabs.com> domain name.

17. Based on information gathered in discovery in this lawsuit, I have discovered that Defendant Demcenko has diverted revenues owed to Plaintiff S.R.L. to his personal bank account.

18. The true extent of Plaintiff S.R.L.'s damages are unknown, as Defendants have declined to provide their bank statements in response to Plaintiff S.R.L.'s discovery requests in this matter.

19. Prior to Defendants' actions, SoftLogistic, STech Data, CIFNet, Business IT, NILTA, and Skulski Enterprise were all distributors of Plaintiff S.R.L.'s software that were known to Defendant Demcenko.

20. Defendant Demcenko, as Director of Plaintiff S.R.L., terminated Plaintiff S.R.L.'s agreements with several of these distributors and entered into new distribution agreements with them through Defendant INC without the knowledge of myself or Mr. Masiutin.

21. Defendant INC's distributors, SoftLogistic, STech Data, CIFNet, Business IT, NILTA, and Skulski Enterprise were all previously distributors of Plaintiff S.R.L. that were in contractual relationships with Plaintiff S.R.L.

22. Of the approximately $371,684.05 in software license royalties rightfully due to Plaintiff S.R.L., Defendant INC has transferred only $63,928.30 to Plaintiff S.R.L.

23. Based on the evidence that Plaintiff S.R.L. has obtained in discovery, Plaintiff S.R.L. believes that Defendant INC transferred $63,928.30 to Plaintiff S.R.L. in order to show a connection between Defendant INC and Plaintiff S.R.L. for the purposes of Defendant Demcenko's L-1A visa.

Further affiant sayeth not.

Stefan Tanurcov