# EXHIBIT Q

## Affidavit of Maxim Masiutin

1. I am Maxim Masiutin, Director of Plaintiff RitLabs, S.R.L.

2. I am also a 30% owner of RitLabs, S.R.L.

3. RitLabs, S.R.L. was formed under the laws of the Republic of Moldova on February 16, 1998.

4. Upon formation of RitLabs, S.R.L., the property of R.I.T., S.R.L. was transferred to RitLabs, S.R.L.

5. Since as early as April 14, 1997, RIT, S.R.L. used the THE BAT! mark in United States commerce in association with the sale or offering for sale of its software products.

6. Upon the dissolution of RIT, S.R.L., the resignation of myself, Mr. Tanurcov, and Defendant Demcenko from RIT, S.R.L., and the creation of Plaintiff S.R.L., Plaintiff S.R.L. continued to use the THE BAT! mark in a continuous and exclusive fashion in association with the sale or offering for sale of Plaintiff S.R.L.'s software products to citizens of the United States.

7. Since as early as October 15, 2003, Plaintiff S.R.L. has consistently and exclusively used the RITLABS mark in United States commerce in association with the sale or offering for sale of its software products to citizens of the United States.

8. Since as early as August 2, 2001, Plaintiff S.R.L. has consistently and exclusively used the BATPOST mark in United States commerce in association with the sale or offering for sale of its software products to citizens of the United States.

9. Since as late as 2003, Plaintiff S.R.L. has sold thousands of software licenses to citizens of the United States under the RITLABS, THE BAT!, and BATPOST marks.

10. I first discovered that Defendant Demcenko created Defendant RitLabs, Inc. on or about April 20, 2011, when I discovered that Defendant Demcenko had diverted one of RitLabs, S.R.L.'s distributors to RitLabs, Inc.

11. I continued to collect evidence on Defendant Demcenko's actions before I felt comfortable approaching Mr. Tanurcov, my partner, with allegations of wrongdoing.

12. I soon became more suspicious of Mr. Demcenko's actions, including his actions on September 27, 2011, wherein he requested that both Mr. Tanurcov and myself sign a backdated resolution of RitLabs, S.R.L., and began investigating the corporate records.

13. My investigation discovered that Mr. Demcenko had created RitLabs, Inc., a corporation organized under Virginia law, which was in violation of Moldova law.

14. On December 12, 2011, my partner Mr. Tanurcov and I held a meeting of the General Assembly of RitLabs, S.R.L.

15. We provided notice of this meeting to Mr. Demcenko's last known address in Moldova.

16. At this meeting, Mr. Tanurcov and I voted to remove Defendant Demcenko from his position as Director of Plaintiff S.R.L.

17. At this meeting, Mr. Tanurcov and I voted to elect myself as Director of Plaintiff S.R.L.

18. Consequently, the Moldova State Authority recognized me as the Director of Plaintiff S.R.L. on December 13, 2011.

19. Once Defendant Demcenko had been properly terminated as an employee of Plaintiff S.R.L., Plaintiff S.R.L. terminated Defendant Demcenko's access to his email address at the <ritlabs.com> domain name.

20. On December 20, 2011, I became aware that Defendant Demcenko had unilaterally executed a License Agreement between Plaintiff S.R.L. and Defendant RitLabs, Inc. without the approval or authorization of the General Assembly of RitLabs, S.R.L.

21. I also soon learned that Defendant had filed for trademark registration of RITLABS, MAILVOYAGER, and THE BAT! with the United States Patent and Trademark Office in December 2011.

22. I also soon learned that Defendant had taken control of the <ritlabs.com> domain name and changed the WHOIS entry associated with the domain name from RitLabs, S.R.L. to RitLabs, Inc. of Virginia.

23. After further investigation, I learned that Defendant had also taken control of the <ritlabs.net>, <batpost.com>, and <thebat.net> domain names and changed the WHOIS entry associated with those domain names from RitLabs, S.R.L. to RitLabs, Inc. of Virginia.

24. Additional investigation uncovered that Defendant Demcenko had issued shares of Defendant RitLabs, Inc. to Plaintiff RitLabs, S.R.L. and had executed this share certificate as the CEO of Defendant RitLabs, Inc. and as the Secretary of RitLabs, Inc.

25. On January 21, 2012, after my attorney had sent a demand letter to Defendant Demcenko to notify him of his infringement, Defendant Demcenko modified the MX record associated with the <ritlabs.com> domain name.

26. Defendant Demcenko modified the MX record associated with the <ritlabs.com> domain name so that he could continue to contact former dealers of Plaintiff S.R.L.

27. Defendants' theft of the <ritlabs.com> domain name disrupted Plaintiff S.R.L.'s ability to renew its SSL certificate, which is the certificate that provides purchasers of Plaintiff

S.R.L.'s software with a secure connection a secure connection to get technical support or obtain information on how to purchase the software or pay for updates.

28. Due to Defendants' theft of the <ritlabs.com> domain name, Plaintiff was unable to change the DNS information associated with the <ritlabs.com> domain name to modify its US e-commerce cart provider, which handles the transactions associated with the sale of Plaintiff S.R.L.'s software products to English-speaking customers throughout the world.

29. Since Plaintiff was unable to modify its US e-commerce provider due to Defendants' theft, CIFNet, on behalf of Defendant INC, continued to unlawfully sell Plaintiff S.R.L.'s software, which resulted in revenues of $8,757.50.

30. Additionally, SoftLogistic, on behalf of Defendant INC, continued to unlawfully sell Plaintiff S.R.L.'s software, which resulted in revenues of $8,761.95 in January 2012 alone.

31. Since Plaintiff S.R.L. was unable to modify its cart provider, it was unable to enforce the previous contracts that were wrongfully terminated by Defendants.

32. Based on my further investigation and the discovery obtained through this lawsuit, it is clear that Plaintiff S.R.L. has not been receiving revenue from the sale of its software products to US purchasers since 2005 because Defendant Demcenko has diverted the revenue associated with those sales to Defendant RitLabs, Inc. and to his personal bank account.

33. Based on information gathered in discovery in this lawsuit, I have discovered that Defendant Demcenko has diverted revenues owed to Plaintiff S.R.L. to his personal bank account.

34. The true extent of Plaintiff S.R.L.'s damages are unknown, as Defendants have declined to provide their bank statements in response to Plaintiff S.R.L.'s discovery requests in this matter.

35. Prior to Defendants' actions, SoftLogistic, STech Data, CIFNet, Business IT and Skulski Enterprise were all distributors of Plaintiff S.R.L.'s software that were known to Defendant Demcenko.

36. Defendant Demcenko, as Director of Plaintiff S.R.L., terminated Plaintiff S.R.L.'s agreements with several of these distributors and entered into new distribution agreements with them through Defendant INC.

37. Defendant INC's distributors, SoftLogistic, STech Data, CIFNet, Business IT and Skulski Enterprise were all previously distributors of Plaintiff S.R.L. that were in contractual relationships with Plaintiff S.R.L.

38. Of the approximately $371,684.05 in software license royalties rightfully due to Plaintiff S.R.L., Defendant INC has transferred only $63,928.30 to Plaintiff S.R.L.

39. Based on the evidence that Plaintiff S.R.L. has obtained in discovery, Plaintiff S.R.L. believes that Defendant INC transferred $63,928.30 to Plaintiff S.R.L. in order to show a connection between Defendant INC and Plaintiff S.R.L. for the purposes of Defendant Demcenko's L-1A visa.

40. The MailVoyager program is a software product based on Plaintiff S.R.L.'s software e-mail client The Bat!.

41. As an employee of S.R.L., I wrote a significant portion of the computer code of MailVoyager.

42. At no time was MailVoyager intended to be a product sold by a third party distributor such as Defendant INC. Instead, MailVoyager was intended to be a product developed and sold by Plaintiff S.R.L.

43. Plaintiff S.R.L. first used the MailVoyager mark on the <ritlabs.com> website on or about August 4, 2011.

44. Plaintiff S.R.L. first used the MailVoyager mark in a commercial manner; users who clicked on the advertisement displayed on <ritlabs.com> were transferred to an Amazon.com web page, which allowed users to purchase the MailVoyager product.

45. Exhibit C is a true and accurate copy of Moldova's recognition of the removal of Defendant Sergei Demcenko.

46. Exhibit D is a true and accurate copy of a translation of the Moldovan law regarding limited liability companies.

47. Exhibit N contains true and accurate copies of contracts executed between RitLabs, SRL and its former dealers.

48. Exhibit W is a true and accurate copy of a translation of the Articles of Association of RitLabs, SRL.

49. Exhibit X is a true and accurate copy of a printout of the USCIS website.

50. Exhibit CC is a true and accurate copy of an email that I received from Serghei Demcenko on September 27, 2011.

51. Exhibit DD is a true and accurate copy of an email that I sent to Serghei Demcenko on September 27, 2011.

52. Exhibit FF contains true and accurate copies of invoices that RitLabs, SRL found within its corporate records and that were issued to Defendant RitLabs, Inc.

53. Exhibit II is a true and accurate copy of an email chain between Serghei Demcenko and I on August 6, 2011.

54. Exhibit JJ is a true and accurate copy of the notice of the December 12, 2011 meeting of the associates of RitLabs, SRL.

55. Exhibit KK is a true and accurate copy of the report of the meeting of the associates of RitLabs, SRL wherein I was elected as Director of RitLabs, SRL.

56. Exhibit LL is a true and accurate copy of the DomainTools.com website showing the WHOIS history for the <ritlabs.com> domain name.

57. Exhibit MM is a true and accurate copy of the DomainTools.com website showing the WHOIS history for the <ritlabs.net>, <thebat.net>, and <batpost.com> domain names.

58. Exhibit OO is a true and accurate copy of a demand letter that was sent to Defendants counsel for RitLabs, SRL on January 3, 2012.

59. Exhibit TT contains true and accurate copies of the workbooks of Serghei Demcenko, Maxim Masiutin, and Stefan Tanurcov.

60. Exhibit UU is a true and accurate translated copy of the State of Moldova extract concerning RitLabs, SRL, which shows me, Maxim Masiutin, as the Director of RitLabs, SRL.

61. Exhibit VV is a true and accurate copy of the WayBackMachine archive of <ritlabs.com> on October 15, 2003.

62. Exhibit WW is a true and accurate copy of the WayBackMachine archive of <ritlabs.com> on April 14, 1997.

63. Exhibit XX is a true and accurate copy of the WayBackMachine archive of <ritlabs.com> on August 2, 2002.

64. Exhibit YY is a true and accurate copy of the current web page of <ritlabs.com>.

65. Exhibit ZZ is a true and accurate copy of the current WHOIS record for <ritlabs.us>.

66. Exhibit AAA is a true and accurate copy of the current <ritlabs.us> web page.

67. Exhibit BBB is a true and accurate copy of the DomainTools.com website showing the WHOIS histories associated with the <ritlabs.com>, <ritlabs.net>, <thebat.net>, and <batpost.com> domain names.

68. Exhibit CCC is a true and accurate copy of a letter received by Plaintiff SRL's counsel from Defendants' counsel.

69. Exhibit EEE is a true and accurate copy of registration server data taken from Plaintiff SRL's software registration server showing sales of SRL's software by SoftLogistic on behalf of Defendant INC.

70. Exhibit FFF is a true and accurate copy of the DomainTools.com website showing the name server history associated with the <ritlabs.com> domain name.

71. Exhibit L is a true and accurate copy of the contract executed between Plaintiff SRL and CIFNet in 2005.

72. Exhibit HHH is a true and accurate copy of an ICQ chat conversation between me and Basil Kruglov.

Further affiant sayeth not.

_____
Maxim Masiutin