# EXHIBIT T

*Confidential*
*RitLabs Licensing Agreement*

## LICENSING AGREEMENT

This Distribution and Licensing Agreement (the *"Agreement"*) is made and entered this 1st day of December 2009 (the *"Effective Date"*) by and between RITLABS SRL, a company organized and existing under the laws of Moldova (*"Licensor"*) and Ritlabs Inc., a corporation organized under the laws of the Commonwealth of Virginia (*"Lisensee"* and collectively with Licensor, the *"Parties"* and each, a *"Party"*).

### W I T N E S S E T H :

WHEREAS, Licensor is engaged, *inter alia*, in the development, licensing, and distribution of certain Products, as defined herein, and is willing to enter into the Agreement with Licensee on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual agreements hereinafter contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending legally to be bound hereby, agree as follows:

1.  **Defined Terms; Rules of Construction.**

    1.1     Below is a list of Exhibits attached hereto and incorporated herein.

| | |
|---|---|
| EXHIBIT A | LICENSOR SOFTWARE AND PRODUCTS, RESPONSIBILITY FOR DELIVERY TO END USERS |
| EXHIBIT B | LICENSEE AND ITS AFFILIATES MARKS AND POLICIES |
| EXHIBIT C | TERRITORY |
| EXHIBIT D | LICENSE FEES |
| EXHIBIT E | END USER LICENSE AGREEMENT |
| EXHIBIT F | LICENSOR'S ADDRESS AND BANK INFORMATION |
| EXHIBIT G | SERVICE AND SUPPORT |
| EXHIBIT H | DEFINITION OF TERMS |
| EXHIBIT I | PARTIES ADDITIONAL OBLIGATIONS |
| EXHIBIT J | PROPRIETARY NOTICES; TRADEMARKS. |

1.2     Any reference to any federal, state, local, or foreign law will be deemed also to refer to Law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. Words "include," "includes," and "including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine, and neuter genders will be construed to include any

Licensor _____     Licensee _____

1

other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

1.3    All capitalized defined terms shall have the meaning set forth in Exhibit H attached hereto.

## 2.    **License and Appointment of Licensee.**

2.1    Appointment of Licensee.    Subject to the terms and conditions set forth herein, Licensor hereby appoints Licensee as an independent Licensee of Products in the Territory and grants the following rights (the "*License*") and Licensee hereby accepts such License:

a)    a *non-exclusive* license to exhibit, reproduce, bundle, market, distribute and license the Products directly or through third party resellers or sub-Licensee, to End Users in Object Code form electronic online media throughout the Non-Exclusive Territory during the Term of this Agreement as pursuant to the terms hereof, provided that for purposes hereof, "*non-exclusive*" shall mean that Licensor may grant to third parties any rights similar to the rights granted to Licensee hereunder with regard to Non-Exclusive Territory described in Exhibit C;

b)    an *exclusive* license to exhibit, reproduce, bundle, market, distribute and license the Products directly or through third party resellers or sub-Licensee, to End Users in Object Code form electronic online media throughout the Exclusive Territory during the Term of this Agreement as pursuant to the terms hereof, provided that for purposes hereof, "*exclusive*" shall mean that Licensor shall not (i) appoint any other Licensee, licensee, dealer, OEM Licensee or reseller in the Exclusive Rights Territory described in Exhibit C that shall have the rights to market, license, sublicense or sell the Products, or (ii) grant any rights that would come into conflict, compete or any way diminish Licensee's rights granted hereunder;

c)    the right to use, reproduce, publish, perform and display the Licensor Marks: (i) on the Licensee web sites in connection with the posting of hyperlinks to the Products; and (ii) in connection with the development, use, reproduction in promotional and marketing materials and electronic and printed advertising, publicity, press releases, newsletters and mailings about the Products ("*Promotional Materials*");

d)    Licensor shall use its reasonable efforts to support Licensee's sales and marketing of the Product. Licensor shall promptly provide standard information and marketing material for the Product to Licensee; and

e)    Notwithstanding anything to the contrary herein, nothing contained herein shall limit Licensor's ability to comply with all of the terms of existing agreements between Licensor and third parties, including but not limited to Licensor's prior appointment of Licensees of the Product within the Territory, *provided that* all such agreements are disclosed to Licensee in writing prior to the execution of this Agreement.

2

RLSRL00323

2.2     Grant by Licensee.  Subject to the terms and conditions set forth herein, Licensee hereby grants to Licensor the following rights:

a)     the right to use, reproduce, publish, perform and display the Licensee Marks on the Licensor's or its Affiliates' web sites in connection with the posting of hyperlinks to the Company's web sites; and in promotional and marketing materials, content directories and indexes, and electronic and printed advertising, publicity, press releases, newsletters and mailings about Licensor or its Affiliates; and

b)     the right to include, on the Licensor or its Affiliates' web sites, hypertext links (whether in graphical, text or other format) which enable users to link to Licensee's web sites for purposes of purchasing license to Products.

2.3     Territory.  Licensee may not market, sale or otherwise distribute any Products to any third party outside the Territory without the prior written consent of Licensor and Licensee shall refer to Licensor all inquiries and referrals received by Licensee regarding potential licenses of Products outside the Territory.

2.4     End User License.  Licensee is authorized to offer, distribute and license the Products to End Users under the terms, conditions and restrictions as provided in an End User License Agreement, as provided by Licensor in the Documentation or as may be attached hereto as Exhibit E or as otherwise included in the Product's download or documentation (the ***"End User License Agreement"***).  If applicable, Licensee shall include the applicable End User License Agreement with the Products and shall comply with the reasonable instructions of Licensor regarding the packaging or presentation of the End User License Agreement.  Licensor and Licensee will cooperate to establish mutually acceptable procedures to reasonably assure that End Users enter into the End User License Agreement.

2.5     Delivery of Products.  As soon as practicable after the Effective Date but not later than thirty (30) days after the Effective Date, Licensor will provide Licensee with one master copy of Licensor Products.  In addition, for the demonstration and marketing purposes, Licensor may supply Licensee with sufficient number of "not-for-resale" Products with appropriate activation keys and such "not-for-resale" Products shall be used by Licensee for marketing and demonstration purposes only.

2.6     Grant by Licensee.  Subject to the terms and conditions set forth herein, Licensee hereby grants to Licensor the following rights:

a)     the right to use, reproduce, publish, perform and display the Licensee Marks on the Licensor's or its Affiliates' web sites in connection with the posting of hyperlinks to the Licensee's web sites; and in promotional and marketing materials, content directories and indexes, and electronic and printed advertising, publicity, press releases, newsletters and mailings about Licensor or its Affiliates; and

b)     the right to include, on the Licensor or its Affiliates' web sites, hypertext links (whether in graphical, text or other format) which enable users to link to Licensee's web sites for purposes of purchasing license to Products.

2.7     Ownership.  Licensee agrees that all right, title, and interest in and to Products, and all Intellectual Property Rights are the sole and exclusive property of Licensor.

Licensor _____        Licensee _____

3

2.8     Limitation of Rights.

a)      Except as otherwise expressly set forth in this Agreement, Licensee shall not decompile, disassemble or otherwise reverse engineer any Product or any part thereof, and *further provided* that Licensee may revise, modify and elaborate Product in accordance with Licensor's instructions and permissions.   Except as otherwise specifically provided n this Agreement, Licensee does not acquire any right to Products, Supplier Marks or Licensor Marks;

b)      Except as otherwise specifically provided in this Agreement, Licensor does not acquire any right to Licensee Marks and any other license, expressly or by implication, estoppel or otherwise, under any Licensee's Intellectual Property Rights owned by Licensee, its suppliers and/or their Affiliates; and

c)      The Parties acknowledge and agrees that unless otherwise agreed by the Parties and with the exception of Licensee Marks, the Parties shall be deemed co-owners of all rights to adaptations, translation and localization of the Product into local languages carried out in connection with this Agreement, and the documentation and packaging used in connection therewith and all packaging and other material adapted by the Parties in connection with the production of the localized version of the Product in accordance with this Agreement.

3.  **License Fees, Payments and Orders.**

3.1     License Fees and Payment.  Unless otherwise agreed by the Parties, Licensee shall, within six (6) months, after following the close of each calendar month during the Term hereof:

a)      remit to Licensor an amount in US dollars (or Euros, if agreed by the Parties) equal to the entire accrued but unpaid aggregate License Fees for the previous month; and

b)      if requested by Licensor in writing not later than ten (15) days prior to the end of the current month, electronically transmit to Licensor monthly Sales Report for the previous month.

3.2     Prices.  The minimum license fees and/or license prices  for End Users, subject to applicable taxes and tariffs, shall be as provided on Exhibit D, *provided* that such prices may be changed by Licensor from time to time upon a thirty (30) days notice, and *further provided* that subject to the minimum prices requirements, if any, per Section 3.2 hereof, Licensee may freely set up licensing fees to End Users and resellers and further increase such licensing fees and prices to End Users for the amounts of applicable sales, use and value-added taxes. Each Licensee and Licensor is free to set its discounted, rebate and special promotion prices for the license of the Product below minimum prices, *provided that* such discounts, rebates or special promotion shall not affect the payments that would have been otherwise due to the other Party under the minimum price policies without obtaining such Party's prior consent.

3.3     Payments.  All payments to Licensor shall be made, at the option of Licensor:

4

*Confidential*
*RitLabs Licensing Agreement*

a)      in US dollars (or Euros, if agreed by the Parties) to the account provided to Licensee by Licensor or such other account as provided to Licensee in accordance with Section 8.5 hereof;

b)      in US dollars (or Euros, if agreed by the Parties) by wire transfer, check or means of payments acceptable to both Parties to the account designated on Exhibit F (or to such other account as Licensor may notify the Licensee in accordance with Section 8.5; and

c)      Invoicing.  If requested by Licensee, Licensor shall submit invoices to Licensee for payment for Products delivered to End Users or any payments made hereunder at such time or times as payment may be due under this Agreement.  Each invoice shall contain such information as may be reasonably requested by Licensee.

3.4    Taxes and other payments.

a)      All disbursements, prices and fees payable to Licensor hereunder, including the License Fees, are exclusive of all federal, state, municipal, or other government, excise, sales, use, occupational, or like taxes now in force or enacted in the future, and any Licensee's liability for all licensing and royalty fees to third parties (other than for any Licensor Products or Licensor Marks) that accrue in connection with the Agreement, and therefore, prices and respective payments are subject to an increase or a decrease equal to any tax, levy or duty Licensee may be required to collect or pay upon the sale or delivery of items purchased or licensed;

b)      **All payments made by Licensee to Licensor hereunder shall be subject to any withholding taxes or tariffs imposed by the United State of America and other applicable jurisdiction, and Licensee shall not be liable or responsible for any such taxes or tariffs and shall have the right to withhold any of such taxes or tariffs as required, or as Licensee reasonably believes is required, by applicable law or regulation;**

c)      Licensee may set standard fees to cover all fees and processing expenses for charge backs, frauds, and refunds;

d)      Notwithstanding anything to the contrary herein, Licensor shall be solely responsible for any value added taxes collections, payments and related registrations arising in any way out of or relating to this Agreement.  If a certificate of exemption or similar document or proceeding is to be made in order to exempt the sale from sales or use tax liability, Licensee will obtain and provide Licensor with such certificate, document or proceeding; and

e)      For the avoidance of doubt, the parties' understanding is that payments hereunder are not subject to VAT.  If under the applicable tax legislation License Fees is subject to VAT, Licensor shall indicate, in addition to License Fee amount, such VAT and other tax or duty in the invoice as a separate line item.  Licensee shall withhold and remit VAT and/or other tax or duty payable to the government budget on behalf of Licensor as prescribed by applicable law, if any.  Licensor shall provide Licensee with all documentation required to be filed to the applicable tax authorities to minimize taxes and duties levied under the applicable tax laws.

Licensor _____     Licensee _____
signature                                     signature

5

*Confidential*
*RitLabs Licensing Agreement*

4. **Representations and Warranties.**

    4.1    Each Party represents and warrants to the other Party that:

    a)    it is an entity duly created, formed and organized, validly existing and in good standing under the laws of the jurisdiction of its creation, formation, or organization;

    b)    to its knowledge, there is no pending or threatened action (or basis therefor) for the dissolution, liquidation, or insolvency of the Party;

    c)    it has all requisite corporate power and authority necessary to execute and deliver the Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby;

    d)    the Agreement has been duly authorized, executed and delivered, and constitutes a valid, legal and binding obligation of the Party enforceable against such Party in accordance with its terms, subject to any law affecting creditors' rights; and

    e)    to its knowledge, the execution, delivery and performance of the Agreement do not and will not (i) violate any charter document of the Party, (ii) violate any agreement or order to which such Party is a party to or by which such Party or its assets are bound, or (iii) require any consent from any Person.

5. **DISCLAIMERS; LIMITATION OF LIABILITIES.**

    5.1    <u>EXCLUSIONS OF DAMAGES AND LIABILITY</u>. WITH THE EXCEPTION OF VIOLATION OF PARTY'S INTELLECTUAL PROPERTY RIGHTS, IN NO EVENT WILL LICENSOR OR LICENSEE BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES UNDER ANY FORM OR THEORY OF ACTION WHATSOEVER, WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, EQUITY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, OVERHEAD, DAMAGES FOR LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES, EVEN IF ADVISED OF THE POSSIBILITY THEREOF.

    5.2    <u>Limitation on Liability</u>. If the Agreement is expired or terminated pursuant to any provision of hereof, Licensee shall not be liable to Licensor because of such termination, for consequential or incidental damages, including without limitation, loss of profits or goodwill. Termination shall not, however, relieve either Party of its liability or obligation for any breach or default occurring before the termination. Notwithstanding any provision to the contrary herein, the liability of Licensee to Licensor for any claim whatsoever related to the Software and/or Products or this Agreement, including any cause of action sounding in contract, tort, or strict liability, shall not exceed the greater of One Thousand ($1,000.00) Dollars or the total amount of payments theretofore paid by Licensor during the previous one-year period to Licensee in connection with the products relating to such liability.

6. **Indemnification.**

Licensor _____ Signature

Licensee _____ signature

6

6.1     Indemnification by the Parties. Each Party (the *"Indemnifying Party"*) agrees to indemnify, defend and hold harmless the other and their respective officers, directors, employees, agents, successors, and assigns (the *"Indemnified Party"*), from any and all losses, liabilities, damages and claims, and all related expenses (including reasonable legal fees and disbursements and costs of investigation, litigation, settlement, judgment, interest and penalties) and costs related to, arising from, or in connection with any third-party claim related to, arising from, or in connection with the actual or alleged (i) personal injury (including death) or property damage due to the gross negligence or intentional misconduct of the Indemnifying Party, and/or (ii) breach by the Indemnifying Party of any of its representations, warranties, obligations, and/or covenants set forth herein.

## 7.   **Term and Termination.**

7.1     Term. This Agreement is effective as of the Effective Date and will remain in full force and effect for a period of three **(3) years** from the Effective Date (the *"Original Term"*) and shall automatically extend for consecutive one (1) year periods upon the expiration of the Original Term and the applicable extension periods (as so extended, the *"Term"*), unless either Party submits written notification to the other Party of its intent not to extend the Agreement at least ninety (90) days prior to expiration of the Original Term or the applicable extension period.

7.2     Termination. The Parties may terminate this Agreement as provided below:

a)     Licensee and Licensor may terminate this Agreement by mutual written consent at any time;

b)     Licensee may terminate this Agreement:

i).  by giving notice to Licensor at any time if Licensor has breached any representation, warranty, obligation or covenant contained in this Agreement in any material respect and this breach has not been cured within a fifteen (15) day period; and

ii).  if any legal proceeding is initiated and not dismissed within twenty (20) days alleging that (a) Licensor or Products violate the material laws of the foreign government and/or the laws and regulations of the United States, or (b) Licensor or Products has interfered with, infringed upon, misappropriated, or otherwise violate or come into conflict with any other person's Intellectual Property Rights.

c)     Licensor may terminate this Agreement:

i).  by giving notice to Licensee at any time if Licensee has breached any material representation, warranty, obligation or covenant contained in this Agreement and this breach has not been cured within a fifteen (15) day period.

d)     either Party may terminate this Agreement upon notice:

i).  if the other Party attempts to make an assignment in violation of Section 8.1 below;

7

ii). if the other Party declares insolvency or bankruptcy,

iii). if a petition is filed in any court and not dismissed in ninety (90) days to declare the other Party bankrupt or for the other Party's reorganization under bankruptcy, insolvency, reorganization, moratorium, or other laws relating to or affecting the rights of creditors; and

iv). if the other Party consents to the appointment of a trustee in bankruptcy or a receiver or similar entity.

7.3     Actions upon Termination.    In the event of termination or expiration of this Agreement:

a).     Licensee shall immediately cease all use of the Products, Software, and Licensor Marks and immediately return to Licensor the master copies of the Products, if any, and Confidential Information, including any copies thereof; and

b).     Licensee shall calculate and pay to Licensor the License Fees through the date of termination and any other amounts due Licensor hereunder.

7.4     Survival of Certain Provisions.    Notwithstanding any provisions to the contrary herein, the provisions of Sections 2.7, 2.7, 3.4, 6 (for two years), 7.3, 7.4 and 8 shall survive the termination or expiration of the Agreement and such termination or expiration shall not release Licensee or Licensor of their respective obligations regarding the Confidential Information, Licensee's obligations with respect to Intellectual Property Rights or any duties, liabilities or obligations which by the terms hereof or in context are to survive termination; all licenses properly granted to End Users pursuant to the then-existing end-user license agreements shall continue in force and effect in accordance with the terms thereof and the Products already distributed shall remain in use under the terms of such end-user license agreements.

## 8. Miscellaneous Provisions.

8.1     Assignment.    This Agreement may not be assigned, in whole or in part, by either Party without the prior written consent of the other Party.

8.2     Governing Law.    This Agreement shall be governed by and construed and interpreted in accordance with the substantive laws of the Commonwealth of Virginia, without giving effect to any conflicts of law rule or principle that might require the application of the laws of another jurisdiction. Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the federal and state courts in the Arlington County of the Commonwealth of Virginia in any such action, suit or proceeding, and agrees that any such action, suit or proceeding shall be brought only in such court and waives any objection based on forum non conveniens or any other objection to venue therein. This Agreement shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded.

8.3     Legal Expenses.    The prevailing Party in any legal action, including arbitration, brought by one Party against the other and arising out of this Agreement shall be entitled, along with any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorney's fees. Such fees may be set by the court in the trial of such action or may be

8

enforced in a separate action brought for that purpose. Such fees shall be in addition to any other relief that may be awarded.

8.4     Publicity.  The Parties shall work together to issue publicity and general marketing communications concerning their relationship and other mutually agreed-upon matters.  In addition, neither Party shall issue such publicity and general marketing communications concerning their relationship without the prior written consent of the other Party (not to be unreasonably withheld or delayed).  Neither Party shall disclose the terms of this Agreement to any third party other than its outside counsel, auditors, and financial and technical advisors, except as required by law.

8.5     Notices.  All claims, instructions, consents, designations, notices, waivers, and other communications in connection with the Agreement (*"Notifications"*) will be in writing.  Such Notifications will be deemed properly given (a) when received if delivered personally, (b) if delivered by facsimile transmission when the appropriate telecopy confirmation is received; (c) upon the receipt of the electronic transmission by the server of the recipient when transmitted by electronic mail, or (d) within three (3) days after deposit with an internationally recognized express delivery service, in each case when transmitted to a Party at the following address or location:

> If to Licensor:
>
> > to the Licensor's address indicated on Exhibit F.
>
> If to Licensee:
>
> > (to the address indicated on the signature page).
>
> with a copy to (which shall not constitute notice):
>
> > International Legal Counsels PC
> > 901 N. Pitt Street
> > Suite 325
> > Alexandria, VA 22314
> > attention: Dmitri I. Dubograev, Esq.
> > e-mail: info@legal-counsels.com
> > facsimile: 202.318.0723

8.6     Independent Contractors.  The relationship of Licensor and Licensee established by this Agreement is that of independent contractors and nothing contained in this Agreement shall be construed to (i) give either Party the power to direct and control the day-to-day activities of the other, (ii) constitute the Parties as partners, joint venturers, franchisor-franchisee, co-owners or otherwise as participants in a joint or common undertaking, or (iii) allow Licensee to create or assume any obligation on behalf of Licensor for any purpose whatsoever.  Except for the rights of Licensor set forth in this Agreement, Licensor shall be solely responsible for developing and implementing its business and marketing plans and its operations.

8.7     Severability.  If this Agreement or any provision thereof is, or the transactions contemplated hereby are, found by a court of competent jurisdiction to be invalid, void, unenforceable for any reason or inconsistent or contrary to any valid applicable laws or official orders, rules and regulations, in whole or in part, the inconsistent or contrary provision of this Agreement shall be null and void and such laws, orders, rules and regulations shall control and, as so modified, this Agreement shall continue in full force and effect and the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by

Licensor _____   Licensee _____

9

law, *provided, however*, that nothing herein contained shall be construed as a waiver of any right to question or contest any such law, order, rule or regulation in any forum having jurisdiction.

8.8   No Waiver.  No provision of the Agreement will be considered waived unless such waiver is in writing and signed by the Party that benefits from the enforcement of such provision.  No waiver of any provision in the Agreement, however, will be deemed a waiver of a subsequent breach of such provision or a waiver of a similar provision.  In addition, a waiver of any breach or a failure to enforce any term or condition of the Agreement will not in any way affect, limit, or waive a Party's rights under the Agreement at any time to enforce strict compliance thereafter with every term and condition of the Agreement.

8.9   Force Majeure.  Nonperformance of either Party shall be excused to the extent the performance is rendered impossible by strike, fire, flood, governmental acts or orders or restrictions, failure of suppliers.

8.10   Further Assurances.  The Parties will each perform such acts, execute and deliver such documents and instruments, and do such other things as may be reasonably requested to accomplish the transactions contemplated by this Agreement and to carry out the purpose and intent hereof.

8.11   No Third Party Beneficiaries.  This Agreement is solely for the benefit of the Parties and, except as otherwise provided herein, no other Person will have any right, interest, or claim under this Agreement.

8.12   Entire Agreement.  With the exception of prior Non-Disclosure Agreements, if any, the Agreement, together with the exhibits, attachments and appendices hereto, constitutes the entire agreement and understanding between the Parties or any of their Affiliates with respect to its subject matters and supersedes all prior agreements, understandings and representations, written or oral, to the extent they relate in any way to the subject matter of the Agreement.

8.13   Warranty of Authority.  The individuals actually executing this Agreement personally represent and warrant that they have the necessary power and authority to execute this Agreement on behalf of the Party they represent and their signatures are sufficient to make this Agreement a binding and enforceable obligation of such Party.

8.14   Counterparts of the Agreement.  The Agreement may be separately executed by the Parties in two (2) or more counterparts and all such counterparts shall be deemed an original, but all of which together shall constitute one and the same instrument and will be binding on the Parties as if they had originally signed one copy of the Agreement.  Delivery of a copy of this Agreement or such other document bearing an original signature by facsimile transmission (whether directly from one facsimile device to another by means of a dial-up connection or whether mediated by the worldwide web), by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature. "Originally signed" or "original signature" means or refers to a signature that has not been mechanically or electronically reproduced.

[SIGNATURE PAGE FOLLOWS]



*Confidential*
*RitLabs Licensing Agreement*

signature page 1 of 1

IN WITNESS WHEREOF, each of the undersigned Parties to this Distribution and Licensing Agreement has caused this Agreement to be duly executed in its corporate name by one of its authorized representatives, all as of the date first set forth above.

LICENSOR          RITLABS SRL.

By: _____

Name: Serghei Demcenko
Title: Director

LICENSEE          RitLabs Inc.

By: _____

Name: Yuri Bakay
Title: Vice President

*Address:*

Ritlabs Inc.
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
facsimile: 202.318.0723

Licensor                                    Licensee
Signature                                   Signature

11

*Confidential*
*RitLabs Licensing Agreement*

## EXHIBIT A

### LICENSOR SOFTWARE AND PRODUCTS
#### LICENSOR'S SOFTWARE SPECIFICATION AND PRICES

*SOFTWARE - THE BAT! (PRICE LIST FOR USA, EUROPE)*

| License type | | Single | Multi | |
|---|---|---|---|---|
| Home | | 35.00 USD | none | |
| Professional (basic license) | | P=45.00 USD | 2-10 (w/s) | P-20% |
| | | | 11-30(w/s) | P-30% |
| Extra discount* | Discount for schools | | 31-50(w/s) | P-50% |
| -30% from the basic license | -85% from the basic license (min 10 licenses) | | 51-100(w/s) | P=$1125+15*(n-50) |
| | | | 101-...(w/s) | P=$1875+$5*(n-100) |

\* Extra discount is given to the following groups of users: non-profit organizations, students, educational institutions (universities, institutes), registered users purchasing the rights for using new versions of the Software.

#### LICENSOR'S SOFTWARE SPECIFICATION AND PRICES

*SOFTWARE - THE BAT! (PRICE LIST FOR RUSSIAN FEDERATION AND CIS)*

| License type | | Single | Multi | |
|---|---|---|---|---|
| Home | | 25.00 USD | none | |
| Professional (basic license) | | P=35.00 USD | 2-10 (w/s) | P-20% |
| | | | 11-30(w/s) | P-30% |
| Extra discount* | Discount for schools | | 31-50(w/s) | P-50% |
| -30% from the basic license | -85% from the basic license (min 10 licenses) | | 51-100(w/s) | P=$875+15*(n-50) |
| | | | 101-...(w/s) | P=$1625+$5*(n-100) |

\* Extra discount is given to the following groups of users: non-profit organizations, students, educational institutions (universities, institutes), registered users purchasing the rights for using new versions of the Software.

Ex-1

RLSRL00333

*Confidential*
*RitLabs Licensing Agreement*

LICENSOR'S SOFTWARE SPECIFICATION AND PRICES

*SOFTWARE – BatPost*

| № | | Number | Units | USD |
|---|---|---|---|---|
| 11 | **BatPost Server, basic installation** (50 accounts are included in the price) | 1 | pieces | 50.00 |
| 22 | Additional accounts for **BatPost** | 1-50 | pieces | 1.00 |
| | | 51-100 | pieces | 0.90 |
| | | 101-200 | pieces | 0.80 |
| | | 201-300 | pieces | 0.70 |
| | | 300 and more | pieces | 0.60 |

Ex-2

RLSRL00334

*Confidential*
*RitLabs Licensing Agreement*

**EXHIBIT B**

LICENSEE AND ITS AFFILIATES MARKS AND POLICIES

None

Ex-3

RLSRL00335

*Confidential*
*RitLabs Licensing Agreement*

**EXHIBIT C**

TERRITORY

**Exclusive Territory**
- The United States

**Non-Exclusive Territory**
- Worldwide except the United States

Ex-4

**RLSRL00336**

*Confidential*
*RitLabs Licensing Agreement*

## EXHIBIT D

LICENSE FEES

| *Licensor Software* | *License Fees\* payable to Licensor*<br>*(% of Gross Revenue)* |
|---|---|
| Licensor Software and Products<br>(exhibit A) | [40%] |

*The Parties agree that the License Fee as determined pursuant hereto (i.e. percentage, fixed amounts) and/or total aggregate License Fee may be adjusted, as mutually agreed by the Parties, to include additional bonus payments or discounts payable to Licensee based on performance and additional contribution of the Licensee.

Ex-5

RLSRL00337

*Confidential*
*RitLabs Licensing Agreement*

## EXHIBIT E

### END USER LICENSE AGREEMENT

The present agreement is set between you – the User (individual or legal entity) and Ritlabs SRL company (Rightholder) concerning the usage of the software (Program) belonging to RITLabs that comes together with the Agreement.

**IMPORTANT:**
ONCE YOU INSTALL THIS SOFTWARE, YOU ACCEPT THiS LICENSE AGREEMENT. IF YOU DON'T AGREE, RENOUNCE THE FURTHER INSTALLATION AND USAGE OF THE SOFTWARE.

**Installation and Usage.** Unregistered copies of the Program can be installed and used only for getting acquainted with it in a 30-day trial period. On the expiry of this 30-day period you must either register the Program or stop using it. The registration gives you the right to use the program after the 30-day trial period, to receive technical support and to benefit of the options granted exclusively to the registered Users, as well as to receive the updates of the Program within its current version (actual in the moment of purchasing) from the Rightholder without additional payments. On registering the Program and making the fixed payment in the size that is stipulated in the agreement between you and the party executing the transfer of rights you receive the Program activation code and the Individual License that cannot be returned. According to the given agreement, you get a non-exclusive license for using the Program: you can install it, benefit of the Program's features, access, display and launch one copy of the Program and handle one copy of the Program on one computer of the User, workstation – User's terminal.

**Usage limitations.** Program must not be hired out, leased or transmitted. This license forbids any usage of the Program that would violate any international or local law. Any such action is an exclusive liability of the acting person. You have no right to distribute, copy, imitate, multiply, sell, modify, decompile, disassemble or change the components of the Program by no means. You can make copy of the components of the Program only under the condition that this copy is destined for backup purposes only. Any unauthorized usage will lead to immediate and automatic termination of the present Agreement and may also cause law proceedings.

**Reservation of the property right for the Program.** The Program is protected by law and agreements on author right and other intellectual property rights. Ritlabs SRL possesses all the author rights for the Program. The Program is not sold; it is given for usage according to the License Agreement.

**Limited warranty.** The Program is granted as general purpose software, not for any specific purpose of the User. You agree that any software can contain errors. We strongly recommend you to make backup copies of your files. Ritlabs SRL is not liable for losses, damages, costs and expenditures incurred by the User or by the third party as a result of incorrect use of the Program, including (under no limitation) the liabilities for business expenses, idle-times, losses incurred by the

Ex-6

**RLSRL00338**

User or by the third party as a result of the absence, malfunction, virus, error of disfunction of the Program. Ritlabs SRL is not liable for indirect, special, accidental damages, as well as for their consequences related to the matter of the Agreement.

**Confirmation of the presence of the license at the end user.** If you received a nonexclusive right for using the Program according to the License Agreement, the type of your license, serial number of the key and user name can be viewed by pressing "Alt+Fl" while working with the Program. Activation key of the Program must be kept as confirmation of the fact that you have the license for using the Program.

© Ritlabs 1997-2010

Ex-7

RLSRL00339

*Confidential*
*RitLabs Licensing Agreement*

**EXHIBIT F**

LICENSOR'S ADDRESS AND BANK INFORMATION:

Licensor's Address:
**RITLABS SRL**
180 Stefan Cel Mare, ap. 102
MD-2004, Chisinau, Rep. of Moldova
Tel +373 22 295781 / Fax +373 22 295932
http://www.ritlabs.com

Licensor's Banking Information:

| | | |
|---|---|---|
| 56 | Correspondent Bank<br>Bank's Code<br>Account: | CITIBANK N.A., New York, USA<br>SWIFT: CITI US 33<br>36141833 |
| 57 | Beneficiary's Bank<br>Address<br>Bank's Code | VICTORIABANK, Chisinau, Moldova<br>31 August str., 141, MD 2004 Chisinau, Republic of Moldova<br>SWIFT: VICBMD2X |
| 59 | Beneficiary:<br>Address:<br>Account: | RITLABS SRL<br>Stefan cel Mare 180, MD 2004 Chisinau, Republic of Moldova<br>222400100104584 |

Ex-8

RLSRL00340

*Confidential*
*RitLabs Licensing Agreement*

**EXHIBIT G**

SERVICE AND SUPPORT

None

Ex-9

RLSRL00341

**EXHIBIT H**

<u>DEFINITION OF TERMS</u>

<u>**Defined Terms:**</u>

1.1.    *"Affiliate"* shall mean, with respect to a given Person, any person or entity which, directly or indirectly, controls, is controlled by, or is under common control with, the given Person; "control" (including, with its correlative meanings, "controlled by" and "under common control with") means possession, directly or indirectly, of the power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise).

1.2.    *"Agreement"* shall have the meaning set forth in the preamble hereof.

1.3.    *"Confidential Information"* shall mean any information, product, document or other material of any nature relating to or concerning one Party and/or its Affiliates, that is provided or made available to the other Party either before or after the Effective Date, directly or indirectly in any form whatsoever, including in writing, orally, and machine readable, and including, but not limited to, any correspondence, memoranda, notes, e-mails, formulas, samples, equipment, compilations, blueprints, business information, technical information, know-how, information regarding patents, patent applications, software, computer Object Code or Source Code, algorithms, high-level structures, graphic user interfaces, ongoing research and development, business plans, business or marketing strategies or plans, products or product development strategies or plans, information concerning current and future products and services, customers, suppliers and markets, price lists and pricing information, financial statements and forecasts, computerized or other magnetically filed data, methods and techniques, manufacturing processes, developments, inventions, designs, drawings, engineering specifications, hardware configuration information, trade secrets, financial information of the Party and/or its Affiliates and any other business records and information, including without limitation the information about this Agreement, the use or disclosure of which might reasonably be construed to be contrary to the interests of such Party and/or their Affiliates, including information of third parties subject to confidentiality obligations and which such Party and/or its Affiliates may share with the other Party, *provided, however,* that Confidential Information shall not include information which:   (i) that is already in the possession of the receiving Party before receipt from the disclosing Party and/or its Affiliates; (ii) is or becomes rightfully in the public domain without no fault of the receiving Party; (iii) is received by the receiving Party from a third party who or which is not under any obligation of confidentiality or restriction on use or disclosure concerning such information, or (iv) is disclosed under operation of law to the public or to a third party without a duty of confidentiality.  If a Party asserts one of the four exceptions to Confidential Information above, then such Party shall prove such assertion by proper forms of documentary evidence.

1.4.    *"Licensee"* shall have the meaning set forth in the preamble hereof.

1.5.    *"Licensee Marks"* shall mean all proprietary indicia and designations of origin, trademarks, trade names, trade dress, service marks, service names, symbols, logos and other distinct brand elements that appear from time to time in properties, products, ventures and services of Licensor or any of its Affiliates, together with any modifications to the foregoing made by such parties during the Term of this Agreement as may be specified on <u>Exhibit B</u> hereof.

1.6.    *"Documentation"* shall mean user manuals, training materials, product descriptions and specifications, technical manuals, supporting materials, maintenance know how, text and graphic elements of all user interfaces and any modifications or upgrades of the foregoing, developed for use in connection with Products and provided or made available by Licensor or any of its Affiliates from time to time.

**RLSRL00342**

    1.7.   *"Effective Date"* shall have the meaning set forth in the preamble hereof.

    1.8.   *"End User"* shall mean any Person that licenses Products for his, her, or its use and not for redistribution.

    1.9.   *"Exclusive Territory"* shall mean those geographic areas specified in Exhibit C attached hereto and incorporated herein.

    1.10.   *"End User License Agreement"* shall have the meaning set forth in Section 2.4 hereof.

    1.11.   *"Gross Revenues"* for any calendar period shall mean all gross sales revenues from the licensing of Products to End Users, including subscription renewals, if any.

    1.12.   *"Indemnified Party"* shall have the meaning set forth in Section 6.1 hereof.

    1.13.   *"Indemnifying Party"* shall have the meaning set forth in Section 6.1 hereof.

    1.14.   *"Intellectual Property Rights"* shall mean all worldwide (i) inventions (whether patentable or unpatentable, whether or not reduced to practice, and/or whether developed alone or jointly with others), all improvements thereto, patents, patent applications, patent and invention disclosures, and all other rights of inventorship, together with all reissuances, continuations, continuations-in-part, divisions, revisions, supplementary protection certificates, extensions and re-examinations thereof; (ii) Internet domain names, trademarks, service marks, trade dress, trade names, logos, designs, slogans, product names, corporate names, together with all of the goodwill symbolized thereby and associated therewith, and registrations and applications for registration thereof and renewals thereof; (iii) copyrights (registered or unregistered), copyrightable works, rights of authorship, and registrations and applications for registration thereof and renewals thereof; (iv) integrated circuit designs, cell libraries, electronic masks, net lists, simulations, mask works, semiconductor chip rights, and registrations and applications for registration thereof and renewals thereof; (v) computer software (including without limitation Source Code, Source Code engines, source data files, and Object Code), software development tools (including without limitation assemblers, compilers, converters, utilities, compression tools), libraries, algorithms, routines, subroutines, commented and documented code, programmer's notes, system architecture, logic flow, data, computer applications and operating programs, databases and documentation thereof; (vi) trade secrets and other confidential information (including without limitation ideas, technologies, know-how, manufacturing and production processes and techniques, research and development information, drawings, schematics, specifications, bill of material, designs, plans, proposals, technical data, pricing data, marketing data, financial records, customer and supplier lists, and other proprietary information), (vii) copies and tangible embodiments thereof (in whatever form or medium), and all modifications, enhancements and derivative works of any of the foregoing; and (viii) all rights to sue and collect remedies for any past, present and future infringement of any of the foregoing, and rights of priority and protection of interests therein under the laws of any jurisdiction worldwide.

    1.15.   *"License"* shall have the meaning set forth in Section 2.1 hereof.

    1.16.   *"License Fees"* for each calendar month shall mean the aggregate of license fees, as indicated on Exhibit D which may be calculated as a percentage of Gross Revenues, flat fees for each product sold, flat monthly fees, combination thereof or in any other manner agreed by the Parties and as may be amended from time to time upon mutual agreement by the Parties, reduced solely by the appropriate portion of the allowable refunds and charge backs made to End Users hereunder in the same calendar period, and may include additional bonus royalties paid based on the performance of the Parties as mutually agreed by the Parties.

    1.17.   *"Licensor"* shall have the meaning set forth in the preamble hereof.

    1.18.   *"Licensor Marks"* shall mean all proprietary indicia and designations of origin, trademarks, trade names, trade dress, service marks, service names, symbols, logos and other distinct brand elements that appear from time to time in properties, products, ventures and

RLSRL00343

*Confidential*
*RitLabs Licensing Agreement*

services of Licensor or any of its Affiliates, together with any modifications to the foregoing made by such parties during the Term of this Agreement.

 1.19. *"Non-Exclusive Territory"* shall mean those geographic areas specified in Exhibit C attached hereto and incorporated herein.

 1.20. *"Notifications"* shall have the meaning set forth in Section 8.5 hereof.

 1.21. *"Object Code"* shall mean computer programs assembled or compiled in magnetic or electronic binary form on software media, which are readable and usable by machines, but not generally readable by humans without reverse-assembly, reverse-compiling, or reverse-engineering.

 1.22. *"Original Term"* shall have the meaning set forth in Section 7.1 hereof.

 1.23. *"Parties" or "Party"* shall have the meaning set forth in the preamble hereof.

 1.24. *"Person"* means any individual, partnership, limited liability company, corporation, association, joint stock company, trust, joint venture, labor organization, unincorporated organization, or governmental authority.

 1.25. *"Products"* shall mean a right to use Software in accordance with End User License Agreement, registration keys or registration code, if and as applicable, included therewith in any form, tangible or intangible, and on any media and all fixes, updates, modifications, enhancements and new releases of the Software and those related materials sold and/or used in connection therewith.

 1.26. *"Promotional Materials"* shall have the meaning set forth in Section 2.1c) hereof.

 1.27. *"Rules"* shall have the meaning set forth in Section Ошибка! Источник ссылки не найден. hereof.

 1.28. *"Software"* shall mean any software described in Exhibit A attached hereto and incorporated herein and all related Documentation, and including all forms of code, such as Source Code and Object Code, any upgrades, modified versions, updates, and additions thereto, in any form and on any media including all fixes, updates, modifications, enhancements and new releases of the foregoing.

 1.29. *"Source Code"* shall mean the human-readable form of the computer programming code and related system documentation including all comments and any procedural code such as job control language.

 1.30. *"Suppliers"* shall mean one or more of the entities from which the Products or rights to the Products may be or may have been obtained by Licensor.

 1.31. *"Suppliers Marks"* shall mean all proprietary indicia and designations of origin, trademarks, trade names, trade dress, service marks, service names, symbols, logos and other distinct brand elements that appear from time to time in properties, products, ventures and services of Suppliers or any of their Affiliates, together with any modifications to the foregoing made by such parties during the Term of this Agreement.

 1.32. *"Term"* shall have the meaning set forth in Section 7.1 hereof.

 1.33. *"Territory"* shall mean those geographic areas specified in Exhibit C attached hereto and incorporated herein.

RLSRL00344

*Confidential*
*RitLabs Licensing Agreement*

**EXHIBIT I**

PARTIES ADDITIONAL OBLIGATIONS

1. **Licensee Obligations:**

    1.1. <u>Promotional Efforts</u>.  Licensee shall use its commercially reasonable efforts to (i) promote vigorously and aggressively the marketing and distribution of the Products in the Territory and agrees to prominently display therewith the Licensor Marks, and (ii) independently, or in co-operation with Licensor, seek out clients, identify, qualify, and secure licensing opportunities in the Territory.  Licensee may advertise the Products in advertising media of Licensee's choice, provided that the primary audience or circulation is located in the Territory.  Licensee shall make full use of all promotional material supplied by Licensor or its own Promotional Materials.  In all advertising and promotion of the Products, Licensee shall comply with Licensor's standard cooperative advertising policies as specified from time to time by Licensor.

    1.2. <u>Protection of Goodwill</u>.  Licensee shall undertake reasonable efforts to protect and preserve the goodwill and image of the Products and to avoid deceptive, misleading, or unethical practices that are or might be detrimental to Licensee or its Affiliates, or the public, including any disparagement of Licensee and its Affiliates.  Each Party agree that it shall not communicate, transmit, or promulgate in any matter, means or medium, any threatening, harassing, or obscene material, matter, or communications of any sort or to otherwise use the Internet service for any illegal or unlawful purpose or to deliberately communicate, transmit, or promulgate in any matter, means or medium, any unsolicited information or material to any individual or group of individuals (i.e.: "spamming") or to use such methods to promote a product.

    1.3. <u>Service and Support</u>.  Each respective Party shall, upon the terms and conditions as agreed between the Parties pursuant to <u>Exhibit G</u> attached hereto, provide license service and support for all Products in the Territory.

    1.4. <u>Market Conditions</u>.  Licensee may, but not bound to advise Licensor concerning any market information that comes to Licensee's attention respecting Licensor, the Products, Licensor's market position, or the continued competitiveness of the Products in the marketplace.

    1.5. <u>Packaging and Licensing Agreements</u>.  Parties acknowledge and agree that Products will be subject to all warranties, shrink-wrap agreements, disclaimers and end-user license agreements and other license agreements contained in the packages as provided by Licensor and/or Suppliers and Licensee shall instruct its customers as to the terms of such documents applicable to Products.

    1.6. <u>Other Licensee's Obligations</u>.  Licensee shall:

        a).  keep Licensor's Confidential Information in strict confidence and shall not make use of Confidential Information for any purpose other than in connection with the Agreement;

**RLSRL00345**

*Confidential*
*RitLabs Licensing Agreement*

b). notify Licensor if disclosure of Licensor's Confidential Information by Licensee is necessary to comply with the requirements of any law, government order, regulation or legal process prior to such disclosure;

c) comply with all applicable international, national, governmental, quasi-governmental and/or local laws and regulations in performing its duties hereunder, including without limitation, relevant embargo and export laws and regulations;

d). keep and maintain accurate books, records, reports and customer data relating to the Products to the extent such information is available to Licensee; and

e). provide first level technical support to the Products via phone, email and other electronic media, as appropriate.

## 2. Licensor Obligations:

2.1. Licensor shall:

a). keep Licensee's Confidential Information in strict confidence and shall not make use of Licensee's Confidential Information for any purpose other than in connection with the Agreement;

b). notify Licensee if disclosure of Licensee's Confidential Information by Licensor is necessary to comply with the requirements of any law, government order, regulation or legal process prior to such disclosure and at Licensee's request use best efforts to seek an appropriate protective order in connection with such legal process and, if unsuccessful, to use best efforts to assure that confidential treatment will be accorded to the disclosed Confidential Information of Licensee;

c). take all necessary steps to ensure compliance by its employees or its other representatives with Licensor's obligations under this Agreement;

d). in exercising its rights or performing its obligations hereunder, Licensor shall use its best efforts to comply with all applicable international, national, governmental, quasi governmental and/or local laws and regulations in performing its duties hereunder and in any of its dealings with respect to the Products, including without limitation, relevant embargo and export laws and regulations, and assure that, in connection with performance of its obligations pursuant to this Agreement or arising or relating therefrom, no Product, Documentation, Confidential Information or any portion thereof, and any information relating thereto or to this Agreement, is exported, transshipped or re-exported, directly or indirectly, in violation of any applicable law;

e). represent Products and any information relating to Products accurately and fairly and shall avoid any misleading or unethical business and advertising practices;

f). refrain from making any warranty, representation, or guarantees with respect to the specifications, features, or capabilities of Products, including without limitations warranties of functionality or performance, that are inconsistent with the Product's warranties and disclaimers;

RLSRL00346

*Confidential*
*RitLabs Licensing Agreement*

g). not to communicate, transmit, or promulgate in any matter, means or medium, any threatening, harassing, or obscene material, matter, or communications of any sort or to otherwise use the Internet service for any illegal or unlawful purpose and not to communicate, transmit, or promulgate in any matter, means or medium, any unsolicited information or material to any individual or group of individuals (i.e.: "spamming"), or any other manner violate the CAN-SPAM Act of 2003.

h). provide Products' technical support to End Users via email, telephone, open discussion forums, knowledge base articles and by other electronic means; and

i). Not later than three (3) days after Licensee's notification, provide Products' technical support training to Licensee at no cost and provide full written or oral answers to all Licensees questions about install, setup and exploitation process.

Ex-15

RLSRL00347

*Confidential*
*RitLabs Licensing Agreement*

### EXHIBIT J

### PROPRIETARY NOTICES; TRADEMARKS

1.1.     Licensor Marks.  Any and all Licensor Marks are and shall remain the exclusive property of Licensor, Suppliers and/or of their Affiliates, as the case may be, and Licensor grants Licensee a limited license to reproduce the Licensor Marks only to the extent expressly provided herein.  Licensee will use the Licensor Marks consistently with guidelines for use as may be communicated by Licensor from time to time.  Licensee acknowledges that its utilization of the Licensor Marks pursuant hereto shall not create in it, nor shall it represent it has, any right, title or interest in or to the Licensor Marks other than the license expressly granted herein, or contest or impair Intellectual Property Rights.

1.2.     Licensee Marks.  Any and all Licensee Marks are and shall remain the exclusive property of Licensee, Suppliers and/or of their Affiliates, as the case may be, and Licensor shall have not right to use any of the Licensee's Marks unless specifically agreed to the contrary in writing.  Licensor shall (i) not, either during or after the Term of this Agreement, do anything or aid or assist any other Person to do anything which would infringe upon, harm or contest the validity of any Licensee Mark or Licensee's, Suppliers' or any of their Affiliates' rights therein or which would hinder or prevent Licensee, Suppliers' or any of their Affiliates from utilizing and/or licensing or sublicensing the Licensee Marks in any manner; (ii) not in any manner authorize or purport to authorize any Person to use any of the Licensee Marks; and (iii) report to Licensee any unauthorized use of any of the Licensee Marks by any Person that comes to Licensor's attention in any manner whatsoever.

1.3.     Licensor's Mark Policies and Standards; Quality Control.     Licensee acknowledges that any right to use the Licensor Marks is conditioned upon Licensee's observance of the provisions of this Agreement regarding the marketing and advertising of the Products.  Licensee shall display the Licensor Marks in accordance with Licensor's guidelines for using trademarks as in effect from time to time and as provided to Licensee upon a thirty (30) days notice by Licensor.  Notwithstanding the foregoing, any change by Licensor, Suppliers or any of their Affiliates to the Licensor Marks guidelines which affects Licensee's usage shall not apply retroactively to Licensee's past usage which conformed with the then current guidelines and Licensor shall permit Licensee a reasonable period of time in which to conform with the new guidelines.  Licensor retains the right, upon notice, to specify and approve the quality and standards of all materials on which the Licensor Marks are displayed and to inspect from time to time samples of such materials.  If requested by Licensor, additional agreements and conditions regarding manufacture and quality control will be set forth in a separate Addendum to this Agreement.

RLSRL00348