# EXHIBIT OO

TRAVERSElegal
ATTORNEYS & ADVISORS

810 Cottageview Dr.    231 932 0411 TEL
Suite G-20             231 932 0636 FAX
Traverse City
Michigan 49684         traverselegal.com

January 3, 2012

Serghei Demcenko
5411 Chandley Farm Court
Centreville VA, 20120
United States
Phone: (571) 393.0669
Email: serghei.demcenko@me.com

CC:

Dmitri I. Dubograev, Esq.
International Legal Counsels PC
901 N. Pitt Street, Suite 325
Alexandria, VA  22314
Fax: (202) 318.0723
Email: info@legal-counsels.com

CIFNet, Inc.
P.O. Box 5966
Vernon Hills, IL 60061-5966
Fax: (312) 803.0951
Email: hostmaster@cifnet.com

Office of the General Counsel
TuCows, Inc.
96 Mowat Avenue
Toronto, Ontario M6K 3M1
Canada
Email: privacy@tucows.com

    **RE:**    Cybersquatting of RITLABS trademark, violation of the Computer Fraud and Abuse Act, and intentional interference with contractual relations

January 3, 2012
Page 2 of 7

Dear Mr. Demcenko:

      We represent the interests of RitLabs S.R.L., a limited liability company organized under the laws of Moldova with its principal place of business in Chisinau, the Republic of Moldova (hereinafter "RitLabs"). It has recently come to our attention that you have, without the authorization of our client, gained access to our client's domain name control panel and changed the Registered Name Holder information associated with that domain name, which is listed in the publicly available WHOIS database. It has also come to our attention that you are currently using, and have attempted to register, the RITLABS trademark, which is currently seeking registration with the United States Patent and Trademark Office in International Class 009 and in association with software products (Serial No. 85503367). These actions have subjected you to liability for cybersquatting, trademark infringement, a violation of the Computer Fraud and Abuse Act, and intentional interference with contractual relations. This letter serves as your final notice to transfer this domain name back into our client's ownership, possession, and control, cease any and all use of the RITLABS trademark, abandon the RITLABS USPTO trademark application, and cease your intentional interference with our client's contractual relations or face further legal action.

      It has come to our attention that, during your term as CEO of RitLabs and on July 14, 2008, you registered a corporation under the laws of the State of Virginia under the trade name "RitLabs, Inc." As the former CEO of RitLabs and a 40% shareholder, you were not provided with member authorization to register a US-based business entity on behalf of the company or to use or seek registration of the RITLABS trademark within the United States. Further, upon discovering that you had registered this business entity with the State of Virginia, you were removed by the members from your position as CEO of RitLabs on December 13, 2011 and Maxim Masiutin was elected as the new CEO of RitLabs. Subsequently, you, without authorization, accessed our client's domain name control panel at CIFNet, changed the user information association with the <ritlabs.com> domain name, and transferred the <ritlabs.com> domain name into your possesion and control. You additionally, without authorization, contacted distributors of RitLabs' software and convinced them to sign new contracts with your Virginia corporation, which has funneled monies to your US-based entity in violation of your fiduciary duties to RitLabs, and you are currently under criminal investigation in the Republic of Moldova for these actions. Finally, on December 23, 2011, the unauthorized RitLabs, Inc. filed for trademark registration of RITLABS with the United States Patent and Trademark Office within International Class 009 and in association with software goods. This application is currently awaiting the assignment of an examining attorney.

      As you know, RitLabs has provided users with high quality communications software and services through the Internet since 1998. RitLabs has also owned the <ritlabs.com> domain name since 1998 and, since that time, has exclusively and extensively used the RITLABS trademark in commerce in association with its software goods and services. By

Case 1:12-cv-00215-AJT-IDD   Document 104-42   Filed 07/09/12   Page 4 of 8 PageID# 3619

January 3, 2012
Page 3 of 7

virtue of this longstanding use of the RITLABS trademark in interstate and international commerce, our client has obtained common law trademark rights in and to the RITLABS mark in the United States and across the world. Your theft of the <ritlabs.com> domain name, application for trademark registration of RITLABS, and use of the RITLABS trademark and trade name have caused our client significant damages and has subjected you to liability under United States law for cybersquatting, trademark infringement, and related claims.

In analyzing cybersquatting claims under the Anticybersquatting Consumer Protection Act ("ACPA") and the Uniform Domain Name Dispute Resolution Policy ("UDRP"), courts and panelists first query whether the defendant's mark is identical or confusingly similar to the plaintiff's mark. Courts are in agreement that "the greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Consequently, we believe that a federal court or a UDRP arbitrator would find that your use of RITLABS is identical to our client's RITLABS trademark.

Under 15 U.S.C. § 1125(d), the Anticybersquatting Consumer Protection Act, a party may be held liable in a civil action if that party "registers, traffics in, or uses a domain name that… is identical or confusingly similar to [the trademark owner's] mark." See 15 U.S.C. § 1125(d). Further, the party must have a "bad faith intent to profit from that mark." *Id.* This bad faith is evidenced by several non-exclusive factors, including "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name… either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion…." *Id.* A party that registers a domain name that is identical or confusingly similar to the trademark owner's mark with a bad faith intent to profit may be held liable for up to $100,000 per domain name, as well as costs and attorneys' fees. See 15 U.S.C. § 1117(d).

Numerous cases decided under the ACPA have resulted in the transfer of the domain names and the award of monetary penalties where the defendant registered a domain name containing the plaintiff's trademark. Where the defendant offers services that are similar to or the same as the plaintiff's services, courts have found that a bad faith intent to profit exists. *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F. Supp. 2d 612, 622 (E.D. Va. 2002) ("It also appears that defendant's services are essentially similar to those services provided at the cosmos.com domain name or at related sites to which cosmos.com provides a link."). Courts have recognized that "each time an Internet user looking for Plaintiffs' web properties mistakenly reaches any of Defendants' websites [, it] constitutes an instance of actual confusion." *Dell, Inc. v. BelgiumDomains, LLC*, 2007 U.S. Dist. LEXIS 98647 (S.D. Fla. 2007).

Similarly, under the Uniform Domain Name Dispute Resolution Policy, a complainant may recover a domain name where the respondent registered and used a domain name that

January 3, 2012
Page 4 of 7

is identical or confusingly similar to the complainant's mark in bad faith. UDRP panelists have consistently held that the registration and use of an identical or confusingly similar domain name to "attract internet users to [a] competing [business]... is consistent with the finding that the Domain Name was registered and is being used in bad faith." *Six Continents Hotels, Inc. v. Ramada Inn*, Case No. D2003-0658 (WIPO Oct. 16, 2003); *see also Eurobet UK Limited v. Grand Slam Co.*, Case No. D2003-0745 (WIPO Dec. 17, 2003). To establish bad faith, the respondent need only register the domain name with constructive notice of the complainant's rights. *See The Sportsman's Guide, Inc. v. Modern Limited, Cayman Islands*, Case No. D2003-0305 (WIPO June 18, 2003).

By virtue of your transfer of the registration of the <ritlabs.com> domain name into your possession and your adoption and use of a mark that is identical to our client's RITLABS mark, you face liability under the ACPA and the UDRP. It is clear that you have adopted and used a mark that is identical to our client's RITLABS mark and that you have adopted that mark and domain name with actual knowledge of our client's preexisting rights to that mark and domain name. This actual knowledge is readily apparent through your former status as CEO of RitLabs and as a 40% shareholder of that company. As such, you face up to $100,000 in statutory damages plus attorneys fees under the Anticybersquatting Consumer Protection Act and the transfer of the <ritlabs.com> domain name under the Uniform Domain Name Dispute Resolution Policy.

You also face liability for trademark infringement for your attempted registration and use of the RITLABS trademark. Under US law, "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookefield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047. Thus, the first to use a term as a trademark in association with the sale or offering of sale of goods or services takes priority over those that adopt the same or a confusingly similar mark after the senior user's first use. See 15 U.S.C. 1114(1).

To state a claim for trademark infringement, a plaintiff must establish that the defendant used the mark: "(1) in commerce; (2) without consent; (3) in connection with the sale, offering for sale or advertising of service; (4) in a manner likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such services." *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957). In determining whether the use of a similar trademark is likely to cause confusion, courts apply the *Sleekcraft* factors, which consist of eight non-exclusive factors that are relevant to determining a likelihood of confusion:

1. The strength of the plaintiff's mark;
2. The relatedness of the goods;
3. The similarity of the marks;

January 3, 2012
Page 5 of 7

4. Evidence of actual confusion;
5. The marketing channels used;
6. The likely degree of purchaser care;
7. The defendant's intent in selecting the mark; and
8. The likelihood of expansion of the product lines.

See AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979). Here, our client offers software services under the RITLABS trademark. You have begun offering those same services under an identical mark and without our client's authorization. "[I]f the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 283 (6th Cir. 1997). Your hijacking of the <ritlabs.com> domain name and use of the RITLABS trademark has confused consumers into believing that you are, in fact, RitLabs.

Finally, our client has obtained evidence of actual consumer confusion. Specifically, our client has in its possession evidence establishing that RitLabs, Inc., your unauthorized Virginia corporation, has signed contracts with customers of RitLabs because those customers were confused into believing that your unauthorized corporation is, in fact, RitLabs.[1] "Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1188 (6th Cir. 1988). Though "evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir.), cert. denied, 449 U.S. 899 (1980). This evidence is determinative of the issue of trademark infringement, as it is the paradigmatic harm that trademarks are intended to protect against.

You also face criminal and civil liability under the Computer Fraud and Abuse Act for your unauthorized access to the RitLabs CIFNet domain name account. Under this Act, one can be held criminally liable where one knowingly and with the intent to defraud, accesses a protected computer without authorization to obtain an object of value. See 18 U.S.C. § 1030(a)(4). You actions have subjected you to the potential of up to 5 years in federal prison and monetary damages. See 18 U.S.C. § 1030(c)(3)(A)(3). The United States Secret Service is authorized to investigate offenses under this section, See 18 U.S.C. § 1030(d). You also face civil liability for your unauthorized access to our client's CIFNet account, and these actions have subjected you to the potential for compensatory damages and injunctive and equitable relief. See 18 U.S.C. § 1030(g).

---

[1] It is worth noting that you may also be held liable for unfair competition, copyright infringement, a violation of the Virginia Uniform Trade Secrets Act, and other related claims. This letter is not intened to contain an exhaustive list of the claims that our client has available to it in any subsequent lawsuit or trademark opposition against you.

January 3, 2012
Page 6 of 7

    Finally, you may be held liable for intentional interference with contractual relations under Virginia law. To establish an intentional interference claim, a plaintiff must establish: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Chaves v. Johnson*, 230 Va. 112, 120-21 (1985). As a result of your former position with RitLabs, you had actual knowledge of valid contractual relationships and business expectancies with RitLabs. Through your creation and use of an unauthorized business entity in the United States, you have intentionally interfered with our client's contractual relationships and expectancies, including but not limited to through your acquisition of our client's customers and theft of our client's domain name, which has resulted in damage to our client. Consequently, you may also be held liable for intentional interference under Virginia law.

    Now that we have provided you with a better understanding of your liability under cybersqutting, trademark, federal statutory, and tort law, we believe that you will no longer wish to continue to maintain possession of the <ritlabs.com> domain name, use the RITLABS trademark, maintain unauthorized access to our client's domain name control panel, or intentionally interfere with our client's contractual relations. In order to limit both your legal and financial exposure in light of these unauthorized actions, we request that you **no later than January 9, 2012**:

1. Cease and desist, now and in the future, any and all use of the RITLABS trade name or trademark, whether in a domain name or otherwise, or any colorable imitation thereof likely to cause confusion;
2. Terminate the RitLabs, Inc. business entity and any other business entity containing the trademarks or trade names of our client;
3. Return the <ritlabs.com> domain name into our client's ownership, possession, and control by providing the username and password to our client's CIFNet account and taking any and all needed actions to transfer the domain name;
4. Cease and desist, now and in the future, any and all unauthorized access to our client's domain name control panel or servers, including but not limited to our client's CIFNet account;
5. Cease and desist, now and in the future, any attempt to, whether intentional or unitentional, interfere with our client's contractual relations, including but not limited to its contractual relations with service providers, distributors, and customers;
6. Abandon any and all trademark applications or registrations for RITLABS, whether in the United States or elsewhere in the world, including but not limited to USPTO Serial No. 85503367;
7. Provide a detailed accounting of all profits made by RitLabs, Inc. and a list of its customers; and

January 3, 2012
Page 7 of 7

8. Confirm in writing your compliance with the above requests.

Your failure to comply with the above requests may result in the initiation of further legal action against you, including but not limited to a cybersquatting, trademark infringement, copyright infringement, Computer Fraud and Abuse Act, and intentional interference lawsuit in Alexandria, Virginia or a trademark opposition in front of the Trademark Trial and Appeal Board. Our client does not intend for this matter to go unresolved and reserves all of its rights under the law, including the right to initiate a lawsuit at any time. We encourage you to contact us directly, or have your attorney contact us directly, should you have any questions.

Sincerely,

TRAVERSE LEGAL, PLC

John Di Giacomo
john@traverselegal.com