**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RITLABS, S.R.L.,

    Plaintiff,

    v.

RITLABS, INC., et. al.

    Defendants.

Case No.: 1:12-cv-00215
Hon. Anthony J. Trenga

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 1. INTRODUCTION

Plaintiff RitLabs, SRL ("SRL"), having offered testimony at trial concerning the matters at issue in this case, hereby submits its Proposed Findings of Fact and Conclusions of Law in accordance with the Court's request on September 25, 2012.

### 2. PROPOSED FINDINGS OF FACT

**THE PARTIES**

1. In 1998, Maxim Masiutin, Stefan Tanurcov, and Defendant Serghei Demcenko formed RitLabs, S.R.L., a limited liability company under the laws of the Republic of Moldova, with its principal place of business in Chisinau, Moldova.

2. Defendant Serghei Demnceko now resides in the United States in Alexandria, VA. See D. Demcenko TT pg. 27, 19-22.

3. Defendant RitLabs, Inc. is a corporation organized under the laws of the Commonwealth of Virginia.

**PROPOSED FACTS**

4. On July 14, 2008, Defendant Demcenko incorporated RitLabs, Inc. ("INC") under the laws of the Commonwealth of Virginia. At the time of INC's incorporation, Demcenko held no less than 95.3% of the stock of INC and at times claimed that he was the sole shareholder in INC. See Memo. Opinion Re Summary Judgment, Findings of Fact #6 (135).

5. To incorporate Defendant INC, Defendant Demcenko directed CIFNet, SRL's primary United States dealer, to pay $8,432.40 to International Legal Counsels, Defendant's attorneys. See D. Demcenko TT pg. 53, 9-23.

6. This payment was made by CIFNet to Defendants' attorneys on December 31, 2008 and was calculated as an offset of amounts owed to Plaintiff SRL without the knowledge or approval of SRL. See D. Demcenko TT pg. 53, 9-23.

7. On July 15, 2008, Defendant Demcenko, on behalf of SRL, sent a letter to CIFNet advising that SRL was terminating its Agreement with CIFNet as of December 31, 2008. See Memo. Opinion Re Summary Judgment, Findings of Fact #7 (135).

8. Defendant Demcenko also terminated SRL's Agreements with SRL dealers Sculski, NILTA, Stech Data, SoftLogistic, and Business IT. See D. Demcenko TT pg. 33 19-25, pg. 34, 1-25, pg. 35, 1-20.

9. On December 1, 2009, Demcenko, on behalf of SRL, entered into a License Agreement with INC, which granted INC an exclusive license to sell SRL's software products in the United States, as well as a non-exclusive license to

sell SRL's products elsewhere in the world. See Memo. Opinion Re Summary Judgment, Findings of Fact #8 (135).

10. Before entering into the License Agreement with INC on behalf of SRL, Demcenko did not disclose his ownership interest in INC to Masiutin or Tanurcov, or obtain Masiutin or Tanurcov's approval of the License Agreement. See Memo Opinion Re Summary Judgment, Findings of Fact #10 (135).

11. Once SRL's agreements with CIFNet, Sculski, NILTA, Stech Data, SoftLogistic, and Business IT were terminated, Defendant Demcenko entered into new distributor agreements with Sculski, NILTA, Stech Data, SoftLogistic, and Business IT on behalf of Defendant INC. See D. Demcenko TT pg. 33 19-25, pg. 34, 1-25, pg. 35, 1-20.

12. On November 20, 2009, CIFNet, at the direction of Defendant Demcenko, transferred $70,000 to Defendant Demcenko's personal bank account. This money was accounted, without SRL's knowledge or approval, as an offset against amounts CIFNet owed to Plaintiff SRL. See D. Demcenko TT. pg 53, 24-25, pg. 54, 1-10.

13. On December 12, 2011, Masiutin and Tanurcov held a meeting of the General Assembly and voted to remove Defendant Demcenko from his position as Director of SRL. See Memo Opinion Re Summary Judgment, Findings of Fact #12 (135).

14. On December 13, 2011, after having been removed as Director of SRL, and with that knowledge, Defendant Demcenko accessed the domain registrant

account associated with SRL's <ritlabs.com>, <ritlabs.net>, <thebat.net>, and <batpost.com> domain names and changed the name of the registrant of those domain names from SRL to INC. See Memo Opinion Re Summary Judgment, Findings of Fact #13 (135).

15. Almost immediately after being removed as Director of Plaintiff SRL, Defendant INC filed for trademark registration of the RITLABS, RITLABS, and THE BAT! trademarks with the United States Patent and Trademark Office. Defendant INC had previously filed for the MAILVOYAGER trademark. See Pl's Motion for SJ Exhibits NN, PP, QQ, RR; see also P. Masiutin TT. pg. 99, 24-25, pg. 100, 1-14.

16. Plaintiff subsequently filed this lawsuit on February 28, 2012, which asserted violations of the Anticybersquatting Consumer Protection Act, breach of fiduciary duty, false designation of origin, a violation of the Computer Fraud and Abuse Act, conversion, tortious interference with contractual relations, tortious interference with prospective economic advantage, and unfair competition. See Pl's Complaint (1).

17. On April 5, 2012, this Court issued a preliminary injunction ordering Defendants to suspend their trademark applications with the United States Patent and Trademark Office and to transfer the <ritlabs.com>, <ritlabs.net>, <thebat.net>, and <batpost.com> domain names into Plaintiff's possession. See 04-05-12 Order re Preliminary Injunction (39).

18. Defendants failed to suspend the MAILVOYAGER trademark application. See Pl's Trial Brief, Exhibit S (159).

19. The Court also heard the respective parties' cross-motions for summary judgment, and, on April 9, 2012, the Court granted summary judgment in favor of Plaintiff on Counts I, II, IV, VI, and VII and in favor of Defendants on Counts III, V, and VIII. The Court also granted summary judgment as to all of Defendants' counterclaims. See 08-09-12 Order re Summary Judgment (135).

20. In total, Defendant INC received revenues from its sale of SRL's software in the amount of $376,649.36. P. Masiutin TT. pg. 115, 24-25, pg. 116, 1-8; see also D. Demcenko TT. pg. 70, 20-23.

21. Of this $376,649.36, Defendant INC transferred $63,928.30 to Plaintiff SRL, leaving $312,721.06 that would have normally been received by SRL in the normal course of business. P. Masiutin TT. pg. 116, 9-16.

22. In 2011, Plaintiff SRL received $31,612.32 in revenue from the sale of its software by Stech Data, Plaintiff's German distributor. P. Masiutin TT. pg. 112, 23-25, pg. 113, 1-3; see also Plaintiff's Trial Exhibit 67.

23. Stech Data is no longer willing to distribute Plaintiff's software within Germany because it believes that it faces liability for its sale of software on behalf of INC. D. Demcenko TT. pg. 64, 17-25, pg. 65, 1-12.

24. Since Stech Data is no longer willing to distribute Plaintiff's software within Germany, Plaintiff has not received the $31,612.32 in revenue that it would have received from Stech Data in the ordinary course of business. P. Masiutin TT. pg. 113, 4-10.

25. In 2012, CIFNet has received $8,757.50 in revenue from the sale of SRL's software that has not been transferred to SRL. P. Masiutin TT. pg 114, 19-22.

26. Since INC diverted CIFNet, in its position as a dealer of SRL, from SRL to INC, Plaintiff has not received the $8,757.50 in revenue from the sale of SRL's software that it would have received from CIFNet in the ordinary course of business. P. Masiutin TT. pg 114, 19-22.

27. In response to Defendants' actions, Plaintiff undertook various costs in an attempt to reduce the damage caused by Defendants.

28. Plaintiff paid $904.70 for hosting services so that it could move the <ritlabs.com> website to a new hosting provider. P. Masiutin TT. pg. 117, 21-25, pg. 118 1-9.

29. Plaintiff paid $174.05 in taxes associated with the hiring of a Russian contractor to move the <ritlabs.com> website. P. Masiutin TT. pg. 118, 17-25, pg. 119, 1-9.

30. Plaintiff paid $322.77 to register backup domain names to ensure that Defendant Demcenko could not permanently shut down Plaintiff SRL's website. P. Masiutin TT. pg. 119, 19-25, pg. 120, 1-8.

31. And Plaintiff paid $624.56 to send various letters via UPS to the United States and Canada in an attempt to regain control of its corporate property. P. Masiutin TT. pg. 120, 16-25, 121, 1-5.

### 3. PROPOSED CONCLUSIONS OF LAW

### COUNT I
### CYBERSQUATTING UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT – 15 U.S.C. § 1125(d)

32. Defendants registered, used, and trafficked in the <ritlabs.com>, <ritlabs.net>, <ritlabs.us>, <thebat.net>, and <batpost.com> domain names. See Memo Opinion Re Summary Judgment, Findings of Fact #13 (135).

33. Defendants registered, used, and trafficked in these domain names with a bad faith intent to profit. See Memo Opinion Re Summary Judgment, Findings of Fact #13 (135).

34. Once the domain names were in Defendants' possession, Defendants blatantly and willfully used the <ritlabs.com> and <ritlabs.us> domain names to obtain revenue from the sale of SRL's software. See D. Demcenko TT. pg. 70, 1-23. *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2D 505, 513 (E.D. Va. 2003) ("Based on Raju's blatant use of GMAC's mark in his domain names and his use of the site to market and sell copyrighted GMAC materials, an award of the maximum statutory damages ($200,000) is appropriate.").

35. Defendants used the domain names after receiving notice from Plaintiff that Defendants' actions constituted cybersquatting. *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2D 567, 583 (E.D. Pa. 2002), amended by 2002 U.S. Dist. LEXIS 13336 (E.D. Pa. 2002); see also P's Trial Brief, Exhibit C (159).

36. Defendants' actions caused actual confusion in the marketplace. *Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2D 1150, 1170 (WD. Wash. 2010) ("Vericheck is entitled to the maximum amount of statutory damages, $100,000, based on the totality of facts in this case including, without limitation, Mr. Lahoti's bad

faith and his deliberate and knowing acts... and the actual confusion that is occurring in the marketplace as a result of Mr. Lahoti's use of the Domain Name in connection with a commercial website offering links to third parties that compete with Vericheck.").

37. And Defendants' actions in registering, using, and trafficking in these domain names were willful, malicious, fraudulent, and deliberate. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001). "A prevailing plaintiff seeking attorneys' fees must demonstrate 'that the defendant acted in bad faith.'" *Retail Services, Inc. v. Freebies Publishing*, 364 F.3d 535, 550 (4th Cir. 2004) (citing *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992)).

38. The Court finds Defendants liable for statutory damages in the amount of $100,000 per domain name for their registration of, use of, and trafficking in the <ritlabs.com>, <ritlabs.us>, and <thebat.net> domain names. 15 U.S.C. § 1117(d).

39. The Court also finds Defendants liable for statutory damages of $30,000 per domain name for Defendants' registration of, use of, and trafficking in the <ritlabs.net> and <batpost.com> domain names. 15 U.S.C. § 1117(d).

40. Additionally, the Court finds that Defendants' willful, malicious, fraudulent, and deliberate actions with respect to the domain names make this an exceptional case under the Lanham Act and, accordingly, the Court awards Plaintiff its attorneys' fees in the amount of $221,390.15. 15 U.S.C. § 1117(a)(3). See Exhibit A, Affidavits of Mark Clark, John Di Giacomo, and J. Andrew Baxter.

41. The Court also awards Plaintiff its taxable costs in the amount of $18,011.47 pursuant to 15 U.S.C. § 1117(a)(3) and Fed. R. Civ. P. 54(d). See Exhibit A, Affidavits of Mark Clark and J. Andrew Baxter.

42. The Court hereby orders Defendants to transfer the <ritlabs.com>, <ritlabs.net>, <ritlabs.us>, <thebat.net>, and <batpost.com> domain names into Plaintiff's ownership, possession, and control and to undertake any and all actions necessary to execute said transfer. 15 U.S.C. § 1125(d)(1)(C).

## COUNT II
## BREACH OF FIDUCIARY DUTY

43. Defendant Demcenko has breached his fiduciary duty to Plaintiff SRL. See Memo Opinion Re Summary Judgment, Findings of Fact #13 (135).

44. In breaching his fiduciary duty to Plaintiff SRL, Defendant Demcenko diverted to Defendant INC revenues in the amount of $376,649.36 that were received from Defendant INC's sale of Plaintiff SRL's software. See P. Masiutin TT. pg. 115, 24-25, pg. 116, 1-8; see also D. Demcenko TT. pg. 70, 20-23.

45. Of the $376.649.36 diverted to Defendant INC, Defendant INC transferred $63,928.30 to Plaintiff SRL, leaving $312,721.06 that would have normally been received by SRL in the normal course of business. See P. Masiutin TT. pg. 116, 9-16.

46. Defendant INC, without the authorization of Plaintiff SRL, hired employees, paid salaries, pensions, and insurance premiums, and purchased inventory, software, and equipment. See D. Demcenko TT. pg. 170, 17-25, pg. 171, 1.

47. The Court finds that, but for Defendant Demcenko's breach of fiduciary duty and Defendant INC's unauthorized sale of Plaintiff's software, Defendant INC

would not have obtained the revenues used to pay for these employees, salaries, pensions, insurance premiums, inventory, software, and equipment.

48. The Court finds that Defendant Demcenko's actions in breaching his fiduciary duty to Plaintiff SRL were willful, wonton, and reckless.

49. Accordingly, the Court orders that Defendant Demcenko pay Plaintiff SRL compensatory damages in the amount of $312,721.06.

50. The Court orders that Defendant Demcenko pay to Plaintiff SRL $70,000 in disgorgement of the amounts unlawfully received by Defendant Demcenko from CIFNet. See D. Demcenko TT. pg 53, 24-25, pg. 54, 1-10.

51. The Court orders that Defendant Demcenko pay to Plaintiff SRL $8,432.40 in compensatory damages for his transfer of that amount to International Legal Counsels for the unlawful formation of Defendant INC. See D. Demcenko TT pg. 53, 9-23.

52. Additionally, the Court orders that Defendant Demcenko pay Plaintiff SRL $2,026.08 in compensatory damages for costs undertaken by Plaintiff SRL in its attempts to mitigate its damages and to obtain control over its corporate property.

53. The Court orders that Defendant Demcenko pay Plaintiff SRL punitive damages in the amount of $239,154.21, which represents Plaintiff SRL's attorneys' fees and non-taxable costs, for his willful, wonton, and reckless actions.

54. The Court orders that, pursuant to Virginia Code 13.1-747, Defendant Demcenko's incorporation of Defendant INC through his breach of fiduciary duty was an illegal act.

55. Consequently, the Court orders that Defendant Ritlabs, Inc. be dissolved pursuant to Virginia Code 13.1-749, that the property of Defendant Ritlabs, Inc. be liquidated, and that any proceeds remaining after said dissolution and liquidation be paid to Plaintiff SRL.

56. The Court orders and directs Defendant Demcenko to dissolve Defendant Ritlabs, Inc. pursuant to Virginia Code 13.1-742, liquidate the property of Defendant Ritlabs, Inc., provide confirmation and an accounting of said dissolution and liquidation to Plaintiff SRL no later than December 31, 2012, and remit to Plaintiff SRL any proceeds remaining after said dissolution and liquidation.

## COUNT IV
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

57. Defendant Demcenko accessed the registrant account associated with Plaintiff SRL's domain name registrar and changed both the password associated with that account and the MX records associated with the <ritlabs.com> domain name. See Memo. Opinion Re Summary Judgment (135).

58. In doing so, Defendant Demcenko retained control over the <ritlabs.com> domain name, which was the proximate cause for and resulted in CIFNet's

receipt of revenue in the amount of $8,757.50 from the sale of Plaintiff's software in 2012. See P. Masiutin TT. pg 114, 19-22.

59. Since INC diverted CIFNet, in its position as a dealer of SRL, from SRL to INC, Plaintiff has not received the $8,757.50 in revenue from the sale of SRL's software that it would have received from CIFNet in the ordinary course of business. P. Masiutin TT. pg 114, 19-22.

60. Accordingly, the Court orders that Defendant Demcenko pay Plaintiff SRL compensatory damages in the amount of $8,757.50.

61. Additionally, the Court orders that Defendant Demcenko pay Plaintiff SRL $2,026.08 in compensatory damages for costs undertaken by Plaintiff SRL in its attempts to mitigate its damages and to obtain control over its corporate property.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

62. Defendant Demcenko tortiously interfered with Plaintiff' SRL's contractual relations. See Opinion Re Summary Judgment (135).

63. In interfering with Plaintiff's contractual relations, Defendant Demcenko diverted to Defendant INC revenues in the amount of $376,649.36 that were received from Defendant INC's sale of Plaintiff SRL's software. See P. Masiutin TT. pg. 115, 24-25, pg. 116, 1-8; see also D. Demcenko TT. pg. 70, 20-23.

64. Of the $376.649.36 diverted to Defendant INC, Defendant INC transferred $63,928.30 to Plaintiff SRL, leaving $312,721.06 that would have normally

been received by SRL in the normal course of business. See P. Masiutin TT. pg. 116, 9-16.

65. Defendant INC, without the authorization of Plaintiff SRL, hired employees, paid salaries, pensions, and insurance premiums, and purchased inventory, software, and equipment. See D. Demcenko TT. pg. 170, 17-25, pg. 171, 1.

66. The Court finds that, but for Defendant Demcenko's tortious interference with Plaintiff's contractual relations, Defendant INC would not have obtained the revenues used to pay for these employees, salaries, pensions, insurance premiums, inventory, software, and equipment.

67. The Court finds that Defendant Demcenko's actions in tortuously interfering with Plaintiff's contractual relations were willful, wonton, and reckless.

68. Accordingly, the Court orders that Defendant Demcenko pay Plaintiff SRL compensatory damages in the amount of $312,721.06.

69. Additionally, the Court orders that Defendant Demcenko pay Plaintiff SRL $2,026.08 in compensatory damages for costs undertaken by Plaintiff SRL in its attempts to mitigate its damages and to obtain control over its corporate property.

70. The Court orders that Defendant Demcenko pay Plaintiff SRL punitive damages in the amount of $239,154.21 for his willful, wonton, and reckless actions.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

71. Defendant Demcenko tortiously interfered with Plaintiff SRL's prospective economic advantage. See Opinion Re Summary Judgment (135).

72. As a result of Defendant Demcenko's tortious interference, Plaintiff's former German distributor, Stech Data, is no longer willing to distribute Plaintiff's software within Germany.

73. Since Stech Data is no longer willing to distribute Plaintiff's software within Germany, Plaintiff has not received the $31,612.32 in revenue that it would have received from Stech Data in the ordinary course of business. P. Masiutin TT. pg. 113, 4-10.

74. The Court orders that Defendant Demcenko pay Plaintiff SRL $31,612.32 in compensatory damages for Defendant Demcenko's tortious interference with Plaintiff's prospective economic advantage.

### **INJUNCTIVE RELEF**

75. The Court orders that Defendants Demcenko and INC permanently be enjoined and restrained from using the trademarks, service marks, design marks, and trade names of Plaintiff SRL, or any colorable imitation thereof, to cause confusion, to cause mistake, or to deceive, including, but not limited to, the RITLABS, THE BAT!, BATPOST, and MAILVOYAGER marks.

76. The Court orders that Defendants Demcenko and INC be permanently enjoined and restrained from registering, using, or trafficking in domain names containing the trademarks or trade names of Plaintiff, or any colorable imitation thereof likely to cause confusion, including, but not limited to, the RITLABS, THE BAT!, BATPOST, and MAILVOYAGER trademarks.

77. The Court orders that Defendant INC undertake any and all actions necessary to abandon the pending United States Patent and Trademark

Office trademark applications for RITLABS (Serial No. 85508804), RITLABS (Serial No. 85503367), THE BAT! (85496559), and MAILVOYAGER (Serial No. 85450930).

Respectfully submitted this 5th day of October, 2012.

**RITLABS, S.R.L.**

By: /s/J. Andrew Baxter
J. Andrew Baxter
Virginia Bar No. 78275
*Counsel for Plaintiff* (Local)
I.S. Law Firm, PLLC
1199 N. Fairfax St., Suite 702
Alexandria, VA 22314
(703) 527-1779 Telephone
(703) 778-0369 Facsimile
jabaxter@islawfirm.com

By:/s/John Di Giacomo
John Di Giacomo
Michigan Bar No. P73056
*Counsel for Plaintiff* (Foreign)
Revision Legal, PLLC
440 N. Spruce St.
Traverse City, MI 49684
(231) 633-1311 Telephone
(810) 213-6668 Facsimile
john@revisionlegal.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 5th day of October, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System on:

Kevin Richard Garden
Filipp Kofman
International Legal Counsels, PC
*Attorney for Defendants*
901 North Pitt Street, Suite 325
Alexandria, VA 22314
KG@legal-counsels.com
fk@legal-counsels.com

      **RITLABS, S.R.L.**

      By: /s/J Andrew Baxter
      J. Andrew Baxter
      Virginia Bar No. 78275
      *Counsel for Plaintiff* (Local)
      I.S. Law Firm, PLLC
      1199 N. Fairfax St., Suite 702
      Alexandria, VA  22314
      (703) 527-1779 Telephone
      (703) 778-0369 Facsimile
      jabaxter@islawfirm.com