IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RITLABS, S.R.L., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:12-cv-215 (AJT/IDD) |
| v. ) | |
| ) | |
| RITLABS, Inc., ) | |
| ) | |
| and ) | |
| ) | |
| SERGHEI DEMCENKO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this action, the plaintiff RitLabs, S.R.L. (Plaintiff or "SRL") has sued one of its owners, defendant Sergei Demcenko ("Demcenko"), who effectively served as its chief executive officer and while so serving engaged in self-dealing through defendant RitLabs, Inc. ("INC"), an American company formed and operated by Demcenko. In a Memorandum Opinion dated August 9, 2012, the Court held as a matter of law, based on undisputed facts, that Plaintiff was entitled to summary judgment on Counts I (violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)), II (breach of the fiduciary duty of loyalty), IV (violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4)), Count VI (tortious interference with contractual relations), and VII (tortious interference with prospective economic advantage). *See RitLabs, SRL v. RitLabs, Inc.*, No. 1:12-cv-215, 2012 WL 3263893, at *3 (E.D. Va. Aug. 9, 2012). The Court also concluded that Defendants were entitled to summary judgment as to Counts III (false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)), V (conversion), and VIII (unfair competition under Virginia Common law). *Id.* Finally, the

1

Court concluded that Plaintiff was entitled to summary judgment on all of Defendants' Counterclaims. *Id.* Based on those rulings, the Court imposed constructive trusts, restraining orders, and accountings as required for the identification and disgorgement of property wrongfully diverted away from SRL as a result of Defendant Demcenko's breach of fiduciary duty. *Id.*

On September 25, 2012, the Court conducted a bench trial as to Plaintiff's damages as to Counts I, II, IV, VI, and VII of the Complaint. At the conclusion of testimony, the Court ordered that the Plaintiff and Defendants each submit their proposed findings of fact and conclusions of law. The Court then heard closing arguments from both parties on October 9, 2012. Having considered the evidence and arguments presented at trial, the Court awards damages as follows:

As to Count I: $5,000 and

As to Count II: $103,637.82.

Based on these findings, the Court will enter judgment against Defendant Demcenko in the amount of $108,637.82 and make permanent its previously entered preliminary injunction. In addition, the Court will order that Defendant Demcenko transfer any stock he owns in INC to SRL. The Court also finds that Plaintiff's damages, if any, with respect to Count IV are less than $5,000 and for that reason this Court does not have subject matter jurisdiction with respect to Count IV, charging a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4); accordingly, this Court's previous judgment as to liability on Count IV will be vacated for lack of subject matter jurisdiction.

I. Background and Findings

Plaintiff SRL is an Internet technology and software provider that was formed in 1998 as a limited liability company under the laws of the Republic of Moldova, with its principal place of

business in Chisinau, Moldova. *See* Compl. at ¶ 8-9; *see generally* Articles of Association of "RitLabs" LLC [Doc. No. 1-4]. It has developed, sold, and distributed several software products throughout the world, including in the United States, and currently employs 18 full time employees, all located in Moldova. SRL's original organizers were Maxim Masiutin, Stefan Tanurcov, and Defendant Serghei Demcenko, who pursuant to SRL's Articles of Association, were to be the sole members of the company, with Masiutin and Tanurcov each holding a 30% share in the company and Demcenko holding a 40% share. Compl. at ¶ 3.2. Pursuant to SRL's Articles of Association, each member was to contribute a percentage of the initial capital investment of 5400 lei (the currency of Moldova; singular "leu"), equivalent to that member's percentage share in the company. *Id.* From SRL's inception in 1998 until his disputed removal by Masiutin and Tanurcov on December 12, 2011, Demcenko served as "director" of SRL, a position equivalent to a chief executive officer.

On July 14, 2008, while the director of SRL, Defendant Demcenko incorporated INC under the laws of the Commonwealth of Virginia. *See* Ex. K to Compl. Initially, Demcenko, together with his wife, were the sole owners and shareholders of INC.[1] On May 3, 2010, Demcenko, acting on behalf of both SRL and INC, entered into a License Agreement between SRL and INC, which granted to INC an exclusive license to sell SRL's software products in the United States, as well as a non-exclusive license to sell SRL's software products around the world. *See* Ex. T. to Pl.'s Mem. in Supp. of Summ. J. ("License Agreement"). Under the License Agreement, INC would receive 60% and SRL, 40% of the gross revenue generated from the sale of SRL's software. *Id.* Demcenko did not seek or obtain the authorization or approval

---

[1] On May 1, 2011, Demcenko transferred to SRL 11% of the shares in INC. *See* Ex. JJJ to Pl's Mem. (Letter from U.S. Citizenship and Immigration Services to Serghei Demcenko, Sept. 7, 2011), at 4.

3

of Masiutin or Tanurcov, SRL's other members, before either creating INC or entering into the License Agreement on behalf of SRL with INC. *See RitLabs* 2012 WL 3263893, at * 1. Nor did Demcenko advise Masiutin or Tanurcov of his 100% ownership interest in INC. *Id.* In addition, Demcenko, acting on behalf of SRL, cancelled a software distributorship agreement between SRL and a company known as CIFNet, which acted as SRL's U.S. based distributor, and then, on behalf of INC, entered into distributorship agreements with CIFNet and other companies for the distribution of SRL's software products. *See* Ex. K to Pl.'s Mem. (Letter from Serghei Demcenko, Director, RITLABS SRL, to Yevgeniy Kruglov, CIFNet, Inc., July 15, 2008); Ex. V to Pl.'s Mem. (Licensing Agreement between INC and CIFNet, Inc.); Ex. O to Pl.'s Mem. (Licensing Agreements between INC and Soft Logistic LLC, Business IT LLC, NILTA Corp., and S-Tech Data e.K.).

On December 12, 2011, Masiutin and Tanurcov held a meeting of SRL's members, called the General Assembly under Moldovan law, and voted to remove Defendant Demcenko from his position as Director of SRL. *See* Bench Trial Tr. at 42 [Doc. No. 162]. On December 13, 2011, after being notified by SRL's accountant that he had been removed as Director, Defendant Demcenko accessed the domain registrant accounts associated with <www.ritlabs.com>, <www.ritlabs.net>, <www.thebat.net>, and <www.batpost.com> and changed the registrant information associated with the domains from SRL to INC. *Id.* Of those websites, both <www.ritlabs.net>, and <www.batpost.com> domains were purchased by SRL as placeholders and never hosted functional websites for either SRL or INC. *See* Tr. at 82. The <www.thebat.net> website is a portal that allows users to remotely access their @thebat.net e-mail accounts, which Demcenko claims he accessed so that he, his wife, and his son could access their email addresses after his removal. Tr. at 176. To do this, Demcenko altered the MX record

associated with www.ritlabs.com to forward to separate email accounts not associated with SRL those emails addressed to him and his family members' accounts. Tr. at 176. There is no evidence that Demcenko made any other changes to the domains, to information associated with the domain accounts, or to the content of any of the websites associated with the domains. *See* Tr. at 81-82; 158:1-6. Shortly thereafter, Defendant INC filed for trademark registration of the RitLabs, RitLabs, and The Bat! trademarks with the United States Patent and Trademark Office. INC had previously filed for the MAILVOYAGER trademark. Pl. Mot. for Summ. J. Ex. NN, PP, QQ, RR; Tr. at 100.

On February 28, 2012, Plaintiff SRL filed a Complaint against Defendants Demcenko and INC, alleging eight claims: (1) a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"); (2) breach of the fiduciary duty of loyalty; (3) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) ("CFAA"); (5) conversion; (6) tortious interference with contractual relations; (7) tortious interference with prospective economic advantage; and (8) unfair competition under Virginia common law. On March 23, 2012, Defendants answered, and asserted six counterclaims: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) tortious interference with contract; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; and (6) commercial disparagement.

On March 6, 2012, Plaintiff moved for a preliminary injunction, and the Court held a hearing on that motion on March 30, 2012, following which the Court granted in part and denied in part the motion and entered a preliminary injunction order requiring Demcenko and INC to (1) suspend his application for registration of the RITLABS, THE BAT!, and MAILVOYAGER

marks; and (2) transfer to SRL the registrations for the <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> domain names, together with the required username(s) and passwords to obtain access and control over those domain names.[2]

Following entry of the preliminary injunction order, the parties engaged in discovery and, on June 28, 2012, Defendants filed a Motion for Partial Summary Judgment [Doc. No. 78], seeking judgment as a matter of law on Counts I, III, IV, and VIII of the Complaint. On July 9,

---

[2] The preliminary injunction ordered provided as follows:

> "ORDERED that Defendants, RitLabs, Inc. and Serghei Demcenko, immediately suspend the applications for registration of the following marks, and notify such offices and agencies as are necessary for such purposes, until further order of the Court: RITLABS (USPTO Serial No. 85508804), RITLABS (USPTO Serial No. 85503367), THE BAT! (USPTO Serial No. 85496559), and MAILVOYAGER (USPTO Serial No. 85450930); and it is further
> ORDERED that Defendants RitLabs, Inc. and Serghei Demcenko, immediately transfer the registration of <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> domain names to Plaintiff, provide Plaintiff with the username(s) and password(s) needed to access and obtain possession and control over the registrant account associated with the domain names and undertake any and all actions necessary to transfer those domain names into the possession of Plaintiff until further order of the Court; and it is further
> ORDERED that Plaintiff RitLabs, S.R.L. will not transfer possession or control of <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> to any party until further order of the Court; and it is further
> ORDERED that Plaintiff, RitLabs, S.R.L.'s request to restrain and prohibit Defendants RitLabs, Inc. and Serghei Demcenko, from soliciting or receiving payments from customers or distributors of Plaintiff during the pendency of this lawsuit be, and the same hereby is, DENIED; and it is further
> ORDERED that Plaintiff RitLabs, S.R.L.'s request to restrain and prohibit Defendants RitLabs, Inc. and Serghei Demcenko, from offering goods or services under the names and/or trademarks of RitLabs, Inc., RITLABS, MAILVOYAGER, and THE BAT! during the pendency of this lawsuit be, and the same hereby is, DENIED . . . ."

*See* Prelim. Inj. Order [Doc. No. 39].

2012, Plaintiff filed an Amended Motion for Summary Judgment [Doc. No. 103], in which it sought summary judgment as to all of its claims and all of Defendants' counterclaims. The Court held a hearing on the motions on August 6, 2012. In a Memorandum Opinion dated August 9, 2012, the Court held as a matter of law, based on undisputed facts, that Plaintiff was entitled to summary judgment on Counts I (violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)), II (breach of the fiduciary duty of loyalty, IV (violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4)), Count VI (tortious interference with contractual relations), and VII (tortious interference with prospective economic advantage. The Court also concluded that Defendants were entitled to summary judgment as to Counts III (false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)), V (conversion), and VIII (unfair competition under Virginia Common law). *See RitLabs*, 2012 WL 3263893 at *3. Finally, the Court concluded that Plaintiff was entitled to summary judgment on all of Defendants' Counterclaims. *Id.* Based on those rulings, the Court imposed constructive trusts, restraining orders, and accountings as required for the identification and disgorgement of property wrongfully diverted away from SRL as a result of Defendant Demcenko's breach of fiduciary duty. *Id.* The Court ordered that the case precede to trial on Plaintiff's damages as to Counts I, II, IV, VI, and VII of the Complaint, which was held on September 25, 2012.

### I. Damages as to Count I: Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)

The Court previously held that "[b]ecause Demcenko breached his duty of loyalty when he used, trafficked in, and reregistered SRL's domain names and associated marks, he violated the Anticybersquatting Consumer Protection Act, alleged in Count I." *Id.* at 8. The Court first notes that, of the five domain names at issue, only three were operative, and, although INC operated the <www.ritlabs.us> domain name to advertise SRL's product, INC did not sell any

7

products through that website. Ex. A to Defs'. Resp. to Pl.'s Am. Mot. for Summ. J. [Doc. 117-1]. Nonetheless, based on Defendants' actions, Plaintiff seeks the statutory damages in the maximum amount of $100,000 with respect to each of the three operative websites <ritlabs.com>, <ritlabs.us,>, and <thebat.net>, and $30,000 for each of the websites <ritlabs.net> and <batpost.com>, together with the permanent transfer of each of the five domain names, pursuant to 15 U.S.C. § 1125(d)(1)(C). Plaintiff also seeks attorneys' fees based on Defendants' violation of the ACPA.

Under the ACPA, if the plaintiff elects and the court deems it appropriate, statutory damages, in lieu of actual damages and profits, may be awarded in the amount of not less than $1,000 and not more than $100,000 dollars per domain name. 15 U.S.C. § 1117(d). The Court also has discretion to either cancel the domain name registration or order that it be transferred to the trademark owner. *Id.* § 1125(d)(1)(C); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002). Finally, "in exceptional cases" the Court may award reasonable attorneys' fees to the prevailing party. 15 U.S.C. § 1117(a). A case is exceptional "if the defendant's conduct was malicious, fraudulent, willful, or deliberate in nature. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (internal quotation marks omitted). "In other words, a prevailing plaintiff must 'show that the defendant acted in bad faith.'" *Id.* (quoting *Scotch Whiskey Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1991)).

The award of statutory damages, costs, and attorneys' fees under the ACPA are within the sound discretion of the district court. *See, e.g., Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004). "Because [ACPA statutory] damages serve as a sanction to deter wrongful conduct, a district court may properly weigh the seriousness of the conduct in

determining the amount of the award." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 442 (4th Cir. 2011). Where the need for deterrence is limited and little or no damage arose from the violation, a low-end award is appropriate. *See Mattel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085, 2001 WL 1035140, at *5 (S.D.N.Y. Sept. 7, 2001). An award at the high end of the statutory range may be proper where a defendant's conduct was "exceptional and egregious." *Newport News Holdings Corp.*, 650 F.3d at 442 (upholding an $80,000 dollar award based on the defendant's deliberate violation of an arbitration opinion); *see also Citigroup, Inc. v. Chen Bao Shui*, 611 F. Supp.2d 507, 512-13 (E.D. Va. 2009). The types of cases that merit awards at the high-end of the $1,000-$100,000 range are those cases "generally deemed exceptional under Section 1117(a) and therefore also result in an award of attorneys' fees." *Int'l Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002). Typically, courts have awarded large amounts of statutory damages in cases where unrelated third parties attempt to use a plaintiff's mark solely for their own benefit. *See e.g. Citigroup*, 611 F. Supp. at 513; *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 512-13 (E.D. Va. 2003).

Unlike many cases presenting these issues, the parties are closely related; and Defendants' business activities that form the basis of Plaintiff's claim were undertaken consistent with Plaintiff's overall business plan to exploit the American market that had been committed to Demcenko to implement in his role as SRL's director. In this regard, there is evidence that SRL was aware that INC was operating in the United States and approved some version of it. Pl. Trial Ex. 20 (email from Masiutin to Demcenko); Tr. 132 (Masiutin acknowledging that he received an email in May or April of 2010 wherein Demcenko identified himself as CEO of RitLabs, Inc.). It also appears that Masiutin and Tanurcov had no objection to Demcenko's business

9

activities in the United States, so long as they appropriately benefitted from them. SRL did stand to benefit from Defendants' activities to some extent, through the license agreement and the 11% interest in INC transferred at some point to SRL. Some profits were even transferred to SRL prior to litigation. Def. Trial Ex. 3 at 1 (Royalties Paid). Plaintiff's complaint is based solely on the fact that because of Demcenko's self-dealing, SRL did not stand to benefit as much as it should have. There is no evidence that Defendants' activities harmed Plaintiff apart from the fact that it did not profit from INC's activities to the same extent as it would have had INC been a wholly owned subsidiary of SRL. For these reasons, Plaintiff's actual damages can be fully addressed through relief based on its breach of fiduciary duty claim.

In light of these facts, the primary purpose served by an award under the ACPA is to deter and punish Demcenko for his utilization of Plaintiff's domain name in furtherance of his self-dealing. Significant in that regard, is the actual use that he made. Here, Demcenko utilized the SRL domain names in the same way and for the same purpose as they would have been utilized were he acting on behalf of SRL or had INC been operated as SRL's wholly owned subsidiary. Even his access to the domain name <www.ritlabs.com>, after his removal as director, appears to have been limited to the same personal, non-competitive use that he made while he was a director; and there is no evidence in the record that SRL's interests or reputation were significantly damaged by Defendants' actions with respect to the domain names. In short, Demcenko's unauthorized use of the domains names was not the object of his wrongful conduct but incidental to it; he did not change the substance or purpose of the domain names. He simply transferred their control to another entity in which SRL had an interest less than it should have. For these reasons, the Court finds and concludes that this is not an "exceptional case," meriting an award at the high-end of the statutory range; and the Court awards a total of $5,000 as to

Count I.

Pursuant to 15 U.S.C. § 1125(d)(1)(C), the Court may order the defendants to transfer the domain name to the owner of the mark. Given that transfer of the domain names to SRL has already occurred pursuant to this Court's preliminary injunction order and that this Court will order all legal interest in INC to SRL, the Court sees no reason to provide further relief with respect to the domain names, which now are under the complete control of SRL.

"In showing that an exceptional case exists, the prevailing party bears the burden of showing defendant's malicious, fraudulent, willful or deliberate conduct by clear and convincing evidence." *Agri-Supply Co. v. Agrisupply.Com*, 457 F. Supp.2d 660, 666 (E.D. Va. 2006) (citations omitted). "The Court, however, ultimately retains discretion to determine whether an award of attorneys' fees is appropriate." *Id.* "While the statute does not limit the class of conduct that may qualify for exceptional cases, courts have found that an award of attorneys' fees may be supported not only by willful infringement, but by willful defiance and protraction of the judicial processes attempting to stop the illegalities." *Id.* (citing cases). Moreover, even "a bad faith finding under the ACPA does not compel a finding of malicious, fraudulent, willful or deliberate behavior under § 1117." *People for the Ethical Treatment of Animals*, 263 F.3d at 370. In granting summary judgment as to Count I, the Court necessarily found that Defendants acted with bad faith for purposes of ACPA liability; however Defendants have offered evidence demonstrating that Demcenko did not act with the requisite malice for an award of attorneys' fees under the Lanham Act.

### II. Damages as to Count Two: Breach of the Fiduciary Duty of Loyalty

The Court previously held that Demcenko breached his duty of loyalty to SRL through the following series of actions, each of which had the effect of personally benefitting Demcenko

11

and INC at the expense of SRL. First, Demcenko, on behalf of SRL, entered into the License Agreement with INC to facilitate INC's activities, and cancelled SRL's distribution agreement with CIFNet. Next, acting on behalf of INC, he entered into virtually the same distribution agreement with CIFNet and other companies for the distribution of SRL software authorized under the License Agreement. *RitLabs*, 2012 WL 3263893, at *6-7. In effect, Demcenko diverted SRL's corporate opportunities to himself, through INC, a company he controlled and substantially owned. Although the Court has already determined Demcenko breached his duty of loyalty, the plaintiff still has the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of recovery."[3] *Shepherd v. Davis*, 265 Va. 108, 125 (2003) (citation omitted).

Plaintiff requests that the Court award compensatory damages in the amount of $393,223.16. This amounts consists of (1) $312,721.06, INC's gross revenue since its formation, without reduction for any expenses, but net of amounts already transferred to SRL; (2) $8,432.40, which represents the amount CIFNet paid to International Legal Counsels for the formation of INC and which it has claimed as a credit against amounts it owed to SRL; (3) $70,000, which is alleged to be an amount that CIFNet owed to SRL but which it paid directly to Demchenko; and (4) $2,026.08 in costs incurred by SRL in connection with its attempts to mitigate its damages and to obtain control over its corporate property.[4] Plaintiff also seeks

---

[3] The parties agree that Moldovan law applies to the breach of fiduciary duty claims. The parties also agree that Moldovan law imposes on Demcenko the same types of fiduciary duties and obligations owed by corporate officers and directors under American law. Accordingly, the Court applies generally accepted principles of corporate law in analyzing these claims.

[4] The plaintiff requests these same costs as compensation for Defendants' violation of the Computer Fraud and Abuse Act.

12

punitive damages in the amount of its costs and attorneys' fees for the defendant's breach of fiduciary duty.

The parties do not dispute that INC received a total of $376,649.36 and that only $63,928.30 was transferred to SRL, leaving $312,721.06, which Plaintiff seeks as compensatory damages for the unlawful sales. Defendants dispute this amount on the grounds that, at most, Plaintiff is entitled to only profits, and that after deducting INC's reasonable expenses, including payments made to SRL, INC earned only $13,861.67 from the unlawful sales. Def. Tr. Br. pp. 4-9. Defendants also claim the $70,000 Demcenko received from CIFNet was a personal loan from CIFNet's co-founder to Demcenko, separate and apart from any business dealings.

To determine compensatory damages for a breach of fiduciary duty, the Virginia Supreme Court has applied a type of "but for" test. *See, e.g., Saks Fifth Avenue, Inc. v. James, Ltd.*, 272 Va. 177 (2006). In other words, Plaintiff is entitled to what it would have received "but for" the breach of fiduciary duty, because the purpose of compensatory damages is to deny Defendants the fruits of their scheme. *Id.* at 185-86. *See also Banks v. Mario Industries of Virginia, Inc.*, 274 Va. 438, 447 (2007) (reducing award to reflect actual profits lost). The Court concludes it is appropriate to calculate the damages as though Demcenko had been operating INC for the constructive benefit of SRL; accordingly, the Court agrees with Defendants' position that Plaintiff is entitled to only profits. However, part of INC's claimed expenses is the amount Demcenko received from INC for his services, which amounts to $87,750.07. The Court finds and concludes that the amount Demcenko received for his services on behalf of INC is not a deductible expense for the purpose of calculating Plaintiff's damages for Demcenko's breach of fiduciary duty, because he is not entitled to collect a salary from INC while in breach of the duty of loyalty and while he was receiving a salary for his position at SRL. *See Nat'l Med. Advisory*

*Servs., Inc. v. Kolb*, 887 F.2d 1080 (4th Cir. 1989) (awarding the defendant's salary to the plaintiff as compensatory damages after finding that the defendant breached the duty of loyalty). Accordingly, out of INC's gross revenue, $101,611.74 is properly awarded as compensatory damages for Demcenko's breach of fiduciary duty. The Court also concludes that Plaintiff is also entitled to recover against Demcenko the amount of $2,026.08, which was incurred by Plaintiffs in their efforts to mitigate damages and obtain control over their corporate property.

Under Virginia law, a plaintiff may receive punitive damages, in addition to compensatory damages, for a breach of fiduciary duty. *See Flippo v. CSC Associates III, LLC*, 262 Va. 48 (2001) (awarding both). The purpose of punitive damages "is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others." *Hamilton Dev. Co. v. Broad Rock Club*, 248 Va. 40, 45 (1994). Punitive damages are rare and "may be recovered only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Id.* Viewing the evidence in the record, the Court concludes that Plaintiff has not met its high burden regarding punitive damages.[5]

At trial, Demcenko testified that his motivation for forming INC was "[f]irst, to widen he market for RitLabs' products since the United States is the largest market. The second reason is to protect the company. In other words, to make the company independent form one particular salesperson. That means diversifying our business. And the last reason, one of the important issues was to attract investments to develop and grow our company further." Tr. p. 86. Demcenko also testified that, by forming INC, the company avoided certain double-taxation

---

[5] Moreover, the plaintiff did not include a prayer for punitive damages in its Complaint and should not be considered now. *See Francis v. Woody*, No. 3:09-cv-325, 2009 WL 1442015, at *12 (E.D. Va. May 22, 2009) ("[P]unitive damages may only be recovered where the plaintiff has made an express claim for them in the prayer for relief... sufficient to put the defendant's on notice that an award of punitive damages is sought.") (citation omitted). Defendants must be on notice that punitive damages will be sought. *Id.*

14

issues associated with selling SRL's products in the Russian Federation, that he intended to develop and distribute new products through INC, and that the decision was based on conversations with Masiutin and Tanurcov. Tr. p. 88-93. He testified that 11% of the company was given to SRL and he had planned to transfer more in the future, and that he believed that his operation of INC would ultimately benefit SRL. Tr. p. 88.

The record also indicates that Masiutin had notice of Demcenko's plan to open a United States branch of SRL, but, in the end, disagreed mainly with the activities of INC. *See* Pl. Ex. 20; Tr. pp. 100-01. He even received an email in which Demcenko identified himself as CEO of INC. Tr. p. 132. Masiutin acknowledged that they had discussed the formation of a separate US-based company, but that Demcenko had not allocated stock ownership as requested by his former partners, and if he had split the ownership 30-30-40 between the partners "all would be okay." Tr. pp. 155-56, Pl. Tr. Ex. 20 (email from Masiutin to Demcenko dated August 6, 2011 and stating in part, "It is yet possible to mend your way and to make the same participation shares in the 'RitLabs' Inc., as they in the 'RitLabs' Ltd. are."). Other than the fact that Demcenko owned a portion of INC and engaged in the activities associated with INC's business operations in the United States, Plaintiff introduced no evidence that challenged Demcenko's testimony as to his motivation. It also appears that the affairs of SRL were at times accompanied by rather unorthodox self-directed transactions by each of its owners, including transactions through CIFNet, similar to the challenged conduct by Demcenko. Based on the record as a whole, the Court concludes that punitive damages are inappropriate in this case.

As suggested by the above discussion, Plaintiff has also not proved with reasonable certainty that it is entitled to disgorgement of the $70,000 Demcenko received from the co-founder of CIFNet, Yevgeniy Kruglov. Demcenko testified credibly that the money was a

personal loan, unrelated to SRL or INC. Tr. pp. 53, 83-85. The testimony also revealed that CIFNet routinely transferred money to or made purchases on behalf of SRL's members for their U.S.-related purchases and expenses. Tr. pp. 83-85, 1444-145. For example, Masiutin testified that Kruglov transferred money to Masiutin's personal stock trading account in the United States on several occasions between 2008 and 2011. Tr. 123-24,148; *see also* Def. Trial Ex. 2. Like Demcenko, Masiutin testified that Kruglov transferred this money to his personal account based on their friendship. Tr. 144:13-145:25;150-51. No representative of CIFNET, including Kruglov, testified; and Plaintiff offered no evidence to rebut Demcenko's testimony that the $70,000 was a personal loan or evidence that CIFNet was, in fact, entitled to claim that amount as an offset against amounts due and owing to SRL.

For the above reasons, the Court awards damages as to Count II in the total amount of $103,637.82

### III. Damages as to Count IV: Computer Fraud and Abuse Act, 18 U.S.C. § 1030

After his removal from his position as director of SRL, Demcenko unlawfully accessed the domain registrant accounts of www.ritlabs.com>, <www.ritlabsnet>, <www.thebat.net>, and <www.batpost.com> and changed the registrant information associated with the domains, in violation of the CFAA. A person found to be civilly liable for a CFAA violation can be responsible for compensatory damages and injunctive or other equitable relief so long as the plaintiff shows that it suffered a CFAA-qualifying "loss" aggregating at least $5,000. 18 U.S.C. § 1030(g). The CFAA specifies that a qualifying loss under the statute

> means any reasonable cost to any victim, including the cost of responding to an offense, conducting damage assessment, and restoring data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

16

*Id.* § 1030(e)(11).

The Fourth Circuit has held that "[t]his broadly worded provision plainly contemplates... costs incurred as part of the response to a CFAA violation, including the investigation of an offense." *A.V. ex. Rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009). Moreover, the plaintiff "must show that the losses [it] claim[ed] were the reasonably foreseeable result of the alleged CFAA violations, and that any costs incurred as a result of measures undertaken to restore and resecure the e-mail system were reasonably necessary in the circumstances." *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 647 (E.D. Va. 2010) (citing *United States v. Middleton*, 231 F.3d 1207, 1213 (9th Cir. 2000)). Thus, further lost revenue or consequential damages—such as the losses associated with a missed business opportunity-- are recoverable only if they were "incurred because of interruption of service." *Animators at Law, Inc. v. Capital Legal Solutions, LLC* 786 F. Supp. 2d 1114, 1120 (E.D. Va. 2011) (quoting § 1030(e)(11)).

The plaintiff claims that it incurred a total $10,827.20 in losses as a result of the Defendant's CFAA violations. First, it claims to have suffered $8,757.50 as a result of Demcenko taking control of the registrant account associated with the domain names <ritlabs.com>, <ritlabs.net>, <batpost.com>, and <thebat.net> and changing the MX records associated with the <ritlabs.com> domain name. Plaintiff alleges that while the website was under his control, in other words "during the incursion," SRL was unable to change its US cart provider from CIFNet. During that time, plaintiff contends, CIFNet obtained $8,757.50 from the unlawful sale of SRL software. Although Plaintiff claimed that Demcenko's change as to the registrant information of the domains at issue permitted Defendants to "continue to unlawfully

17

redirect consumers, who sought Plaintiff's software products, to CIFNet and other third parties," Masiutin testified on behalf of the plaintiff that Demcenko never restricted SRL's access; and that at all times, SRL was able to control the website content and modify the cart provider, but never did so. Tr. at 47-48, 158-61. Plaintiff acknowledged that SRL did change the cart provider later. *See* Tr. at 6 ("CIFNet has lost the ability to sell because SRL has changed the card system."). Notably, this money is still with CIFNet; it was never transferred to INC. The Court concludes that Plaintiff has not shown that the loss of profits "incurred because of interruption of service;" therefore, the plaintiff is not entitled to $8,757.50 in damages for defendants' violation of the CFAA. *Animators at Law, Inc.* 786 F. Supp. 2d at 1120.

The only remaining CFAA damages claimed by the plaintiff is $2,026.08 in compensatory damages for costs undertaken by SRL in attempts to mitigate its damages and to obtain control over its corporate property. This amount, which has been awarded to Plaintiff as part of its damages for Demcenko's breach of fiduciary duty, falls short of the jurisdictional threshold established by 18 U.S.C. § 1030(g).

### IV. Damages as to Count VI Tortious Interference with Contractual Relations

In the Memorandum Opinion on Summary Judgment, the Court held that "INC tortuously interfered with both SRL's existing contracts and prospective economic advantage by terminating at least one contract that inured only to the benefit of SRL, the CIFNet contract, and then entering into distribution agreements with certain companies, including CIFNet, on behalf of INC, rather than SRL." *RitLabs*, 2012 WL 3263893 at 7. Plaintiff seeks identical compensatory damages for Defendants' tortious interference with contractual relations as for Defendants' breach of fiduciary duty. The Court declines to award double damages for the same conduct.

## V. Damages as to Count VII: Tortious Interference with Prospective Business Relations

In addressing damages for tortious interference with prospective business relations, Plaintiff chose to put on evidence of its relationship with one company only, S-Tech Data, claiming that it is entitled to $33,605.28 in compensatory damages based on its decision to discontinue selling the plaintiff's software.

As the Fourth Circuit has frequently noted, "under Virginia law the elements required to establish tortious interference with prospective economic advantage are quite similar to those required to establish tortious interference with contractual relations. In general, a claimant must: (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference." *See, e.g., Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001) (citations omitted); *see also Glass v. Glass*, 228 Va. 39, 51-52 (1984). Plaintiff's claim for damages arising out of S-Tech's failure to renew its contract fails on elements three and four of this claim.

Plaintiff did not demonstrate that it was "reasonably certain" that Demcenko's conduct caused S-Tech Data to stop working with SRL. Based on the testimony of Demcenko and of Masiutin himself, S-Tech Data declined to renew its contract after disagreements arose between Masiutin and S-Tech Data officer Anna Kock. Tr. pp. 64-65, 109-10. Although the disagreement arose in part out of Kock's prior dealings with

19

INC, the Court finds that the loss of that contractual relationship was caused by disagreements that arose between Kock and Masiutin. Moreover, the Court finds that Plaintiff has failed to prove with reasonable certainty the amount that S-Tech would have sold, and more importantly, SRL would have profited, by a continuation of that relationship. The only evidence offered at trial to support Plaintiff's damages claim is Masiutin's testimony that he believed S-Tech would continue selling in the future the same amount of SRL software, as it had in the past, which in the last year of its relationship totaled $33,605.28. Tr. at 113; Pl. Tr. Br. 14. There is no evidence in the record that sufficiently supports Plaintiff's claim for damages, including the amount of profit SRL would have realized from those sales. Given this lack of evidence, the Court cannot say without speculating that SRL suffered any amount of damages as a result of Demcenko's intentional misconduct. Accordingly, the plaintiff is not entitled to damages for this claim

For the above reasons, the Court will award Plaintiff damages in the amount of $108,637.82.

The Court will issue an appropriate order.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 30, 2012